1                 UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF NEW YORK
2

3    ---------------------------------X
                                      :
4    UNITED STATES SECURITIES         :
     AND EXCHANGE COMMISSION          :  19-CV-04355 (LGS)
5                                      :
                    Plaintiff,        :
6               v.                    :  July 17, 2019
                                      :
7    COLLECTORS COFFEE, et al.,       :  500 Pearl Street
                                      :  New York, New York
8                  Defendants.        :
     ---------------------------------X
9
                TRANSCRIPT OF CIVIL CAUSE FOR MOTIONS
10          BEFORE THE HONORABLE GABRIEL W. GORENSTEIN
                  UNITED STATES MAGISTRATE JUDGE
11

12   APPEARANCES:

13
     For the Plaintiff:        TERRY MILLER, ESQ.
14                             MARK L. WILLIAMS, ESQ.
                               United States Securities and Exchange
15                             Commission

16   For the Defendant,        WILLIAM B. FLEMING, ESQ.
     Collector's Coffee:       Gage Spencer & Fleming
17                             410 Park Avenue
                               New York, New York  10022
18
     For the Defendant,        EDWARD J.M. LITTLE, ESQ.
19   Mykalai Kontilai:         Hughes Hubbard & Reed
                               One Battery Park Plaza
20                             New York, New York 10004

21
     Court Transcriber:        SHARI RIEMER, CET-805
22                             TypeWrite Word Processing Service
                               211 N. Milton Road
23                             Saratoga Springs, New York 12866

24

25

     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service

THE CLERK:  In the matter of <u>SEC v. Collector's Coffee</u>; docket number 19-CV-4355.

Counsel, state your name for the record, please.

MR. MILLER:  Terry Miller for the SEC.

MR. WILLIAMS:  Good morning, Your Honor.  Mark Williams  on behalf of the SEC.

MR. FLEMING:  Good morning, Your Honor.  William Fleming on behalf of Collector's Coffee.

MR. LITTLE:  And good morning, Your Honor.  Edward Little for Mr. Kontilai.

THE COURT:  Okay.  Welcome everyone.  You can be seated if you're not speaking.  I've received, let's see, I guess it's docket 61, 64, and 66.  I'm not sure we're getting to dockets 40, 49, and 62.  And then I have this motion to strike, docket 65 and 69.  So let's deal with what I guess is the main event which is the 30(b)(6) issue first.  Unless someone has a different agenda they suggest.  No?  Okay.

So the 30(b)(6) issue.  I read your letters and I read the cases.  I think the devil here -- I don't think the parties are disagreeing on the law.  I think the devil here is in the details or what precisely it is that the SEC wants me to order that would not violate the Fifth Amendment privilege given the particular and peculiar factual circumstances regarding this corporation which seems to have someone who could take responsibility for being educated or hiring someone

to be educated.  But where it seems that the only education

could come from a person who is entitled to assert a Fifth

Amendment privilege, as to some things.

So, you know, if -- when I read the cases, and I

think about the law, it seems that it's easy if there's a big

box of documents that the principle here could point to and

say, you know, all the information that's being sought here,

whatever we have is in these documents.  Okay.  That I have no

problem ordering and then he would turn over those documents.

But if it requires this deponent to interview the principle

and say, what's been happening with this company, I don't

think I can order that.  But let me just ask the SEC.  Do you

think that I should be ordering that?

MR. MILLER:  Yes, Your Honor.  And I think we fully

agree that that really is the issue of this dispute and all

other discovery disputes here and I think in our --

THE COURT:  So he's supposed to confess all of his

crimes to this -- alleged crimes -- to this person and then

this person gets to say, on behalf of the corporation, yeah,

we did this crime, that crime, and that crime.  And whatever

else.

MR. MILLER:  No, Your Honor.  Not that broadly.  And

no -- I think the best way to look at this is the way I think

the case at both Collector's Café and SEC cited in our reply,

the Mutual Benefits case from Florida I think handled this the

1  best way and that was to respect both the Fifth Amendment

2  right of the corporate officer and the corporation's

3  obligation to, you know, comply with Rule 30(b)(6).

4          The officer who was asserting the Fifth Amendment

5  right in that case was required to educate another witness to

6  the extent that there was information that could be gleaned or

7  it, you know, an inference that could be drawn from records

8  that exist.  So it's more than just handing over a box of

9  records.  But it -- where it stopped or it drew the line was

10  it did not require the individual asserting a Fifth Amendment

11  right to provide information that was solely in that officer's

12  head.

