```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                                :
UNITED STATES SECURITIES AND                    :
EXCHANGE COMMISSION,                            :       ORDER
                                                :
              Plaintiff,                        :       19 Civ. 4355 (LGS) (GWG)
                                                :
       -v.-                                     :
                                                :
COLLECTOR'S COFFEE INC., et al.,                :
                                                :
              Defendants.                       :
---------------------------------------------------------------x
```

GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE

Before the Court is the motion of plaintiff ("SEC") to compel the deposition of defendant Mykalai Kontilai in New York (Docket ## 371, 372, 375, 376, 385, 425, 426, 434).

Kontilai has two separate grounds for asserting he need not appear in New York for his deposition: (1) that he should not be deposed at all because of his pending asylum application and (2) that the deposition should be taken in Russia (Docket # 425). We address each argument next.

Effect of Asylum Application

Where a party resists appearing at a noticed deposition, the Federal Rules of Civil Procedure require that the party raise the issue by means of a motion for a protective order. See Fed. R. Civ. P. 37(d)(2) (failure to appear at a noticed deposition is sanctionable "unless the party failing to act has a pending motion for a protective order under Rule 26(c)"). It does not appear that the SEC went through the formality of serving a notice of deposition. Nor would we expect it to do so given that notices of deposition should be issued only after the parties agree on an available date. Nonetheless, the same burden associated with seeking a protective order logically must apply to a party who simply refuses to cooperate in the scheduling of his deposition.

It is well settled that to the extent a party seeks a protective order under Rule 26(c), that party "has the burden of showing that good cause exists for issuance of that order." Gambale v. Deutsche Bank AG, 377 F.3d 133, 142 (2d Cir. 2004); accord John Wiley & Sons, Inc. v. Book Dog Books, LLC, 298 F.R.D. 184, 186 (S.D.N.Y. 2014). Thus, the burden to explain why he has good cause to decline to be deposed in New York rests with Kontilai.

Kontilai asserts that his asylum application should excuse him from being deposed in this case (Docket # 425 at 6).[1] Kontilai literally does not cite to a single case that explains the basis

---

[1] We assume arguendo that Kontilai in fact has a pending asylum application.

1

for his argument. As was true with regard to prior applications seeking to compel discovery from Kontilai that Kontilai resisted on account of his asylum application, see Docket ## 366, 379, 411, we will assume that Kontilai intends to invoke Fed. R. Civ. P. 26(c)(1), which permits a court to issue a protective order where a party shows "undue burden," see Docket # 427 at 2. However, Kontilai never describes what the burden is that he would suffer if he had to fulfill his legal obligations in this case.

Kontilai does submit the declaration of an alleged expert on Russian law who, in a disjointed declaration, asserts that Kontilai's ability to obtain asylum in Russia will be prejudiced if he is ordered to be deposed in the United States. See Docket # 426-3 at *10.[2] The expert gives no comprehensible explanation of why this is so, however. All this Court can glean from the declaration are the unsurprising conclusions that (1) the Russian Constitution prevents Russia from forcing Kontilai to return to a country to face persecution and (2) that Kontilai's rights under international law would be violated if he were forced to return to a country to face persecution. Id. The expert's leap to the conclusion that Kontilai's asylum application would be prejudiced if he were ordered to be deposed in this case is never explained. Kontilai's own memorandum of law does nothing to elucidate exactly what it is about a deposition that would affect the asylum application.

In the end, however, it does not matter why the expert believes that an Order requiring Kontilai to be deposed would hurt his asylum application. As the Court stated in its prior Order ruling on this question:

> Kontilai is legally obligated to respond to discovery requests. If Russia weighs his alleged fear of persecution in the United States differently because Kontilai complies with these important legal obligations, the Court finds that any such "burden" is not "undue." Notably, Kontilai does not cite to a single case that finds undue burden in circumstances that even remotely approximate the situation presented here.

Docket # 427 at 2. The same holds true with respect to the current application.

