**THE LAMBERT LAW FIRM**
1025 Connecticut Ave 1000 NW Washington, D.C. 20036
100 Cambridge St., 14th Fl, Boston, MA 02114; 323 Sunny Isles Blvd, Ste 700, Sunny Isles Beach, FL 33160
Tel. (202) 640 1897; (617) 926 7500, (305) 938 0600, fax (800) 852 1950; e-mail LawDC10@gmail.com

Hon. Gabriel W. Gorenstein                    **MEMORANDUM ENDORSEMENT**
U.S. Magistrate Judge
Daniel Patrick Moynihan
United States Courthouse, Courtroom: 6B
500 Pearl St., New York, NY 10007-1312

September 27, 2020

Re: Defendant's Seeking Relief of Prohibition for Plaintiff to Insist on Counsel and Witnesses
Using for Depositions Software Distinguished for Its "Content Intelligence" Services

Your Honor:

**A.  Report on Successful Deposition of Defendant Mykalai Kontilai Providing Substantive Answers for Two Days.**

The undersigned reports to the Court that Defendant Mykalai Kontilai (Kontilai) successfully underwent via Zoom the 2-day deposition on September 24-25, 2020.  Kontilai never took the 5th Amendment.  Kontilai answered all substantive questions from the deposing parties, reviewing all exhibits shared through screen with the SEC, Intervenors, and JRF Foundation. Kontilai provided exceptionally deep, detailed information.  According to some other parties' comments, Kontilai passed the deposition with flying colors.  Kontilai's answers tend to prove that he was innocent, and SEC abused its powers to avoid prosecuting the true wrongdoer, Gail Holt, who admitted her wrongdoings under oath.  Instead the SEC has participated in alleged misconduct, cooperating with public enemy of the U.S. John Mark Dougan and providing immunity through proffers to Holt to go after Kontilai because of government corruption allegations he has made.

**B.  Demand of Plaintiff's Counsel that All Witnesses and Counsel Must Use Download and Use File-Sharing Software Egnyte.**

Prior to Kontilai's deposition, Plaintiff's counsel Mr. Terry Miller repeatedly sent to Kontilai's and other parties' counsel a requirement that Kontilai and counsel must download on their computers and use the software called Egnyte, for files transfers.  That requirement came in even though Kontilai was designated as the party responsible for the video-deposition settings and arrangements under the Court's Order.

The insistence of the counsel for SEC, triggered attention of Kontilai's counsel, why the SEC would not use recognized file sharing platforms, for example Dropbox, used by over 500 million people.  Moreover, Zoom allows for the sharing of files through on-screen features which also allow continued videorecording of the witness's reaction, making a separate file-sharing platform unnecessary. This feature was used successfully throughout two days of depositions with. No prejudice of any kind was caused to the SEC or other parties.

1

Kontilai annexes the Affidavit with 4 exhibits of Mark Meltser (Meltser), IT specialist and paralegal for the Lambert Law Firm (with Hi-Tech service responsibilities).

Kontilai and his counsel barely avoided Plaintiff's threat that the deposition would be treated as "obstructed", because after a blitz of research on the Egnyte showed the software to be a "Content Intelligence" platform. That demand from Plaintiff's counsel conflicted with the Court's prior directive that it was Kontilai to elect and designate the software arrangements for his deposition.

### C.  "Content Intelligence" Services of Egnyte, on Which Plaintiff's Counsel Insisted to be Downloaded on the Witnesses' and Counsel's Computers.

In short, the Egnyte software that Mr. Terry Miller was demanding to download on Kontilai's and on all counsel's computers, turned out to be from a tiny firm, whose management is dominated by persons with Indian names. Egnyte offers **"content intelligence"**. Egnyte, as it turns out, has as of late last year, had only 16,000 customers (compare with Dropbox with over 500 million).

The "**content intelligence**" is the feature of the services provided by Egnyte is independently noted by Wikipedia. Exh. 4 to Meltser Aff.  That means that Egnyte offers to implant trojan software into the targeted computers, on which the Egnyte software would be downloaded, to scoop out the contents of the hard drives. If that were the real intent of Plaintiff's counsel insisting on the parties and their counsel's depositions to download precisely that software, Egnyte—and not any other software—that would have devastating consequences.

The "content intelligence" could be interpreted, in plain words, as warrantless searches of the hard drives. To make things even worse, that would also allow to scoop out files and information covered by the attorney-client privilege in the cases initiated by the Denver office of SEC.  In Mr. Terry Miller's words, they routinely require that this software be used at all depositions.  There is no recourse of subpoenaing Egnyte in the U.S. for any information, has essentially no presence in the USA. See Exhs 2-3 to Meltser Aff.

