```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                                               :
UNITED STATES SECURITIES AND                                   :
EXCHANGE COMMISSION,                                           :
                                                               :
                     Plaintiff,                                :   OPINION & ORDER
                                                               :
           -v.-                                                :
                                                                   19 Civ. 4355 (LGS) (GWG)
COLLECTOR'S COFFEE INC., et al.,                               :
                                                               :
                     Defendants.                               :
---------------------------------------------------------------x
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

This lawsuit was brought by the Securities and Exchange Commission ("SEC") against Collector's Coffee Inc., d/b/a Collectors Café ("CCI"), and Mykalai Kontilai, the founder, President and Chief Executive Officer of CCI, alleging that the defendants violated federal securities laws by defrauding investors. See Amended Complaint, filed Nov. 4, 2019 (Docket #134). CCI has now brought a motion to compel the SEC to produce certain documents.[1] These documents consist of (1) SEC notes from twenty-one witness interviews taken during the SEC's fact-finding investigation; (2) notes taken by SEC staff from an Federal Bureau of Investigation ("FBI") "FD-302" created during a joint SEC and Department of Justice ("DOJ") interview of Gail Holt;[2] and (3) the actual FD-302 of Holt's interview, Def. Mem. at 2, which was

---

[1] See Motion to Compel, filed September 11, 2020 (Docket #554) ("Motion to Compel"); Memorandum in Support of Motion to Compel, filed September 11, 2020 (Docket #555) ("Def. Mem."); Declaration of Stanley Morris in Support of Motion to Compel, filed September 11, 2020 (Docket #556) ("Morris Decl."); Memorandum in Opposition of Motion to Compel, filed September 25, 2020 (Docket #575) ("Opp. Mem."); Declaration of Jacqueline Moessner in Opposition to Motion to Compel, filed September 25, 2020 (Docket #575) ("Moessner Decl.").

[2] An FD-302 is a form used by the FBI to summarize an interview.

presumably prepared by the FBI.[3]

I.      BACKGROUND

    A.      Facts

In May 2017, the SEC learned of a complaint indicating that CCI had violated federal securities laws. See Moessner Decl. ¶ 6. The SEC opened a "Matter Under Investigation" on June 28, 2017, and issued a "Formal Order of Investigation" on September 18, 2017. Id. ¶ 7-8. During this investigation, between January 2018 and May 2019, SEC staff interviewed twenty-one witnesses. Id. ¶ 11; Am. Privilege Log. The SEC interviewed Gail Holt, the former Chief Operating Officer of CCI, on March 20, 2019. Moessner Decl. ¶ 15. Holt was interviewed by the SEC and the DOJ and FBI in a joint proffer session. See id. ¶¶ 15-17. The SEC was later permitted to review and takes notes of the FD-302 that the FBI made of that joint interview. See id. ¶ 17.

    B.      Procedural Background

This discovery dispute was first raised before the Court on August 19, 2020. See Pre-Motion Conference Letter, filed August 19, 2020 (Docket #525). CCI filed the instant motion to compel on September 11, 2020. The SEC filed opposition papers but CCI never filed a reply memorandum.

While the SEC's privilege log had asserted several privileges in withholding the documents (see Am. Privilege Log), its opposition memorandum relies only on the work-product doctrine. See Opp. Mem. at 2-15.

---

[3] While CCI also requests FD-302s from "other witnesses," Def. Mem. at 2, it fails to identify such witnesses. In light of our ruling in section III.A below, it is not necessary to address this issue.

II.     LAW GOVERNING WORK-PRODUCT DOCTRINE

"Federal law governs the applicability of the work-product doctrine in all actions in federal court."  Wultz v. Bank of China Ltd., 304 F.R.D. 384, 393 (S.D.N.Y. 2015) (citing Allied Irish Banks, P.L.C. v. Bank of Am., N.A., 252 F.R.D. 163, 173 (S.D.N.Y. 2008)).  Federal Rule of Civil Procedure 26(b)(3) codifies the doctrine in part, providing that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)," unless "the party shows that it has substantial need for the materials . . . and cannot, without undue hardship, obtain their substantial equivalent by other means."  The work-product rule is designed "to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries."  United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting Hickman v. Taylor, 329 U.S. 495, 510-11 (1947)); accord United States. v. Nobles, 422 U.S. 225, 238-39 (1975).  The doctrine protects factual material, "including the result of a factual investigation" — commonly referred to as fact work product — as well as material that "reveals the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative'" — commonly referred to as opinion work product.  In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d 180, 183 (2d Cir. 2007).  The party asserting work-product protection must demonstrate that the material at issue "(1) [is] a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative."  Allied Irish Banks, P.L.C., 252 F.R.D. at 173 (internal quotation marks and citation omitted).

