UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES SECURITIES AND           :
EXCHANGE COMMISSION,                   :
            Plaintiff,                         :
                                               :  19 Civ. 4355 (LGS)(GWG)
            v.                                 :
                                               :  ORDER
COLLECTOR'S COFFEE, INC., et al.       :
            Defendants.                        :
-------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

      Before the Court is a November 23, 2020, request by Defendant Mykalai Kontilai, that I recuse myself from this action. On November 30, 2020, Intervenor Plaintiffs and Intervenor Defendant, The Jackie Robinson Foundation, Inc., filed letters in opposition to Mr. Kontilai's request, and on December 3, 2020, Plaintiff filed a letter in opposition to Mr. Kontilai's request. Mr. Kontilai's request is construed as a motion for recusal pursuant to 28 U.S.C. § 455. While there is currently no conflict based on which my "impartiality might reasonably be questioned," *United States v. Bayless*, 201 F.3d 116, 126 (2d Cir. 2000), for the reasons discussed herein, including the avoidance of any appearance of impropriety, the motion is granted.

**I.    Background**

      **A.    The Temporary Restraining Order and Asset Freeze**

      This case was filed on May 14, 2019. Dkt. No. 1. Two days later, the Court issued a temporary restraining order (the "Temporary Restraining Order" or "TRO"), which froze "[t]he assets, funds, or other property held by or under the direct or indirect control of Defendants Collectors Café or Mykalai Kontilai, whether held in any of their names or for their direct or indirect beneficial interests, wherever located, up to the amount of $46,121,649.68" (the "Asset Freeze"). Dkt. No. 12, p. 3.

Mr. Kontilai has previously requested that this Court clarify the scope of the Temporary Restraining Order. On November 1, 2020, Mr. Kontilai filed a pre-motion letter requesting that the Court clarify whether the Asset Freeze "prevent[s] Kontilai from using any untainted funds earned or received and/or using untainted funds for hiring criminal defense and extradition counsel and criminal defense experts of his choice." Dkt. No. 612, p. 1. Mr. Kontilai sought to use funds subject to the Asset Freeze to hire criminal defense counsel in connection with two criminal cases against him -- one in the District of Colorado and one in the District of Nevada. The Court issued an Order indicating that the Asset Freeze covers all of "[t]he assets, funds, or other property held by or under the direct or indirect control of Defendants Collectors Café or Mykalai Kontilai . . . up to the amount of $46,121,648.68," but gives Mr. Kontilai the opportunity to "seek leave from [the] order upon a proper showing." Dkt. No. 12, pp. 3, 5. The Court denied Mr. Kontilai's request to use untainted funds to hire defense counsel, on the ground that his November 1, 2020, request did not make a proper showing. Dkt. No. 658. The request neither demonstrated that Mr. Kontilai's Sixth Amendment right to counsel had attached, nor that the funds Mr. Kontiali intended to use were untainted.

### B.     Involvement of Debevoise & Plimpton, LLP

Debevoise & Plimpton LLP ("Debevoise & Plimpton") has not appeared in this case as an attorney or party. On June 24, 2019, Plaintiff filed a Notice of Anticipated Witness, stating that in connection with a discovery dispute, the "SEC may present a witness at the hearing scheduled for June 27, 2019, Andrew Ceresney of Debevoise [&] Plimpton LLP, who may have a prior professional relationship with Your Honor." Dkt. No. 50, p. 1. Plaintiff's Notice of Anticipated Witness explained that the SEC served a testimony subpoena on Debevoise & Plimpton attorney Andrew Ceresney. Mr. Ceresney, along with his firm, had "represented Defendants during a portion of the SEC's investigation in this matter." *Id*. at 1. The SEC sought

2

testimony on discovery issues related to certain documents described in paragraphs 31, 40 and 94-102 of the Complaint (the "Documents").  Receipt of Plaintiff's Notice of Anticipated Witness was the first time the Court learned of any potential involvement of Debevoise & Plimpton in this case.  On June 24, 2019 -- the same day the SEC filed the Notice of Anticipated Witness -- the Court issued an Order of Reference to a Magistrate Judge, referring this matter to Judge Gorenstein for general pretrial supervision.  Dkt. No. 51.  Judge Gorenstein then resolved the dispute regarding the Documents and any related issues stemming from a June 11, 2020, subpoena that Collector's Coffee, Inc. served on Debevoise & Plimpton.  *See* Dkt. No. 655.