13          THE COURT:  Okay.  Well, so let's talk about where

14  this dividing line is drawn.  I guess I can accept that the

15  principle might need to do more than say, here's the box of

16  records under the case law that was cited.  And might need to

17  say, you know, here's where this bank account is, and this

18  record is -- when this record talks about bank account X, it

19  means, you know, this bank account that's over here or

20  something else that's in the records.  And let's say we use

21  your formulation which the, I believe that the corporation and

22  it also cited, there's not much way for me to police that, I

23  assume.  I mean, I guess I could just order that and say

24  provide any information but -- you know, that's reflected in

25  the documents but nothing that's solely in your head.  Nothing

1   that's not within the documents.  If it -- I mean, that's the
2   way I would do it.  I would say you need to provide
3   information relating to any documents but not information that
4   is not reflected in the documents.  Is that accurate?
5           MR. MILLER:  Well, I would say it's a little
6   broader, but it's the same principle, but instead of just
7   documents, I mean, there were, at some point, other corporate
8   employees and officers.  I mean, we've already had a
9   deposition of a former COO.  I think the SEC would say it's
10  not just -- remember, we're proposing a dividing line of
11  things that are solely in Mr. Kontilai's head.  There's no, I
12  think, basis to compel him to provide that.  But if it's the
13  representative of the company who's going to testify has to
14  not just, I think, to prepare in good faith, needs to do more
15  than just talk about records with Mr. Kontilai.  I think there
16  needs to be some -- at least some effort to talk to former
17  employees if it becomes, you know, relevant right --
18          THE COURT:  Oh, oh, yes.  No, no.
19          MR. MILLER:  Okay.
20          THE COURT:  I'm not talking about the deponent's
21  responsibility.  I haven't really quite gotten that.
22          MR. MILLER:  Okay.
23          THE COURT:  Right now I'm really just thinking about
24  what I'm going to be requiring the principle to do.
25          MR. MILLER:  Right.  So yes, I think as far as

documents that exist and information that exists, with, you

know, electronic or otherwise, yes, I think the individual

officer, Mr. Kontilai, has an obligation to help provide

information that can be gleaned from those records.

But also, I think Your Honor's aware, there has been

numerous statements by the company that some -- or that

records in some instances don't exist.  And where records

don't exist, I think it, you know, we have a case here if

you'd like to -- if I can hand it up -- but there is an

obligation to prove that records don't exist in --

THE COURT:  Hold on.  Are we on 30(b)(6) or document

requests?  What are we talking about now?

MR. MILLER:  Both.  And so it, look, if they -- at

the 30(b) --

THE COURT:  I didn't know that there was a live

document request issue outstanding.

MR. MILLER:  Well, there's not an issue before the

Court about document requests.  It's something that is related

to this.  You know, there have been document requests that

have been responded to with at least some extent saying they

are records that don't exist or that they're -- it's hard to

tell because sometimes it's a combination of that either don't

exist or Mr. Kontilai's refusing to provide them.

But, the -- in any event, at least in the 30(b)(6)

contest -- context, I think it is Mr. Kontilai's obligation to

allow and assist the corporate representative to understand
that a document doesn't exist. And in that situation that it,
you know, he needs to help a witness understand that a
document either it doesn't exist today, did it ever exist,
and, you know, what happened to it. So those kind of things.
And there is an obligation to do that to prove that documents
don't exist. It can't be left, you know, just out in the air,
that, you know, the fact that a document is not in our hands
today, we need to have an answer of whether it existed or not.

THE COURT: Okay. So this is a supplement to what I
just talked about which is what it is that Mr. Kontilai is
going to be required to do. So in addition to, you know,
talking about what something that's in a document or what it
might mean, you're -- what you're saying is that he might need
to, if asked about where is some document, answer that
question. And if he's -- they say it doesn't exist, he's
supposed to -- if his answer -- try it again.

MR. MILLER: I think it would be plain and forward
the question -- if there is a question about a particular
asset and the answer is something to the effect of, you know -
-

THE COURT: Just give me an example. Let's just try
an example.

MR. MILLER: Okay. So it would be, you know, there
was a certain transfer of money in the summer of 2018. And --

1    THE COURT:  Reflected in a document?

2    MR. MILLER:  Yes.  And we want to know what the
3  purpose of it was for and the corporate representative
4  testifies that it was, you know, the company's position that
5  it was for a repayment of a loan.  And the next follow-up
6  question is, right, what loan and what -- is there a document
7  that evidence is allowing?  And in that situation, I think
8  we're entitled to understand like is there a document?  Was
9  there ever a document?  And to do that --

10    THE COURT:  Okay.

11    MR. MILLER:  -- I think the corporate rep needs to
12  say if it doesn't have a document and didn't review one, what
13  steps did the corporate rep take to learn about whether a
14  document existed and I think what Mr. Kontilai's required to
15  do is help -- is prove a document doesn't exist.  The burden
16  is on him.

17    THE COURT:  Well, you're not taking his deposition
18  so there's no burden on him.  Right?

19    MR. MILLER:  Well, it -- the --

20    THE COURT:  I'm not sure what you --

21    MR. MILLER:  -- the burden is on him in his
22  corporate capacity.  If the company is going to say it doesn't
23  know where a document is --

24    THE COURT:  I doubt he's going to be the 30(b)(6)
25  person.  So let's assume that's not the case.  So what I'm

1  trying to figure out and it's as much a practical problem as a

2  legal problem, is what is this 30(b)(6) witness -- let's

3  assume for the moment it's a forensic accountant -- this 30 --

4  this forensic -- hopefully you're going to provide some

5  warning on some of this so they know what questions to ask

6  because otherwise this would be a very short and unfruitful

7  deposition.  But let's say you're interested in whether

8  there's any documents evidencing of the loan repayment.  Okay.

9  And then the forensic accountant says, oh, okay.  I had this

10  record that says there's this transfer and the record says

11  it's a loan repayment.  I wonder what loan this is for.  You

12  want him to go to Kontilai and say do you have the loan

13  agreement for which this is a repayment and you expect

14  Kontilai to answer?

15          MR. MILLER:  Yes.

16          THE COURT:  Yeah.  Okay.  I want to frame it not --

17  in terms of what we're ultimately expecting Kontilai to do.

18  Okay.  So all right.  Well, having said that, why don't we

19  hear from whoever wants to respond on this side as to whether

20  there's some disagreement about what's being proposed.