As he did in opposing prior applications seeking to compel discovery (Docket # 411), Kontilai suggests that the Court should delay the proceedings — specifically "to seek briefs amicus curie from asylum experts, such as the Office of the United Nations High Commissioner for Refugees ('UNHCR') which has been charged by the United Nations General Assembly with responsibility for providing international protection to refugees and other persons within its mandate and for seeking durable solutions to their problems" (Docket # 425 at 7). Once again, this Court rejects that request because (1) Kontilai has not shown "good cause" under Fed. R. Civ. P. 6(b)(1) for failing to procure such materials at the time he filed his brief and (2) Kontilai cannot even articulate a non-frivolous argument as to why these opinions would have any bearing on the Court's decision.

---

[2] "*_" refers to the page numbers assigned by the Court's ECF system.

Location of the Deposition

While "the party noticing [a] deposition usually has the right to choose the location," Buzzeo v. Bd. of Educ., 178 F.R.D. 390, 392 (E.D.N.Y. 1998) (internal quotation marks omitted) (quoting 7 Moore's Federal Practice - Civil § 30.20(1)(b)(ii)) (additional citation omitted), there is a rebuttable presumption that, absent special circumstances, the deposition of a defendant will be held where the defendant resides, see, e.g., Glatt v. Fox Searchlight Pictures Inc., 2012 WL 2108220, at *4 (S.D.N.Y. June 11, 2012); Estate of Gerasimenko v. Cape Wind Trading Co., 272 F.R.D. 385, 390 (S.D.N.Y. 2011). When the parties cannot agree on a location, "courts retain substantial discretion to determine the site of a deposition." Lewis v. Madej, 2016 WL 590236, at *3 (S.D.N.Y. Feb. 11, 2016) (internal quotation marks omitted) (quoting Robert Smalls Inc. v. Hamilton, 2010 WL 2541177, at *1 (S.D.N.Y. June 10, 2010)) (additional citation omitted). "Factors guiding the Court's discretion include the cost, convenience, and litigation efficiency of the designated location." SEC. v. Aly, 320 F.R.D. 116, 118 (S.D.N.Y. 2017) (citations omitted). "The safety of the proposed venue may also be considered." Id. (citations omitted).

However, as we pointed out in Aly,

> The presumption that a deposition should take place where a defendant resides is based in part on the assumption that the plaintiff exercised choice as to the forum of the lawsuit, and thus the presumption is weakest where the plaintiff was constrained to file suit in a particular forum. See Mill–Run Tours, Inc. v. Khashoggi, 124 F.R.D. 547, 550 (S.D.N.Y. 1989); accord Ambac Assurance Corp. v. Adelanto Pub. Util. Auth., 2012 WL 1589597, at *6 (S.D.N.Y. May 7, 2012); Ristevski v. S & P Carrier, Ltd., 2010 WL 1687878, at *2 (N.D. Ill. Apr. 26, 2010). Here, the Commission did not have the option of bringing these federal securities claims in [Russia]. See In re Livent, Inc. Sec. Litig., 2002 WL 31366416, at *1 (S.D.N.Y. Oct. 21, 2002) ("Plaintiffs' choice of forum was effectively constrained insofar as the Canadian judiciary was unavailable to them as a forum for these claims," due to exclusive jurisdiction of U.S. federal courts over claims under the Securities Act and Exchange Act). Thus, we will not accord [the defendant] the benefit of the presumption and will instead turn to the factors that guide a court's discretion in resolving disputes over the locations of depositions.

Id.

It is not necessary to examine the factors regarding the location of the deposition because the Court is convinced that — regardless of how the factors were evaluated — it is in fact not legally possible to conduct the deposition in Russia.[3] While Kontilai asserts without citation to any United States sources of law that the Hague Convention could be used to arrange for a

---

[3] We assume arguendo that Kontilai in fact is in Russia.

deposition in Russia,[4] see Docket # 425 at 12, the SEC points to persuasive authority that the United States has not accepted Russia's accession to the Hague Convention insofar as it relates to taking evidence (Docket # 434 at 7-9). The United States Department of State has specifically addressed this question, stating:

> The United States has not accepted the Russian Federation's accession to the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters because the Russian Federation did not name a central authority at the time of its accession, and did not make any specific declarations or reservations regarding methods of obtaining evidence. Due to the Russian Federation's unilateral suspension of judicial cooperation in civil and commercial matters, requests for evidence submitted via diplomatic channels in the form of letters rogatory generally are not executed by Russian authorities. The U.S. Department of State and the U.S. Embassy in Moscow will transmit such requests on behalf of U.S. litigants.