### D.  Appearance that Egnyte Management Is Dominated by Foreign Nationals or Nationals of Foreign Descent, from India.

Exhibit 1 to Meltser's Affidavit shows a portrait row of Egnyte's management (downloaded from a remote webpage of Egnyte's website). What strikes is that all top managerial positions are occupied by persons with the Indian first and last names.  Roughly, about 80% of management and executives are persons with Indian names.

Egnyte's own website claims on its website that its headquarters are at 1350 W Middlefield Rd, Mountain View, CA 94043.  Exhibit 2 shows Google's view on that address.  It is strange one-story building with some umbrellas in front.  The size of staff could be estimated by a parking lot.  Google's maps one could locate a small parking lot closeby, eventually for 10 cars.

The second address that Egnyte posts on its website is at 245 W Main Ave, Spokane, WA 99201.  Exhibit 3 shows the Google map picture of the building at that address, with all the windows on the first floor closed by metal sheets, as though abandoned.

**E.  Analysis of Egnyte's Customer Base and Ratio of Revenues.**

Egnyte's services "**content intelligence**" are most disturbing.  Upon the clarifications of IT engineers Kontilai and his counsel have consulted with, that can mean that, as a part of its front services of sharing files, it may be selling the customers' data.  A yearly revenue of $100 million cannot be generated from legal services of file sharing to regular customers.  For example, once an unsuspecting witness or an attorney downloads Egnyte on their computers, they also get a trojan spyware.  According to the IT engineers, such trojan software could be used (such as in the case of Mr. Kontilai), as a tool to track his location for facilitating his arrest outside the U.S.

In a possible worstcase scenario, that "content intelligence" can be used not only against the witnesses but also against unsuspecting attorneys, to scoop out the contents of their hard drives.  The question can be raised if it is only the Denver office of the SEC that insists on the witnesses and attorneys downloading that software, hopefully, it has not been authorized in SEC's central office in Washington, D.C.

**F.  Issue of Egnyte's Threat Also to Integrity of SEC's Internal Servers and to National Security.**

What is even more worrisome is the hypothetic scenario as follows.  The Indian management of Egnygma and paucity of the offices in the U.S. suggests that the true software operation is conducted *out of India*.  However, the Indian contractors have no obligations to abide by the law in the USA.  Effectively, Egnyte is outside of the U.S. jurisdiction.  Issuing subpoenas on the one-story building in Mountain View, whereas the operation is in India, can yield next to nothing.

What seems to be evading the SEC's officials is that the possibility of the alleged using "content intelligence" against the witnesses and attorneys is a double-edge sword.  Because the SEC's Denver office has been using Egnyte on its own computers, its local network or, even worse, the SEC's network could be exposed to "content intelligence" from India.  Furthermore, the SEC's servers are connected to other federal agencies' servers, representing an imminent exposure to Egnyte's "trojans" for "content intelligence", which can rise to an issue of national security.

**G.  Meet-and-Confer Compliance.  Relief Sought.**

The undersigned repeatedly raised and discussed the issues of Egnyte prior to, and in the course, of the deposition, for a total of over 30 minutes, sending out a detailed summary letter to all counsel on September 26, 2020.  Plaintiff offered no explanations on its insisting on downloading Egnyte.

Kontilai seeks relief as follows:

(A) an Order prohibiting to Plaintiff's Denver office to demand or use Egnyte for any depositions in this action;

(B) as a part of the Order, to require the Denver office of SEC to report whether their using Egnyte has-- or has not--been, authorized by the central office of SEC in Washington, D.C.

(C) Require from Plaintiff to disclose before the Court whether it has used this civil proceeding for *ulterior* purposes, e.g. to coordinate the arrest of Kontilai.

Sincerely,   George Lambert   *George Lambert*

3

CC all counsel of record:

williamsml@sec.gov,

NesvigN@sec.gov,

millerte@sec.gov,

KasperG@sec.gov,

scm@cormorllp.com,

bcorrigan@cormorllp.com,

peter.joseph72@post.harvard.edu,

LawDC10@gmail.com,

Miriam@palazzolawfirm.com,

rschonfeld@cslawoffice.net,

SSpitzer@winston.com,

CCalvar@winston.com,

AGarzaMattia@winston.com,

**Application denied as moot.  With respect to future depositions or document-sharing, the question of what commercial platform the parties will use is the sort of issue that parties who are not deliberately trying to waste the time of the Court and their adversaries manage to work out with ease among themselves.  The requests for information from the SEC about their use of the platform contained at the end of this letter are tangential to the issues in this case and thus will not be the subject of relief.**

**So Ordered.**

GABRIEL W. GORENSTEIN
United States Magistrate Judge
September 28, 2020