"In anticipation of litigation" means that "in light of the nature of the document and the

3

factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Adlman, 134 F.3d at 1202 (citation omitted). Thus, even where "[t]here is little doubt under the evidence that [a party] had the prospect of litigation in mind when it directed the preparation of the" documents, id. at 1204, or that "such documents might also help in preparation for litigation," id. at 1202, work-product protection is not available for "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of litigation," id.; accord Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc., 2015 WL 3450045, at *5 (S.D.N.Y. May 28, 2015).

III.    DISCUSSION

   A.    FBI FD-302

As to the FD-302 of the interview of Holt, the SEC provides evidence that the FD-302 is not currently in its possession, Moessner Decl. ¶ 17, and contends that the document is not otherwise in its "custody, or control," Opp. Mem. at 18.

CCI argues that "[a]ny contention by the SEC that it cannot access the FBI's FD-302s is . . . baseless." Def. Mem. at 3. It asserts that the SEC and FBI conducted a "joint investigation" and that this obligates the SEC to produce the document. Def. Mem. at 15-16. To support its argument, CCI cites to U.S. v. Martoma, 990 F. Supp. 2d 458 (S.D.N.Y. 2014), which required the DOJ to search the files of the SEC for exculpatory material in a criminal case on the ground that the SEC and DOJ had conducted a "joint investigation" in that case. Id. at 461-62; see also U.S. v. Gupta, 848 F. Supp. 2d 491, 494 (S.D.N.Y. 2012) ("it is enough" for Brady purposes "that the agencies are engaged in joint fact-gathering, even if they are making separate investigatory or charging decisions") (citation and internal quotation marks omitted). CCI also

cites, Def. Mem. at 15, to an unpublished decision in a civil matter in which the district judge required the SEC to produce FD-302's generated by the FBI on the ground that there had been "joint fact-gathering," see Order dated May 27, 2020 in SEC v. Sason, et al., 19 Civ. 1459 (Docket #86).

The question of whether the SEC should be ordered to turn over the Holt FD-302 turns on whether there has been a joint "investigation" or joint "fact-gathering" sufficient to justify a finding that the document is in the "possession, custody, or control" of the SEC within the meaning of Fed. R. Civ. P. 34(a)(1). As was true in Martoma, this is a fact-specific inquiry involving the "consideration of the 'degree of cooperation between agencies.'" 990 F. Supp. 2d at 461 (quoting United States v. Ferguson, 478 F. Supp. 2d 220, 238 (D. Conn. 2007)).

Here, there is no evidence of any ongoing cooperation. Rather, the evidence is that the FBI and SEC engaged in a single joint interview — that of Holt. Perhaps realizing that this does not constitute the sort of joint investigation that would justify the order it seeks, CCI points out that the SEC gave contact information for the FBI to a witness and that the SEC was able to take notes of the FD-302 long after the interview itself. Def. Mem. at 15-16. But this is insufficient to find that the FD-302 is in the SEC's custody or control. In Martoma, the court required production of the other agency's documents where the SEC and the United States Attorney's Office "jointly conducted twenty interviews of twelve witnesses." 990 F. Supp. 2d at 461. Additionally, the SEC had provided documents it acquired to the United States Attorney's Office, and the agencies coordinated and updated each other on depositions. Id.

In this case, the SEC and FBI engaged in one joint interview. Moessner Decl. ¶ 16. Moreover, "the SEC did not conduct any interviews, ask specific questions, or take any investigative steps at the direction or request of DOJ." Id. ¶ 18. The SEC attorney present at

Holt's joint interview was later permitted to review the FD-302 but not make a copy or remove it from the FBI's possession. Id. ¶ 17. The fact that the SEC at one point disclosed FBI contact information to a witness and that the FBI allowed the SEC's attorney to review the FD-302 is not enough to find the SEC and the FBI have engaged in joint fact-gathering.