On October 17, 2020, Defendants initiated a separate malpractice suit against Debevoise & Plimpton in the District of Columbia ("D.C.").  *Collector's Coffee Inc., et al. v. Debevoise & Plimpton LLP, et al.*, No. 20 Civ. 2988 (D.D.C., filed Oct. 17, 2020).  On October 23, 2020, Mr. Kontilai filed in this case a letter with a copy of the verified complaint filed in the D.C. case (the "D.C. Verified Complaint").  Dkt. No. 601.  The letter states:

> It is [] defendants' position that the Verified Complaint has nothing to do with the scope of the Temporary Restraining Order (TRO), issued by Your Honor ex parte on May 15, 2019, nor anything to do with any assets under that TRO.  Namely, the Verified Complaint is for damages, based on allegations of malpractice by these defendants' prior counsel Debevoise & Plimpton LLP, up to October 18, 2018.  The relevant events had taken place at least *7 (seven) months before* this action was filed and the TRO was issued. . . Furthermore, that action in DCD is also irrelevant for the TRO purposes, because neither Collector's Coffee Inc. nor [Mr.] Kontilai are paying any legal fees or costs in that action.  That action in the District of Columbia is based on contingency, in line with the typical arrangements for most of malpractice actions.  The legal team for that action in the District of Columbia is in the process of being assembled based on the existing contingency arrangement, reduced to the valid engagement letter, providing contingency only. . . . the SEC's counsel have been advised that the action is brought on contingency, in line with the typical arrangements for malpractice actions.  Therefore, there is no relationship to the assets being frozen under the TRO, whatsoever.

*Id*. at 2.  The letter also requested that the Court consider the D.C. Verified Complaint as admissible evidence in this action.  On October 29, 2020, the Court issued an endorsement

3

clarifying that the letter required no action by me and that this case previously had been referred to Judge Gorenstein for general pretrial supervision. Dkt. No. 608.

### C. Motion for Recusal

The motion for recusal argues that disqualification is necessary because "the SEC made clear in meet-and-confer calls that they view the malpractice claims against Debevoise and [Mr.] Ceresney as part of the" Asset Freeze and, as a result, Mr. Kontilai will need the Court's approval before malpractice claims against Debevoise & Plimpton can proceed. Dkt. No. 661, p. 2. The motion contends that my work experience as an associate and partner at Debevoise & Plimpton and associations with the firm's attorneys preclude an impartial review of any such application for approval. Plaintiff's responsive letter indicates that the SEC contends "Defendants violated the [A]sset [F]reeze [] by filing the [malpractice suit against Debevoise & Plimpton] without Court approval," and states that "the only issue to resolve is how and when the Defendants should be permitted to pursue a cause of action subject to the TRO's [A]sset [F]reeze." Dkt. No. 695, p. 2.

## II. Legal Standard

Pursuant to the Code of Judicial Conduct for United States Judges, "[a] judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary," and "should not allow family, social, political, financial, or other relationships to influence judicial conduct or judgment." Code of Judicial Conduct for United States Judges, Canon 2(A)-(B). To protect the impartiality of the judiciary and avoid any appearance of impropriety a federal judge may recuse herself. "The decision whether to grant or deny a recusal motion . . . is a matter confided to the district court's discretion." *Apple v. Jewish Hosp. and Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987);

*accord Weston Capital Advisors, Inc. v. PT Bank Mutiara Tbk.*, No. 13 Civ. 6945, 2019 WL 6002221, at *2 (S.D.N.Y. Sept. 20, 2019).

The standard for recusal is set out in 28 U.S.C. § 455(a), which requires recusal, "in any proceeding in which [a federal judge's] impartiality might reasonably be questioned." The ultimate inquiry under § 455(a) is whether "an objective disinterested observer fully informed of the underlying facts, would entertain significant doubt that justice would be done absent recusal." *Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 150 (2d Cir. 2014) (quoting *United States v. Yousef*, 327 F.3d 56, 169 (2d Cir. 2009); *accord Straw v. Dentons US LLP*, No. 20 Civ. 3312, 2020 WL 4004128, at *1 (S.D.N.Y. July 15, 2020). In addition, 28 U.S.C. § 455(b)(1) requires recusal where a federal judge has "a personal bias or prejudice concerning a party." "[A]dverse rulings without more, do not provide a reasonable basis for questioning a judge's impartiality." *United States v. Colon*, 961 F.2d 41, 44 (2d Cir. 1992); *accord Sun v. New York City Police Dep't*, No. 18 Civ. 11002, 2020 WL 6820824, at *1 (S.D.N.Y. Oct. 9, 2020).