21          MR. LITTLE:  Sure, Your Honor.  As I indicated I

22  represent Mr. Kontilai.  And first of all, I need to correct

23  something that has been misstated in the papers.  We have

24  never refused to produce documents.  We're in initial stage

25  ordered by Judge Schofield where we are to produce documents

1  and give information relating to assets, not full blown

2  discovery, but assets and location of assets.  That's where we

3  are right now.

4          We've never refused broadly to produce documents.

5  We have already produced documents to the SEC; bank statements

6  from several banks, storage invoices, payments, and things

7  like that.  We recently obtained an inventory of assets that

8  were kept in these storage units out in Las Vegas and we're

9  going to be producing that.  We just got it.  So it's not true

10 that we're refusing to produce documents.

11         We are very much aware that the act of production

12 privilege is limited.  It only -- it only applies to certain

13 broad requests that the Government would make, but where the

14 Government has identified specific records that are known to

15 exist, we have to produce them and we are going to produce

16 them.  And Mr. Kontilai will meet with whatever corporate

17 respective is designated.  Whether it's a forensic accountant

18 or a board member or whatever and produce documents.

19         I think the problem here to get to the bottom line

20 is exactly the issue that you flagged yourself, Your Honor.

21 We're in a very gray area.  At what point does it go beyond

22 assisting the corporate representative in identifying

23 documents and giving him information or does it start to

24 infringe on his Fifth Amendment rights?

25         The SEC provoked this criminal investigation.  They

had a right to do it.  I'm not questioning that.  But that is
the -- that is the big thing hanging over Mr. Kontilai's head.
And so for example, to take counsel's example, that last year
about a million dollars was transferred through several bank
accounts to Gale Hold [Ph.].  The -- counsel just indicated
that this was alleged to be a loan of some sort.  And so the
corporate representative is going to speak to Mr. Kontilai and
say, okay, what evidence do you have that this is a loan?  And
if he says I have none.  I have no documents, he's now made an
admission that there's no evidence to support the claims that
was actually repayment of a loan to Gale Hold.

It starts to cross the line into substantive
testimony because that corporate representative will then
testify under oath as to an admission that my client made
that, gee, there are no documents to evidence this so-called
million dollar loan.

And so I -- we're not objecting to proceeding,
obviously.  Something has to be done here.  And it would be
helpful for counsel to submit the questions in advance.
Otherwise, as Your Honor indicates, that could be a short
deposition because once they start to cross the line into what
I honestly believe is an effort to get the corporate
representative to obtain information from Mr. Kontilai that's
substantive in nature and infringe his rights, you know, I
would come to seek relief from the Court.

1      So if the questions are put in advance to whatever

2 corporate representative is designated, we can look at that

3 and raise our objections and I think that's the way to do it.

4 Otherwise, we're in this very gray area of he has to provide

5 information, but what is that information?  Is it admissions

6 that will be relevant to the allegations in this case and the

7 criminal investigation or is it simply helping the corporate

8 representative get whatever information is necessary to

9 respond to the SEC's inquiry.

10      THE COURT:  Okay.  Well, look, the last thing is so

11 broad as to not unfortunately advance the ball.  Because, you

12 know, obviously they're not going to say -- they're not going

13 to say they're seeking admissions, but you are suggesting that

14 just answering some basic questions could be an admission.

15 I'm not sure what we do about this.  I mean, if there's a list

16 of ten loans and you say to me, okay, he's -- we go to loan

17 number one and Mr. Kontilai says, yeah, that loan is in this

18 box.  That document is in this box.  Two, that document's in

19 this box.  Three, what does he say for number three?  He --

20 does he assert a Fifth Amendment privilege?  You say he can't

21 say I -- there is no document because that becomes an

22 admission.  What does he say?

23      MR. LITTLE:  Well, that's the issue, Your Honor.

24      THE COURT:  I'm asking you.  What's your proposal?

25      MR. LITTLE:  I don't think he should be put to

1  supplying that information.  He --

2          THE COURT:  Okay.  So he says I'm not going to

3  answer your question?

4          MR. LITTLE:  Right.

5          THE COURT:  Okay.  And then they go to number four

6  and they -- then he says, yes, that loan document is in that

7  box.  So they can go through the list in your view?

8          MR. LITTLE:  Sure.

9          THE COURT:  Okay.

10          MR. LITTLE:  But the -- and look, we're painfully

11  aware, Your Honor, there are adverse inferences here.  This is

12  a civil case.

13          THE COURT:  Right.

14          MR. LITTLE:  The real concern here is the ongoing,

15  very serious criminal investigation --

16          THE COURT:  Okay.

17          MR. LITTLE:  -- by the fraud section.

18          THE COURT:  All right.

19          MR. FLEMING:  And so unfortunately, as I've

20  explained to my client, he's going to have to pay the

21  consequences -- suffer the consequences of asserting his

22  rights.

23          THE COURT:  Okay.

24          MR. LITTLE:  And that is what it is.

25          THE COURT:  All right.  Okay.

1    MR. LITTLE:  In essence, the -- I don't know what

2    the SEC's big concern about this is because they can file up

3    adverse inferences instead of demanding that he utter

4    something and say, oh, you got me, there's no document.

5    THE COURT:  Right.  We're in this 30(b)(6) context

6    as opposed to a questioning of him.

7    MR. LITTLE:  That's right, Your Honor.

8    THE COURT:  So it's -- you know, it raises these

9    other issues.  I just don't think there's much difference

10   between sides as to what's now supposed to happen.  The

11   corporate representative is going to -- I mean, I'll -- well,

12   let me hear from the corporation.