U.S. Dep't of State, Russia Judicial Assistance, Judicial Assistance Country Information (Nov. 15, 2013), https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/RussianFederation.html ("State Department Information"). This barrier to discovery in Russia was described in Phoenix Process Equip. Co. v. Capital Equip. & Trading Corp., 2019 WL 1261352, at *10 (W.D. Ky. Mar. 19, 2019). Phoenix Process Equip. Co. noted that "[b]ecause [a]n accession is effective only between the acceding country and those contracting states that have accepted the accession, the United States and Russia are not treaty partners in the Hague Evidence Convention." Id. (second alteration in original, internal quotation marks and citations omitted). "The procedures for requesting judicial assistance with foreign discovery pursuant to the Hague Convention are, therefore, inapplicable to this case." Id. (citations omitted). In other words, the deposition cannot take place in Russia under the Hague Convention.

Kontilai suggests that his deposition could be conducted by videographic means (Docket # 425 at 10-13). Indeed, Federal Rule of Civil Procedure 30(b)(4) permits the Court to order "that a deposition be taken by telephone or other remote means," including by videoconference. See also, e.g., Usov v. Lazar, 2015 WL 5052497, at *1 (S.D.N.Y. Aug. 25, 2015); RP Family, Inc. v. Commonwealth Land Title Ins. Co., 2011 WL 6020154, at *3-4 (E.D.N.Y. Nov. 30, 2011). But Kontilai does not explain how this would surmount the barrier to deposing Kontilai

---

[4] Kontilai instead cites to his Russian legal expert, who concludes that

> a directed US Deposition conducted in the Russian Federation of an American Citizen (Mykalai Kontilai) to be used in an US Federal Civil Court can be conducted pursuant to the rules and procedures outlined in the Hague Evidence Convention. This would require the US Government Agency through its (Central Authority) to seek this permission through the (Central Authority) of the Russian Federation.

Docket # 426-3 at *12.

in Russia.  Moreover, as the State Department explains: "The Russian Federation does not permit the taking of voluntary depositions of willing witnesses in civil and commercial matters."  State Department Information.  Thus, in the absence of contrary authority, we have no reason to believe that a video deposition in Russia would be permissible under the Hague Convention.  At least one Court has accepted a defendant's assertion of this principle.  See Interlabservice, OOO v. Illumina, Inc., 2017 WL 4217133, at *9 (S.D. Cal. Sept. 20, 2017) (accepting defendant's assertion that "Russian law prohibits the taking of depositions in Russia for American lawsuits — even if the depositions are taken by videoconference") (citation omitted).

The Court might consider an application to hold the deposition by video from a location other than Russia if it were persuaded that it was legally permissible to do so.  But Kontilai has not proposed any other location.  And the only place that we know for sure Kontilai can legally appear for the deposition is the United States.  Kontilai has not articulated any impediment to his appearing in the United States other than his argument regarding its effect on his asylum application.  Accordingly, Kontilai is ordered to appear for his deposition in this district on a date agreed upon by the parties.  If they cannot agree on a date, the parties may present their proposals for the date by letter filed on or before July 24, 2020, and the Court will order the deposition to take place on a date certain.[5]

So Ordered.

Dated: July 17, 2020
       New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

[5] While Kontilai states that he intends to invoke the Fifth Amendment at his deposition (Docket # 425 at 2, 10), he does not argue that his intention to do so has any bearing on the location or manner in which the deposition should be taken.  Thus, we have not considered the effect of his stated intention on the question of the scheduling of the deposition.