The circumstances here are the same in all material respects as those in S.E.C. v. Stanard, 2007 WL 1834709, at *1-2 (S.D.N.Y. June 26, 2007), in which the SEC and FBI interviewed a single witness together and the SEC was later permitted to review notes taken by the FBI during the interview. 2007 WL 1834709, at *2-3. Stanard refused to require the SEC to produce the FD-302. Id. The same result is appropriate here.

In sum, we do not find that the FD-302 is in the SEC's possession, custody or control and thus, for this reason alone, we will not order its production.

      B.      The Twenty-One Witness Interviews

           1.      Anticipation of Litigation

CCI argues that the witness interview notes prepared by the SEC were not prepared in "anticipation of litigation." Def. Mem. at 12-13. CCI notes that the SEC characterized the investigation as a "non-public fact-finding inquiry," March 2019 SEC Cover Letter, annexed as Exhibit 6 to Morris Decl., and that significant time elapsed between the interviews and the actual initiation of litigation, Def. Mem. at 13. The SEC argues that it in fact anticipated litigation at the time the witnesses were interviewed, Opp. Mem. at 5, and has submitted a sworn declaration on this question from an SEC attorney, Jacqueline Moessner, who interviewed witnesses as part of the investigation, see Moessner Decl. ¶¶ 6-12.

As noted, for a document to be protected under the work-product doctrine, it must have been made in anticipation of litigation. See Adlman, 134 F.3d at 1198. Thus, the doctrine does

not protect "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of litigation." Id. at 1202.  The Second Circuit directs that courts take "a flexible approach in determining whether the work product doctrine is applicable, asking not whether litigation was a certainty, but whether the document was created 'with an eye toward litigation.'" A. Michael's Piano, Inc. v. F.T.C., 18 F.3d 138, 146 (2d Cir. 1994) (citation omitted).

The uncontroverted evidence in the record shows that in May 2017, the SEC learned that a complaint had been filed in a case against CCI.  Moessner Decl. ¶ 6.  The complaint contained "detailed and specific allegations of securities fraud."  Id.  The parties to the case reached a settlement and then "sealed the complaint quickly," which "caused SEC attorneys to prepare for the prospect of an enforcement action."  Id.  As a result, the SEC opened a "Matter Under Investigation," which is "a step taken to continue investigations into serious complaints."  Id. ¶ 1, 7.  The SEC found the complaint to be "detailed" and "credible" and in light of the "settlement and sealing of the complaint, the complainants' refusal to speak to the SEC voluntarily, and other facts revealed in research about the principal of Collectors Café, the SEC staff continued to expect the possibility of litigation and an enforcement action to address the violative conduct."  Id. ¶ 8.  An investigation was thereafter opened.  Id.

The SEC began conducting witness interviews.  Moessner Decl. ¶¶ 8-10.  The attorney working on the case, Jacqueline Moessner, states that the purpose of the interviews was to "provide my client, the Commission, with information so that it could make the determination whether to proceed with litigation in this matter and what the scope of that litigation should be." Id. ¶ 11.  The attorney states that she "conducted the interviews and prepared the interview memoranda and notes in this matter because of the prospect of litigation" and that she "would

not have conducted these interviews if [she] did not expect the possibility of litigation." Id. ¶ 12.

These factual assertions strongly suggest that the notes of these witness interviews were "created with an eye toward litigation." Adlman, 134 F.3d at 1196 (internal punctuation omitted). In a similar case, S.E.C. v. Cavanagh, 1998 WL 132842 (S.D.N.Y. Mar. 23, 1998), an SEC attorney attested that interview notes "were conducted 'in order to provide the [SEC] with information so that it could make the determination whether to proceed with litigation in this matter.'" Id. at *2. Cavanagh found this statement justified a finding that the materials had been prepared in anticipation of litigation. Id. Since Cavanagh, courts in this circuit have routinely found that interview notes taken by the SEC during a fact-finding investigation to determine whether to proceed with charges fall within the work-product doctrine. See S.E.C. v. NIR Group, LLC, 283 F.R.D. 127, 133 (E.D.N.Y. 2012) (interviews conducted by "an SEC attorney, staff accountant and a legal intern as part of the [SEC]'s investigation into the defendants" were conducted in anticipation of litigation because the interviews were conducted "in order to provide the Commission with information so that it could determine whether or not to proceed with litigation."); S.E.C. v. Strauss, 2009 WL 3459204, at *4 (S.D.N.Y. Oct. 28, 2009) (interview notes prepared by SEC "to determine whether to commence an enforcement action . . . easily fit within the protection of the work-product doctrine"); Stanard, 2007 WL 1834709, at *1-2 (witness interviews "conducted in order to determine whether to initiate litigation . . . show that the SEC was 'anticipating' litigation at the time").