A motion for recusal must be timely. "To ensure that a party does not hedge its bets against the eventual outcome of a proceeding, a party must move for recusal at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim." *United States v. Amico*, 486 F.3d 764, 773 (2d Cir. 2007) (citing *Apple*, 829 F.2d at 333-34). To evaluate timeliness, courts consider whether: "(1) the movant has participated in a substantial manner in trial or pre-trial proceedings; (2) granting the motion would represent a waste of judicial resources; (3) the motion was made after the entry of judgment; and (4) the movant can demonstrate good cause for delay." *Amico*, 486 F.3d at 773; *accord Muller-Paisner v. TIAA*, No. 03 Civ. 6265, 2014 WL 148595, at *1 (S.D.N.Y. Jan. 15, 2014).

**III.     Analysis**

There is no conflict at present.  Debevoise & Plimpton is not a party to this case and never has been.  The firm's involvement in this case is limited to that of a third-party recipient of a document subpoena.  While there were discovery disputes regarding the firm's production of documents, Judge Gorenstein has resolved any related outstanding issues.  In addition, the motion for recusal asserts that I have "ruled and continue[] to rule on discovery related decisions involving [my] prior law firm Debevoise including, but not limited to, the stipulated orders and extensions relating to key discovery in this case."  Dkt. No. 661, p. 2.  Mr. Kontilai offers no specific examples of such rulings.  Further, Mr. Kontilai's assertion is incorrect.  The June 24, 2020, Order of Reference to a Magistrate Judge referred this case to Judge Gorenstein for general pre-trial supervision.  Dkt. No. 51.  Pursuant to that Order, Judge Gorenstein has handled and will continue to handle any motions that fall within the scope of that referral, including discovery-related motions.  Finally, Mr. Kontilai's motion includes a list of allegedly adverse rulings or delays but makes no attempt to tie these rulings to the purported cause of impartiality.  These rulings -- which do not relate to Debevoise & Plimpton -- "do not provide a reasonable basis for questioning [my] impartiality."  *See Colon*, 961 F.2d at 44 (explaining that "adverse rulings" alone are not enough).

However, to protect the public's regard for the impartiality of the judiciary and avoid *any* appearance of impropriety, Mr. Kontilai's motion for recusal is granted based on the circumstances of this case.  Despite the absence of any conflict up until this point, it appears that a conflict situation could develop.  Plaintiff contends that Defendants violated the Asset Freeze by filing the separate malpractice suit against Debevoise & Plimpton, and further, that the Court will need "to resolve [] how and when the Defendants should be permitted to pursue a cause of action subject to the TRO's [A]sset [F]reeze."  Dkt. No. 695, p. 3.  Such a ruling would require

me to consider whether the Asset Freeze prohibits Defendants from pursuing a separate cause of action against my prior law firm.  This could lead to an appearance of impartiality.

My connections to Debevoise & Plimpton are more significant than those of Judge Gorenstein, who will continue to supervise this case.  I worked as an attorney at the firm between 1988 and 2011 and was a partner there the last 20 years of my tenure (but, to clarify, I did not serve as Chair of the Litigation Department).  I also know the Debevoise & Plimpton attorneys referenced in Mr. Kontilai's motion for recusal.  These connections, under the circumstances, could lead an objective disinterested observer to question impartiality on a ruling regarding the scope of the Asset Freeze.

Although Mr. Kontilai delayed in making this motion, there are factors that mitigate against a finding that the motion is untimely.  First, there has been no final entry of judgment in this case.  Second, there will be no waste of judicial resources or delay in day-to-day proceedings as a result of reassignment because the case continues to be under the supervision of Judge Gorenstein.  Accordingly, Mr. Kontilai's motion for recusal is granted.

The case shall be assigned to another judge by the Court's random selection process.

Dated:  December 9, 2020
        New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

7