13   MR. FLEMING:  Your Honor, I just wanted to

14   contribute a little something that, you know, I agree with

15   you.  It's a very complicated problem.  I think Your Honor has

16   correctly discerned that there really is not a whole lot of

17   daylight between the two side's positions.  But this -- but I

18   wanted to say this.  And one of the reasons I requested a

19   settlement conference if that was appropriate with Your Honor

20   --

21   THE COURT:  Oh, I remember that.  It's on my list.

22   Go ahead.

23   MR. FLEMING:  Yeah.  Is this, I've had a lot of

24   discussions with the company's investors.  This is a pre-

25   revenue company.  They've never been operating.  And a lot of

the investors, and certainly not all of them, but a lot of them have indicated to me that what they want to do is to move forward to become an operating company. And it seems to me that since the company's responsibility in this case is wholly derivative from Mr. Kontilai who the SEC has levied their allegations against. And the company is of course, responsible in that situation. But as a practical matter you have a constituency of investors who are innocent here who have expressed that they would like to move the company forward. So, you know, that's one point I wanted to make.

The other point is this. There have been two predecessor firms prior to us that participated in the investigation phase of this case. And they have produced and we have produced some as well, 180,00 pages of documents. Which, as I understand it, Your Honor, is the complete set of corporate records that the company has. So the idea that Mr. Kontilai is going to be able to say, oh, well, here's the loan document that is being referred to which we didn't produce before is really not likely in this case. I'm not naive. Maybe there's a box somewhere of documents, but, you know, as of now, we've uncovered everything we can [inaudible] --

THE COURT: Though -- though he might be able to point to something already produced that was not readily understandable to be the thing that's being referred to in some other document.

1          MR. FLEMING:  I think that's possible, Your Honor.

2    But we really are talking in the theoretical.  These documents

3    -- this is not your exemplar of great corporate record

4    keeping.  So it's a problem in this case.  We've got a bunch

5    of documents with marketing brochures and intellectual

6    property applications and lawyer's bills, and, you know,

7    storage facilities, and the Jackie Robinson contracts.  Things

8    of that nature.  But there is not kind of a button down

9    procedure for record keeping and now it shows.

10          We took the deposition last week of the former COO.

11   I asked her specifically about the record keeping practices.

12   And she said there were none.  That's just the way it is and

13   in my experience, not completely uncommon of startup ventures.

14   But unfortunate in this circumstance.

15          But the point I wanted to make is I understand the

16   SEC's proposed model for proceeding.  But I don't think it, as

17   a matter of reality, there's going to be this ability to kind

18   of comb through the 180,000 pages and say, here's the document

19   that the SEC missed and this explains everything.  The

20   documents are kind of well-known at this point.  It's a closed

21   universe.

22          So that was one of the reasons why I thought that

23   their solution to this seemingly intractable problem is a

24   resolution where the company can settle the case and proceed

25   forward as its investors desire.  And we're going to be filing

1   a brief, of course, Your Honor, scheduled for today, on the

2   preliminary injunction hearing which will include a lot of

3   those expressions by investors.

4           THE COURT:  Okay.

5           MR. MILLER:  Yeah, Your Honor.  I'd just like to

6   touch on a couple of things that counsel brought up.  But the

7   biggest thing is that, look, it's true there are a -- that

8   there's a big volume of documents that have been produced.

9   And it's true that it -- from our perspective, we agree, it

10  looks like the company was not that great at record keeping.

11  Which is exactly the situation that a 30(b)(6) deposition is

12  designed for, is we have a big volume of documents, you know,

13  the parties disagree about what they mean, and it's a

14  corporate obligation to have somebody prepared to talk about

15  them and make sense of them in a more streamlined fashion.

16          And I also think that the idea that there are so

17  many documents out there is another indication that this is a

18  productive exercise.  And the point of these -- this

19  deposition now and of discovery at the preliminary injunction

20  stage is to locate assets.  You know, we took the deposition

21  of Mr. Kontilai, he's apparently in Mexico City, out of the

22  country and we understand that he was in the country at the

23  time the lawsuit --

24          THE COURT:  Mr. Little has something to say on that,

25  I think.

1    MR. LITTLE:  He's not.  He's in the United States.

2    THE COURT:  Okay.  Go ahead.

3    MR. LITTLE:  And this thing about his being -- I

4    just want to correct this because this has been poisonous in a

5    number of submissions to the Court.  He didn't flee anywhere.

6    His wife is Mexican.  His family --

7    THE COURT:  I think you brought it up last time.

8    MR. LITTLE:  -- lives in Mexico.  Yeah.  And he's --

9    he was down there and he disclosed where he was.  He was on a

10   call with dozens of people.  A fugitive doesn't say, oh, by

11   the way, I fled down in Mexico.  Don't tell anybody.  I mean,

12   that's ridiculous.  He's back in the United States and he's

13   not fleeing anywhere.

14   MR. MILLER:  Okay.  The point is not where he

15   physically is.  The point is that he left the country in the

16   middle of an asset freeze and we don't know where any of the

17   company's assets are.  That's the -- the point of his

18   deposition is to help us find those things.

19   THE COURT:  Okay.  Yeah.

20   MR. MILLER:  And there are a large volume of records

21   that are incoherent that a 30(b)(6) representative would help

22   streamline the process.  And at the end of the day, you know,

23   the company raised 20 million dollars -- close to 30 -- and we

24   don't know where it is.  And the CEO, Mr. Kontilai, as a

25   corporate representative has corporate obligations that for

1   sure need to be blended with his Fifth Amendment rights, but

2   we think the proposal -- the method in the Mutual Benefits

3   case balances those correctly.