CCI relies on several sources to argue that the documents are not protected under the work-product doctrine. See Def. Mem. at 12, 13. CCI cites S.E.C. v. Thrasher 1995 WL 46681, at *3 (S.D.N.Y. Feb. 7, 1995), to argue that the SEC could not invoke the work-product doctrine because it had not provided "any evidence that the interview notes were prepared in anticipation

of litigation." Def. Mem. at 12.  In Thrasher, however, it appears the SEC did not supply any evidence supporting its work-product claim.  Thrasher, 1995 WL 46681, at *3.  Here, by contrast, the SEC has provided the affidavit of an attorney involved in the interviews who has attested to the creation and the purpose of the notes.  Moessner Decl. ¶¶ 7-12.  CCI also cites to S.E.C v. Stratton Oakmont, Inc., 1992 WL 226924 (S.D.N.Y June 22, 1992).  While Stratton Oakmont states that notes of conversations taken by the SEC while "conducting a fact gathering investigation" were not protected under the work-product doctrine, id. at *1, the decision provides no reasoning for its conclusion and thus is not useful as precedent.  And to the extent it could be read as stating a general rule, we decline to follow Stratton Oakmont inasmuch as such a rule runs contrary to the many cases protecting such notes.  See, e.g., NIR Group, 283 F.R.D. at 133; Strauss, 2009 WL 3459204, at *2; Stanard, 2007 WL 1834709, at *1-2; Cavanagh, 1998 WL 132842, at *2.  Finally, CCI cites a law review article stating that "an investigation on its own is not a 'pending legal proceeding' until it reaches a stage when the agency or prosecutorial authority makes known that it is contemplating filing suit or bringing charges."  David Stuart & David Wilson, Disclosure Obligations Under the Federal Securities Laws in Government Investigations, 64 BUS. LAW. 973, 982 (2009).  This statement is irrelevant because the issue in determining whether the work-product doctrine applies is not whether the investigation constitutes a "pending legal proceeding," but whether a document was created in "anticipation of litigation." Fed. R. Civ. P. 26(b)(3)(A).[4]

    CCI points to the fact that the witness notes were created "long before" the SEC made a

---

[4] CCI also cites to Ilene Richman v. Goldman Sachs Group, Inc. et al., 10 Civ. 3461 (S.D.N.Y.)  See Def. Mem. at 13.  But without further information, the Court does not know what CCI is citing to.

decision to file the enforcement action. Def. Mem. at 13. CCI does not cite to any available decision supporting the notion that the length of time between the creation of notes and the decision to bring litigation is dispositive of the question of whether the notes were created in anticipation of litigation. What matters, of course, is the purpose of the investigation, not the length of time it takes. For what it is worth, the court in NIR Group, LLC, upheld a claim of work-product protection where three years elapsed between the interviews and the litigation. 283 F.R.D. at 134 ("While close temporal proximity may provide some indication a particular document was prepared in anticipation of litigation, temporal distance is ultimately an unreliable indicator of the applicability of work-product privilege."). Here, the first interview was conducted on January 17, 2018 and the last on May 3, 2019. See Am. Privilege Log. The complaint was filed on May 14, 2019. Complaint, (Docket #1). Thus the time period of the investigation and the filing of the complaint was not even as long as the period upheld in NIR Group, LLC.

Finally, CCI argues, Def. Mem. at 12, that the notes were created in the "ordinary course of business" because the SEC in a discovery response stated that it would produce documents as they are kept "in the normal course of business," see SEC Written Objections & Responses, dated May 26, 2020, annexed as Exhibit 7 to Morris Decl. at 4, 23. This argument is meritless. If an entity prepared documents in anticipation of litigation, it is still required to produce those documents "as they are kept in the usual course of business." Fed. R. Civ. P. 34(b)(2)(E)(i). It is obviously this standard to which the SEC referred in its response. See Opp. Mem. at 6.