4           THE COURT:  And the method is what?  To instruct him

5   to educate the 30(b)(6) deponent except as to things that are

6   within his, you know, that are not reflected in documents and

7   within his knowledge?  Is that, I mean --

8           MR. MILLER:  I think to be a little more precise is

9   to say he doesn't need to provide information that is solely

10  within his head.  He needs to provide information that can be

11  gleaned or inferred from other corporate information including

12  corporate records.

13          THE COURT:  I'm not sure there's any difference in

14  what we're saying.  Did you have something you want to add?

15  I'm sorry?

16          MR. FLEMING:  Just a minor point.  You can almost

17  anticipate what I'm going to say, Your Honor, and that is what

18  I can't get past is the idea that the -- whoever's designated

19  to give the 30(b)(6) deposition, you know, has a completeness

20  problem in the records.  And so educating themselves on the

21  records will prove to be incomplete.

22          And I understand what the SEC is saying about

23  plumbing Mr. Kontilai's brain for whatever missing gaps there

24  might be, it seems a thorny Fifth Amendment issue to me, but

25  it's really not my issue, so I leave that to Mr. Little.  But,

1  you know, my biggest theme of why I oppose this motion was the

2  futility of all this.  Especially with a pre-revenue company

3  that really the constituents are Mr. Kontilai, and the

4  investors.  And it seems as though the investors, you know,

5  are speaking to me about their desires.

6          THE COURT:  Okay.  I'm not, I mean, I'm not quite

7  sure how to frame this.  I really don't think that there's any

8  arguments between the two sides on the law.  I'm not sure

9  there's any arguments on any facts yet.  It -- the corporation

10 has to produce a corporate representative.  The corporate

11 representative has to make all reasonable efforts to educate

12 him or herself on the topics that are -- that have been given.

13 Mr. Kontilai is expected to assist with that consistent with

14 his Fifth Amendment rights.  And I don't think there's any way

15 I can in advance figure out what specific questions he did or

16 did not improperly answer from the corporate designated

17 representative.

18          I think we're just going to have to go down the

19 road.  I mean, I'm going to accept the framing of the issue

20 and the case law.  He's permitted to withhold information that

21 was solely contained in his memory and is not implied by a

22 document.  How that plays out, I can't possibly predict.  So

23 we should go forward.  I would think that the SEC would be

24 helped if it gave some really specific topics.  Like, you

25 know, what documents show the loan repayment on this date of

1  this amount from this account.

2      Because otherwise this task of preparing may be

3  quite daunting.  But I'm not going to issue any orders on

4  that.  I think we just have to go down the road and see what

5  happens.  I mean, that's my ruling.  I don't think it's any

6  big surprise.  So anything more that we should be doing on

7  this?

8      MR. MILLER:  Your Honor, one thing to add, I think

9  it's just talking about timing.  In the SEC, we're happy to

10 use the deposition notice that we have and within each topic

11 list expected, you know, more specific questions under those

12 topics.  And we can do that promptly.  And I think, you know,

13 we asked for a deposition, you know, sooner rather than later

14 because we are trying to find assets and I understand that

15 it's just going to take a little bit of effort for the

16 corporation to prepare.  But I do think we need a relatively

17 tight deadline and I'll just prepare.

18     THE COURT:  I didn't know that that was a dispute

19 between the parties.  Have you discussed what -- when this is

20 going to happen?

21     MR. MILLER:  No.  I think this whole motion was to

22 compel the company to actually sit down so we haven't talked

23 about a date.

24     THE COURT:  Oh.  Okay.

25     MR. MILLER:  And, you know, we proposed in our

paper, look, we understand it might not be feasible to get

this done by the July 31 preliminary injunction hearing, but

at least within the next 30 days is our request.

THE COURT:  Any problem with that?

MR. FLEMING:  Your Honor, just -- and I always hate

being in this position, just with August vacation schedules, I

would ask for the end of the month.  End of August.

THE COURT:  Well, why don't you -- before we assume

it's not possible, why don't you see what the -- I think the

parties need to talk about this.  And if they honestly cannot

agree on a date, then come back to me.  Okay.

MR. LITTLE:  Thank you, Your Honor.  I just needed

to consult.

THE COURT:  Okay.  I'm -- are we saving the issue

about the accounting for the hearing, or where are we on that?

MR. MILLER:  From the SEC's perspective, Your Honor,

I think it -- we're -- it's ripe for decision at the Court's

convenience.  But we think the basic same principles of

corporate obligations that we talked about today really

overlap with that issue as well, and that's, you know, the

case law is pretty clear that the corporate officer has

obligations regardless of Fifth Amendment rights and in the

accounting context, it's, you know, again, to help the

corporation provide a complete response and allow somebody to

sign it.