    2.    <u>Substantial Need and Undue Hardship</u>

Even where documents were prepared in anticipation of litigation, an opposing party may be able to obtain them if the party shows "that it has substantial need for the materials . . . and

cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).  Still, if a party meets its burden of showing substantial need and undue hardship, a court must nonetheless "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

Importantly, the burden of showing "substantial need" is on the party seeking the documents.  See, e.g., Obeid v. La Mack, 2015 WL 5581577, at *3 (S.D.N.Y. Sept. 16, 2015) ("the burden . . . is placed on the discovering party to demonstrate, in the case of so-called factual work product, that the party has a 'substantial need' for the information contained in the document and that equivalent information cannot be obtained from other sources without 'undue hardship'").  Substantial need is demonstrated where the factual material contained in the otherwise protected documents is "essential to the preparation of one's case." Hickman, 329 U.S. at 511.  Thus, a substantial need exists where the material "is crucial to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues." Gucci Am., Inc. v. Guess?, Inc., 271 F.R.D. 58, 74–75 (S.D.N.Y. 2010) (citation and internal quotation marks omitted).

Here, CCI has not met its burden of showing substantial need.  Indeed, while CCI's brief makes a number of arguments as to why it would constitute an "undue hardship" for it to obtain the equivalent of these notes (for example, because of limitations on the number of depositions), Def. Mem. at 11-12, 14-15, 17-18, it makes no discernable argument regarding "substantial need" (except with respect to Holt, who is discussed in the next section).  The SEC pointed out this failing in its opposition memorandum.  Opp. Mem. at 11-12.  CCI, however, did not even file a reply brief.

11

In the end, the record is devoid of any reason why CCI has a substantial need for each of the witness interviews at issue — that is, any reason why obtaining the notes of the witnesses is "essential to the preparation" of its case. NIR Group, LLC, 283 F.R.D. at 135. Accordingly, the interview notes are protected from disclosure under the work-product doctrine.

C.   SEC Notes from FBI FD-302 from Joint Interview of Gail Holt

CCI's arguments in favor of compelling the SEC's notes from the FBI FD-302 of Holt's joint interview stand on a different footing. Unlike its arguments as to all the interview notes other than Holt's, CCI gives some reasons why it believes that, as CCI puts it, "the notes of Gail Holt may constitute the single most important piece of evidence in this case." Def. Mem. at 16. It points to the fact that a declaration from Holt was the sole declaration attached to the SEC's Order to Show Cause that allowed it to obtain a temporary restraining order. Def. Mem. at 3 (citing Declaration of Gail Holt, attached to Ex Parte Memorandum of Law in Support of Ex Parte Motion for Temporary Restraining Order, dated May 15, 2019 (Docket #9-1)). Further, the SEC used a declaration of Holt in support of its motion for contempt against defendant Mykalai Kontilai. See Memorandum of Law in Support of Replacement Motion for Contempt and Sanctions, dated July 17, 2020 (Docket #453); Reply Memorandum of Law in Support of Replacement Motion for Contempt and Sanctions, dated August 17, 2020 (Docket #519).

Of course, these assertions by themselves would be insufficient to overcome work product protection inasmuch as "relevancy alone is not enough to establish substantial need." Govt. Employees Ins. Co. v. Saco, 2017 WL 1164896, at *2 (E.D.N.Y. Mar. 28, 2017) (internal quotation marks and citation omitted). However, CCI also points to the fact that Holt has given "contradictory stories" regarding certain documents that she caused to be given to the SEC at the beginning of its investigation. See Declaration of Edward Little, annexed as Exhibit 3 to Morris

Decl ¶¶ 3-8 ("Little Decl."). Indeed, the SEC itself has admitted that Holt has given conflicting statements in this case. See Jacqueline Moessner Declaration in Support of Ex Parte Emergency Application for an Order to Show Cause, for an Asset Freeze, and Other Relief, filed May 15, 2019 (Docket #10) ¶¶ 41-42; see also Letter from Terry R. Miller, dated November 12, 2020 (Docket #633) at 4 (SEC concedes that Holt "initially told attorneys that she created fabricated documents" before she admitted to the SEC that these statements were not true).