1    THE COURT:  Wait.  You just have the corporation?  I
2 thought you --
3    MR. MILLER:  Oh, I'm sorry.  I'm sorry.  No, with --
4 I'm sorry.  I misspoke.  So there is a -- that's an issue that
5 we have in our motion to compel the accounting we talked
6 about.  With Mr. Kontilai's personal accounting obligations.
7    THE COURT:  Hold on.  Let's just back up.  Were you
8 -- were you -- maybe -- oh, I'm sorry.  That's right.  You
9 wanted them to swear to its previously submitted accounting.
10 I think we -- I -- I -- yeah.  Let me just finish with the
11 accounting issue.  I hadn't really kind of separated them in
12 my head.  So, you know, to the same extent that the
13 corporation is preparing for this 30(b)(6) deposition, it
14 presumably can ask whatever questions it has to ask on the
15 accounting.  And then it should submit -- I mean, it should
16 submit a signed, sworn accounting reserving or explaining that
17 it was unable to obtain whatever information it was unable to
18 obtain.  I mean, it should be able to -- you have to be able
19 to do something, right?
20    MR. FLEMING:  I understand, Your Honor.
21    THE COURT:  Okay.
22    MR. FLEMING:  I do.  I mean, we made our very best
23 effort to try to provide, you know, an up to date accounting
24 which we did, just unsworn.  Because it's a lawyer's creation
25 --

1          THE COURT:  Right.

2          MR. FLEMING:  -- based on the documents.  But I will

3   endeavor to have whoever we're able to find who can speak to

4   these topics as best they can, with appropriate reservations,

5   and, yeah, swear to it.

6          THE COURT:  Okay.  So I was referring to the

7   accounting for Mr. Kontilai.  Is that something we're dealing

8   with today or not?

9          MR. WILLIAMS:  Your Honor, I think that's also fully

10  briefed and something we're prepared to deal with today.

11         THE COURT:  Okay.  So given what I've already said

12  about the privilege, where does that leave us?

13         MR. WILLIAMS:  I think that the temporary

14  restraining order is an accounting against two defendants,

15  right?

16         THE COURT:  I'm sorry.  Say it again.

17         MR. WILLIAMS:  There's two defendants in this case.

18  There's of course, Mr. Kontilai --

19         THE COURT:  Yeah.

20         MR. WILLIAMS:  -- the individual defendant and then

21  there's the corporation.

22         THE COURT:  Yes.

23         MR. WILLIAMS:  And both are ordered to provide

24  records with respect to transactions, assets, and the like.

25  And I think this dovetails with what's being discussed and

1  that is the SEC --

2           THE COURT:  And that he's not objecting to provide

3  records?

4           MR. WILLIAMS:  As well --

5           THE COURT:  The individual?

6           MR. WILLIAMS:  Well, I'm sorry?

7           THE COURT:  The individual is not objecting to

8  providing records?  He thinks he's already done, but that's

9  not an issue?  Am I right, Mr. Little?

10          MR. LITTLE:  I'm not sure what records we're now

11 talking about.  The -- we have explained that we cannot give

12 an accounting because that would be a real breach of his Fifth

13 Amendment rights.  He can't sit down, explain --

14          THE COURT:  It's testimonial in some ways.

15          MR. LITTLE:  -- testimony each and every

16 transaction.  The bank records have been produced.  They are

17 begin produced.  The SEC itself --

18          THE COURT:  Has it -- the production hasn't been

19 completed?

20          MR. LITTLE:  We're still obtaining it.

21          THE COURT:  Oh.

22          MR. LITTLE:  Some of their -- some of the records we

23 don't even have.  So we've issued subpoenas to bank accounts

24 that preceded -- let me take a step back and explain, Your

25 Honor.  During the investigative phase of the SEC's case, they

obtained records from a number of banks going back five to
seven years.  They did not -- the company's been in existence
for about ten years -- over ten years.  They did not get the
earlier records which would show contributions that Mr.
Kontilai made to the company which might show money that the
company still owed to him, which would also show other
transactions.

We have issued subpoenas, both the company and Mr.
Kontilai to get those earlier records and we've been getting
them and we're preparing them and going to be producing them.
And so as I said, we have no problem with producing records
like that, but in terms of an accounting, he plainly cannot be
compelled to basically explain where all the money went, what
money he took, what money he didn't take, what money he put
in.  That would be a breach of his Fifth Amendment rights.

And the idea of somehow that the TRO trumps his
Fifth Amendment rights makes no sense.  And the idea that we
asked for additional time to figure out what we were doing
here would somehow waiver his Fifth Amendment rights makes no
sense.  He has his Fifth Amendment rights.  And that's the end
of it.

MR. WILLIAMS:  I can respond, Your Honor.

THE COURT:  Yep.

MR. WILLIAMS:  So, first, even if you were to accept
everything that Mr. Little said, the SEC's request that the

 1  TRO be modified for these records to be produced.  I think we

 2  do take issue.

 3          THE COURT:  So, say that sentence again.

 4          MR. WILLIAMS:  Consistent with our filing, we ask

 5  that the TRO --

 6          THE COURT:  Yes.

 7          MR. WILLIAMS:  -- be modified.

 8          THE COURT:  Yes.

 9          MR. WILLIAMS:  So rather than asking for an

10  accounting --

11          THE COURT:  Yes.

12          MR. WILLIAMS:  -- asking for specific -- asking for

13  document production which would then not be -- there would not

14  be a Fifth Amendment privilege.

15          THE COURT:  Okay.  And so what -- and maybe it's in

16  your letter and I've forgotten it.  Is there a specific clause

17  you want that says produce certain records?

18          MR. WILLIAMS:  Yes.

19          THE COURT:  Okay.

20          MR. WILLIAMS:  And I believe it's in the last two

21  paragraphs where the SEC --

22          THE COURT:  Oh, yes.  Okay.  Yeah, yeah.  That was

23  your alternative suggestion.

24          MR. WILLIAMS:  Correct.  So --

25          THE COURT:  Produce documents already in existence.

1   Okay.  And I assume you don't have a problem with that, do

2   you?

3           MR. LITTLE:  No.

4           THE COURT:  Okay.

5           MR. LITTLE:  I thought that was already a part of

6   the SEC's document request.