CCI argues that Holt's admitted fabrication earlier in the investigation shows that it has a substantial need for the documents. But even if we were to accept that there are some circumstances where discovery of impeachment material is warranted, CCI has not shown that the alleged impeachment material it seeks could not be obtained simply by deposing Holt. While the record is not clear as to the date on which Holt's now-recanted statements were made or communicated to the SEC, there is no evidence that Holt has given inconsistent testimony subsequent to the witness interview at issue, which was conducted on March 20, 2019. See generally Little Decl. ¶¶ 3-8. Even though Holt has been deposed in this case, CCI fails to reveal what she said at her deposition as to her recanted statements. Thus, CCI has not shown that the interview notes could result in CCI obtaining a statement from Holt that is different from Holt's current testimony as to what transpired.[5] And, of course, the interview notes "themselves are not relevant — only the factual information recounted in the interview[] is relevant." S.E.C. v.

---

[5] Had CCI made a showing that there is reason to believe that Holt's account of events at her deposition likely conflicted with the interview notes, the Court might have undertaken to review the notes in camera to determine if the notes in fact contain impeachment material — a process that courts will sometimes undertake, see Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551, 557-58 (2d Cir. 1967); Chesapeake Energy Corp. v. Bank of New York Mellon Tr. Co., N.A., 2013 WL 1609250, at *3 (S.D.N.Y. Apr. 15, 2013); Rexford v. Olczak, 176 F.R.D. 90, 93 (W.D.N.Y. 1997). No such showing has been made, however.

Nadel, 2013 WL 1092144, at *3 (E.D.N.Y. Mar. 15, 2013).

Case law is clear that a party's "desire to use the interview notes for impeachment purposes does not by itself constitute 'substantial need.'" F.T.C. v. Hope Now Modifications LLC, 2011 WL 2634029, at *5 (D.N.J. July 5, 2011); accord In re Aftermarket Filters Antitrust Litig., 2010 WL 4622527, at *9 (N.D. Ill. Nov. 4, 2010); Brock v. Frank V. Panzarino, Inc., 109 F.R.D. 157, 159 (E.D.N.Y. 1986). Here, the notion that Holt's statements at the joint interview would yield impeachment material ultimately rests on "mere surmise or suspicion," which is insufficient to overcome work product protection. Hauger v. Chi., Rock Island & Pac. R.R. Co., 216 F.2d 501, 508 (7th Cir. 1954); accord Fair Issaac Corp. v. Experian Info. Sols. Inc., 2009 WL 161247, at *2 (D. Minn. Jan. 22, 2009) (substantial need not shown if party offers "speculative or conclusory statements" that material sought "will contain invaluable impeachment material") (internal quotations and citation omitted). While it may be possible to establish substantial need where there is a gap in memory or where the notes may show testimony that differs from that which is expected at trial, see Johnson v. Bryco Arms, 2005 WL 469612, at *5 (E.D.N.Y. Mar. 1, 2005), no such showing has been made here. Thus, this is a situation where CCI has not shown that it is unable "to obtain the desired information by taking the deposition of" the witness. Brock, 109 F.R.D. at 160.

Accordingly, the request for the notes from the FD-302 is denied. See S.E.C. v. Treadway, 229 F.R.D. 454, 456 (S.D.N.Y. 2005) (denying motion to compel production of notes concerning witness proffer sessions conducted by SEC attorneys because, among other things, "[d]efendants are free to question each of the witnesses at their depositions, and at trial, concerning the witnesses' statements to the SEC at various proffer sessions."); U.S. v. Mt. Sinai Hosp., 185 F. Supp. 3d 383, 400 (S.D.N.Y. 2016) ("while the proffer notes . . . could potentially

provide impeachment material, that possibility does not furnish the 'substantial need' that is necessary to overcome the protection of the work product doctrine.").

IV. CONCLUSION

For the foregoing reasons, CCI's Motion to Compel (Docket # 554) is denied.

SO ORDERED.

Dated: December 1, 2020

New York, New York

*[signature]*

GABRIEL W. GORENSTEIN
United States Magistrate Judge