7           THE COURT:  Well, they want it I guess to be a court

8   order.  So I'm happy to order it.

9           MR. WILLIAMS:  And so that's -- then the ones --

10          THE COURT:  What you should do is after consulting

11  with Mr. Little on the form, just send me an order to sign by

12  letter.  You can file it on ECF.

13          MR. WILLIAMS:  Yes, Your Honor.

14          THE COURT:  Okay.

15          MR. WILLIAMS:  So then I wanted to add one more

16  thing on that because that is our -- that is our alternative

17  request and we're happy with that, Your Honor.  But I do think

18  this dovetails in the bigger issue and what I'm trying to do

19  is stave off a future a discovery fight where we have to come

20  back before Your Honor.  And that is this, is that, we

21  understand that Mr. Kontilai wearing an individual hat, has a

22  Fifth Amendment privilege.

23          But as a CEO, there are many benefits that come with

24  operating a corporation.  Including the ability to raise the

25  amount of money he did.  With that comes certain obligations.

1   And so I think that we have provided a plethora of case law
2   explaining that when you're a CEO, you don't -- you're not
3   able to withhold documents or information -- even if in a
4   corporate capacity -- even if it will incriminate you.

5          And so this goes right into the accounting.  And
6   that's the issue we're having is we essentially have Mr.
7   Kontilai and Collector's Café pointing to each other.
8   Collector's Café saying we can't get you an accounting because
9   Mr. Kontilai won't give us any documents or information
10  because of his Fifth Amendment privilege.  And Mr. Kontilai
11  saying I'm not, you know, yes, I'm CEO, but I don't need to do
12  anything here because I have a Fifth Amendment privilege.

13         And so it gets into the same sort of -- it dovetails
14  with this issue here in the 30(b)(6) is what are Mr.
15  Kontilai's obligations.  And so I just want to be very clear
16  as that is what we're asking Mr. Kontilai to do is assist in
17  producing the accounting that was ordered by the Court.  Both
18  for Collector's Café as well as any sort of the order with
19  respect to corporate transactions and assets.

20         THE COURT:  I'm losing you a little bit.  So I feel
21  we're going backwards, which I don't mind doing.  But I
22  already talked to these folks about producing -- educating the
23  30(b)(6) witness about producing an accounting.  We already
24  talked about how they're going to consult with Mr. Kontilai in
25  order to do both those things.  I already quoted from the case

1  law saying what -- how Kontilai had to assist.  And then I

2  washed my hands of it.  Is there something more I was supposed

3  to do?

4            MR. WILLIAMS:  I think we can see how it plays out.

5  My point, Your Honor, is that Mr. Kontilai in his individual

6  capacity was also ordered to provide information with regards

7  to the corporation.

8            THE COURT:  When you say in his individual capacity

9  -- okay.  Well, I mean, I have a -- he can only act -- I

10 guess, he obviously has to act as an individual, but what

11 order are you referring to specifically?  The account -- the

12 order to provide the accounting?

13           MR. WILLIAMS:  Correct.  The temporary restraining

14 order.

15           THE COURT:  Right, right.  Well, that's -- I thought

16 I said -- I mean, I didn't really buy your arguments on that

17 because I thought -- I mean, I can go through them if you

18 want, but it seemed to me that he was going to be entitled to

19 -- with respect to things that don't fit into that formulation

20 from the case law, he's going to be permitted to evoke his

21 privilege.  And if it's within that formulation, he's not, and

22 then we have to see what happens.

23           MR. WILLIAMS:  Okay.  Your Honor, and I just want to

24 be clear on that.  And I apologize if you had said it and I

25 missed it.  But, just to be very clear is that the corporation

1  will not be giving us an accounting saying we can't give

2  information or record from Mr. Kontilai.  They are under an

3  obligation to go to him and conversely --

4          THE COURT:  Yeah, they're going to go to him --

5          MR. WILLIAMS:  -- he's under an obligation --

6          THE COURT:  -- but then if he -- but then if he says

7  I'm not answering this question, that question, or that

8  question, and they say, you know what, we can't give you a

9  full accounting because the only person who knows this is

10 Kontilai and he wouldn't answer questions A, B, and C, they're

11 going to be able to say that.

12         MR. WILLIAMS:  Thank you, Your Honor.

13         THE COURT:  I can't force them to give an accounting

14 if they can't get all the information.  I mean, I can't force

15 them to assert that the accounting is accurate in an objective

16 sense if they know in advance they haven't been able to get

17 all the information they need.

18         MR. WILLIAMS:  No, Your Honor.  But Your Honor would

19 be able to compel Mr. Kontilai to provide the information

20 that's required under the case law under -- as the CEO of the

21 company.

22         THE COURT:  I think I --

23         MR. WILLIAMS:  And so but we can --

24         THE COURT:  -- did that already.

25         MR. WILLIAMS:  Yes.  And that's what I'm saying is,

1    if I missed that, I apologize.  But so we're on the same page

2    is that just as he is going to be required to assist in

3    preparing a 30(b)(6) corporate deponent, he's also begin

4    required to assist in the accounting that was ordered by the

5    temporary restraining order.

6            THE COURT:  In the corporation's accounting?

7            MR. WILLIAMS:  The corporation's accounting.

8            THE COURT:  Yes.

9            MR. WILLIAMS:  Thank you, Your Honor.  That's

10   understood, right?

11           MR. LITTLE:  Yeah.  To the extent we've discussed

12   and I don't know how many times I have to say it, we're not

13   refusing to produce documents.

14           THE COURT:  Well, it's not that --

15           MR. LITTLE:  And that keeps me --

16           THE COURT:  -- it's more than just producing

17   documents.

18           MR. LITTLE:  No, I agree, Your Honor.

19           THE COURT:  Yeah.

20           MR. LITTLE:  I just want to correct that statement

21   that keeps coming out.  It's not true.  We'll produce

22   documents and that's clear.

23           MR. FLEMING:  And, Your Honor --

24           MR. LITTLE:  And comply with the Court's order as

25   we've discussed.

1          THE COURT:  Okay.

2          MR. FLEMING:  I just wanted to clarify one point and

3    that is Mr. William's statements that the company is pointing

4    to Mr. Kontilai saying that I can't get documents from him,

5    that's not the case.  It has nothing to do with documents.  It

6    has to do with information.  Non-documentary information.

7          THE COURT:  Okay.  Well, we'll have to see how it

8    plays out.

9          MR. FLEMING:  Yeah.

10         THE COURT:  Okay.  I mean, the motion to strike, I

11   don't need to hear from the parties on it.  You know, parties

12   offer exhibits for discovery disputes and preliminary

13   injunction hearings and we deal with admissibility when they

14   come up.  As it turned out, the transcript was not relevant to

15   anything I decided today.  So I don't have to worry about its

16   use in terms of the preliminary injunction hearing.  I'm going

17   to wait for it to be offered.  I don't see a basis for

18   striking it.  But Mr. Little, okay, you seem to want to add to

19   your letter, I guess?

20         MR. LITTLE:  Yeah.  Just a -- I'd like a question

21   answered by the SEC which has not yet been answered.  Under

22   whose direction or encouragement was that recording made?  It

23   could well be that a -- we pointed out that that recording was

24   in violation of the law in several states that require all

25   person consent to the recording of the telephone conversation.

1  Otherwise it's a violation of state law.  Now counsel

2  correctly point out that if it's --

3          THE COURT:  Of course, the question is which -- the

4  law of what jurisdiction applies.  I'm not sure we know the

5  answer to that.  It's a very --

6          MR. LITTLE:  No, we do.

7          THE COURT:  -- complicated area.

8          MR. LITTLE:  No, we do, Your Honor because there

9  were investors in California.  There were investors in

10  Connecticut.  They participated in the call.  That's why we

11  pointed out, we're not just saying the law of 50 states.

12  We're talking about the law that applies --

13          THE COURT:  I understand.  But if I call someone in

14  California and record them, California says that's illegal,

15  and New York says it's perfectly legal.

16          MR. LITTLE:  Yeah.  But it's illegal under the case

17  law, Your Honor.  I believe it's illegal.

18          THE COURT:  Well, that has to be briefed some day

19  and it's not going to be the basis for striking a document at

20  this point.

21          MR. LITTLE:  I'm not arguing that right now, Your

22  Honor.

23          THE COURT:  Okay.

24          MR. LITTLE:  It's a simple question.  Did the SEC

25  request shareholders to record that call or did they encourage

1 them to record the call?  Or was it done independently of

2 them?  It's a simple question.  They can simply answer it

3 because this goes to admissibility.

4       THE COURT:  Okay.  Well, if they want to answer it,

5 I'm not -- that's essentially discovery request.  I think it -

6 - a question will have to be answered at some point if they

7 ever want to get it admitted.  Do you want to answer it now?

8       MR. MILLER:  Yes.

9       THE COURT:  You're welcome to.  I'm not going to

10 force you.

11       MR. MILLER:  Absolutely, Your Honor.  And we did --

12 though it was probably a discovery question, but the answer is

13 no.  The recordings were not made at the SEC's direction.

14       THE COURT:  Okay.  So someone brought them to you?

15       MR. MILLER:  Yes.

16       THE COURT:  Okay.

17       MR. LITTLE:  Fine.  Thank you, Your Honor.

18       THE COURT:  All right.  Okay.  I think that was the

19 agenda other than the settlement issue which I'm prepared to

20 talk about off the record.  Is it -- before we go off the

21 record, is there anything else that we need to do today?

22       MR. LITTLE:  No, Your Honor.

23       THE COURT:  From your point of view anything?

24       MR. MILLER:  Just an administrative thing, Your

25 Honor.  I think that with respect to Mr. Kontilai's personal

1　accounting obligation, you suggested that we would get

2　together and propose an order to send to the Court in a letter

3　format.  Was there a similar request that Your Honor has for

4　the order on the 30(b)(6) issue or is the --

5　　　　　THE COURT:  I was hoping the --

6　　　　　MR. MILLER:  -- [inaudible] --

7　　　　　THE COURT:  -- transcript would satisfy.  I quoted

8　from the case law.  I think the transcript should be

9　sufficient.

10　　　　　MR. MILLER:  Okay.  That's perfectly fine with the

11　SEC.  I just didn't want to miss something.

12　　　　　THE COURT:  That's fine.  No, the reason I asked for

13　it with respect to the accounting was that it was -- the --

14　you're modifying essentially -- well, modifying the TRO, so I

15　felt that should be in a writing in some way.

16　　　　　MR. MILLER:  Okay.

17　　　　　THE COURT:  Okay.  All right.  Do you want to turn

18　off the --

19　　　　　　　　　　　*  *  *  *  *

20

21

22

23

24

25

1    I certify that the foregoing is a court transcript from

2 an electronic sound recording of the proceedings in the above-

3 entitled matter.

4

5 _____

6                              Shari Riemer, CET-805

7 Dated:  July 22, 2019

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25