```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
UNITED STATES SECURITIES AND        :
EXCHANGE COMMISSION,                :
                                    :
              Plaintiff,            :
                                    :   19 Civ. 4355 (VM)
    - against -                     :
                                    :
COLLECTOR'S COFFEE INC., et al.,    :   DECISION AND ORDER
                                    :
              Defendants.           :
-----------------------------------X
```

**VICTOR MARRERO, United States District Judge.**

In May 2019, the United States Securities and Exchange Commission ("SEC") brought civil fraud charges against Mykalai Kontilai ("Kontilai") and Collectors Coffee, Inc. ("CCI," and collectively with Kontilai, "Defendants"). The matter was referred to Magistrate Judge Gorenstein to oversee general pretrial issues, including scheduling, discovery, nondispositive pretrial motions, and settlement. (See Dkt. No. 51.) The Court now has before it four separate objections to Magistrate Judge Gorenstein's Orders on recusal, stay, deposition limits, and Defendants' motion to compel. (See "Objections," Dkt. Nos. 662, 715, 720, 733.)

This Order assumes familiarity with Judge Gorenstein's Orders on these matters. (See Dkt Nos. 655, 679, 685, 713.)

1

For the reasons discussed below, Defendants' Objections are DENIED.

## I. STANDARD OF REVIEW

A magistrate judge's order granting or denying a nondispositive motion may be overturned only if it "is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "An order is 'clearly erroneous' when the entire evidence leaves the district court 'with the definite and firm conviction that a mistake has been committed.'" Nike, Inc. v. Wu, 349 F. Supp. 3d 346, 353 (S.D.N.Y. 2018) (quoting FDIC v. Providence Coll., 115 F.3d 136, 140 (2d Cir. 1997)). "An order is 'contrary to law' when it fails to apply or misapplies relevant statutes, case law or rules of procedure." Id. (internal quotation omitted). "[M]agistrate judges are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused." Winfield v. City of New York, No. 15 Civ. 5236, 2017 WL 5054727, at *2 (S.D.N.Y. Nov. 2, 2017) (internal quotation marks and citation omitted). "Thus, the party seeking to overturn a magistrate judge's decision carries a heavy burden." David v. Weinstein Co. LLC, No. 18 Civ. 5414, 2020 WL 4042773, at *3 (S.D.N.Y. July 17, 2020) (internal quotation marks and alterations omitted). "Matters concerning discovery generally are considered 'nondispositive' of the

litigation." Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990); accord Weinstein, 2020 WL 4042773, at *3.

## II. DISCUSSION

1. RECUSAL

First, the Court will address Defendants' objection to Judge Gorenstein's refusal to recuse. (See Dkt. No. 655.) Under 28 U.S.C. § 455(a), disqualification of a judge is warranted if "a reasonable person, knowing all the facts, [would] conclude that the trial judge's impartiality could reasonably be questioned." United States v. Bayless, 201 F.3d 116, 126 (2d Cir. 2000). In other words, if "an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal," then recusal is warranted. Id. The recusal statute "does not compel disqualification simply on unfounded innuendo concerning the possible partiality of the presiding judge." Gench v. Hostgator.com, LLC, No. 14 Civ. 3592, 2015 WL 4579147, at *2 (S.D.N.Y. July 29, 2015). "Generally, claims of judicial bias must be based on extrajudicial matters, and adverse rulings, without more, will rarely suffice to provide a reasonable basis for questioning a judge's impartiality." Muller-Paisner v. TIAA,

3

No. 03 Civ. 6265, 2014 WL 148595, at *1 (S.D.N.Y. Jan. 15, 2014) (quotation omitted).

Defendants make two principal arguments regarding Judge Gorenstein's recusal. First, Defendants argue that Judge Gorenstein has a conflict of interest due to a pre-existing relationship with the law firm Debevoise & Plimpton LLC ("Debevoise"), and its partners Andrew Ceresney ("Ceresney") and Mary Jo White ("White"). Defendants recently brought suit again Debevoise and Ceresney for legal malpractice, a suit that Defendants claim impacts Judge Gorenstein's ability to be impartial in the present case. Second, Defendants argue that Judge Gorenstein's rulings in this case evidence a lack of impartiality. Neither argument is persuasive.

Judge Gorenstein found that his relationships with Debevoise, Ceresney, and White could not lead a reasonable person to believe he is partial. (See Dkt. No. 655.) The Court agrees. Judge Gorenstein has not worked at Debevoise for over thirty years. (Id. at 2.) Judge Gorenstein does not recall ever meeting Ceresney. (Id. at 1.) Additionally, Judge Gorenstein has had essentially no contact with Ceresney or White for over fifteen years. (Id. at 1-2.) And, in any event, Debevoise is not a party to this action; any relationship to this matter as a nonparty through discovery is limited. (Id. at 1.) To the extent Judge Gorenstein has any interest that

4

would affect this matter, it is exactly the kind of "remote, contingent, or speculative" interest that does not "reasonably bring[] into question a judge's impartiality." In re Drexel Burnham Lambert Inc., 861 F.2d 1307, 1313 (2d Cir. 1988).

Second, Defendants' complaints regarding Judge Gorenstein's rulings are unfounded. First, the Court reiterates that "adverse rulings, without more, will rarely suffice to provide a reasonable basis for questioning a judge's impartiality." Muller-Paisner, 2014 WL 148595, at *1 (quotation omitted). This is not one of those rare cases. While Defendants may disagree with Judge Gorenstein's rulings, they make no showing that those rulings display the "deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 555 (1994). Without such a showing, recusal is not required.

Given the above, this Court finds that Magistrate Judge Gorenstein's Order refusing to recuse is not "clearly erroneous" or "contrary to law," and therefore Defendants' Objection is denied.

2.   MOTION TO STAY

Next, Kontilai objects to Judge Gorenstein's Order rejecting his motion to stay the case. (See Dkt. No. 713.) "[T]he power to stay proceedings is incidental to the power

5

inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). The decision to stay proceedings is a discretionary one. United States v. Beverly, 5 F.3d 633, 641 (2d Cir. 1993); United States v. Bein, 728 F.2d 107, 114 (2d Cir. 1984). Courts generally apply a six factor test to guide that discretionary decision:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

Louis Vuitton Malletier S.A. v. LY USA. Inc., 676 F.3d 83, 99 (2d Cir. 2012) (quoting Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc., 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)).

Still, the decision to grant a stay is an "extraordinary remedy." Id. at 98. "[T]he Constitution rarely, if ever, *requires* such a stay." Id. Thus Defendants here can only prevail on their objection "if denying a stay would cause substantial prejudice to the defendant" violative of his

constitutional rights. Id. at 100. Courts have noted these cases "are few and far between." Id. at 100 n.15.

The Court is not persuaded there is a sufficient Fifth Amendment question here rendering this case one of those rare cases in which the Constitution requires a stay. Kontilai, before the unsealing of an indictment against him, has already submitted to discovery in this matter and testified in a contempt hearing against him. (See Dkt. No. 713, at 2.) Kontilai has submitted a verified complaint regarding the same events and transactions at issue here. (See Dkt. No. 740, at 2.) Thus, the need for a stay to protect Kontilai's Fifth Amendment rights, given that he has already testified and there is no imminent proceeding that would require him to testify again, is limited.

Moreover, there is little concern moving forward that Kontilai would be forced to choose between his Fifth Amendment rights and testimony in this matter. Judge Gorenstein's Order expressly noted that the Court might reconsider a stay "(a) if Kontilai returned to face the charges or (b) when the case reaches the trial stage (assuming Kontilai plans to testify)." (See Dkt. No. 713, at 2.) The Court agrees that these two events *might* require a reconsideration of the Fifth Amendment implications in this matter. But until that time,

7

there is simply no Fifth Amendment implication to speak of, and therefore a stay is not constitutionally required.[1]

Having found that a stay is not constitutionally required, the Court is persuaded that Judge Gorenstein's Order is not "clearly erroneous" or "contrary to law." Judge Gorenstein properly applied the Louis Vuitton factors in assessing Kontilai's motion to stay, finding that while the first factor weighed in Kontilai's favor, the other five did not. (See Dkt. No. 713.) And as the Second Circuit has cautioned, these factors merely "act as a rough guide for the district court as it exercises its discretion." Louis Vuitton, 676 F.3d at 99. Thus, the Court declines Kontilai's invitation to relitigate each factor and come to its own conclusion -- particularly because doing so would vitiate Rule 72's intended purpose of referring cases to Magistrate Judges to increase efficiency. See Wider v. Colvin, 245 F. Supp. 3d 381, 385 (E.D.N.Y. 2017); Molefe v. KLM Royal Dutch Airlines, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009). Judge

---

[1] At this stage, the Court need not, and does not, address the question of whether a stay would be required should either event discussed above occur.

8

Gorenstein's Order was a proper exercise of discretion, and therefore, Defendants' Objection is denied.

3.  ENLARGEMENT OF DEPOSITON LIMITS

Next, Defendants object to Judge Gorenstein's Order on deposition limits. (See Dkt. No. 679.) First, the Court will address the two items on which Defendants seek "confirmation." (See Dkt. No. 715 at 1.) As an initial matter, if Defendants seek clarification of any of Judge Gorenstein's Orders, Judge Gorenstein is the proper party to address. It is inappropriate to object to any of Judge Gorenstein's orders in order to seek "confirmation."

The Court notes however that Judge Gorenstein's Order is perfectly clear on those matters: (1) four witnesses have already been noticed for depositions in this matter, those depositions do not count towards Defendant's 10-deposition limit, and there is no indication why those witnesses would need to be deposed more than once; and (2) Judge Gorenstein would grant leave to exceed the 10-deposition limit for SEC witnesses to the extent those witnesses were allowed to be deposed. (See Dkt. No. 679 at 2-3.) Judge Gorenstein has the authority to Order such relief, and seeking this Court's

"confirmation" is unnecessary and inefficient. See Wider, 245 F. Supp. 3d at 385.

Despite Defendants' lengthy filing, they seemingly make only two specific objections to Judge Gorenstein's Order: "(a) Depositions taken in the Intervenor Action should not be counted against the 10-deposition limit imposed on depositions in the SEC Action; and (b) Adequate cause exists to expand the number of depositions to be taken in the SEC Action." (Dkt No. 717, at 1-2.) Both objections are denied.

First, the Court will not consider Defendants' objections to the Order with respect to the SEC and Intervenor Actions because that issue was not properly raised before Judge Gorenstein. (See Dkt. No 679 at 3, n.1.) The Order does not rule as Defendants' claim it does. This issue is not ripe for review by this Court until Judge Gorenstein has adjudicated its merits. In re Keurig Green Mt. Single-Serve Coffee Antitrust Litig., 336 F.R.D. 400, 403-04 (S.D.N.Y. 2020).

As to the second objection, Judge Gorenstein ruled that there was no need to expand the presumptive 10-deposition limit because nineteen of the twenty-two witnesses that Defendants wished to depose either have been deposed or will be deposed. (See Dkt. No. 679 at 2-3.) As for the other three witnesses, Judge Gorenstein found that their testimony would

10

be cumulative and unnecessary. (Id. at 2.) Defendants present no real argument that this ruling on cumulativeness was "clearly erroneous." Given that Defendants have the opportunity to depose nineteen of the twenty-two witnesses sought, Defendants' representations that they are being "compelled to go to trial in the dark without a scintilla of information known to the SEC" (Dkt. No. 717, at 3) is hyperbole bordering on outright falsehood.

Considering the above, the Court is not persuaded that Judge Gorenstein's Order regarding deposition limits (Dkt. No. 679) is "clearly erroneous" or "contrary to law," and therefore Defendants' Objection is denied.

4. MOTION TO COMPEL

Next, Defendants submit an objection to Judge Gorenstein's Order denying their motion to compel production of the following documents: (1) SEC notes taken during interviews of twenty-one witnesses in the course of the SEC's fact-finding investigation; (2) notes taken by SEC staff from an FBI "FD-302" form created during a joint SEC and United States Department of Justice ("DOJ") interview of Gail Holt; and (3) the actual FD-302 document created after Holt's interview. (See Dkt. No. 685.) Judge Gorenstein held that: (1) the SEC staff's notes were protected from disclosure by the Work Product doctrine; and (2) the FD-302 was not in the

11

SEC's possession, custody, or control, and therefore the SEC could not be compelled to produce it. (Id.)

Although Defendants' Objection is lengthy and scattershot, they principally argue that: (1) work-product protection does not apply because it does not protect bare facts, the SEC waived the protection by relying on the interviews in the complaint, the documents were not prepared in anticipation of litigation, and if work-product protection did apply, Defendants have a substantial need for the notes; and (2) the FD-302 is in the SEC's custody because it was created during a joint investigation.

A. Work Product

As Judge Gorenstein properly noted, "[f]ederal law governs the applicability of the work-product doctrine in all actions in federal court." Wultz v. Bank of China Ltd., 304 F.R.D. 384, 393 (S.D.N.Y. 2015) (citing Allied Irish Banks, P.L.C. v. Bank of Am., N.A., 252 F.R.D. 163, 173 (S.D.N.Y. 2008)). Federal Rule of Civil Procedure 26(b)(3) codifies the doctrine in part, providing that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)," unless "the party shows that it has substantial need

12

for the materials . . . and cannot, without undue hardship, obtain their substantial equivalent by other means." The doctrine protects factual material, "including the result of a factual investigation" -- commonly referred to as fact work product -- as well as material that "reveals the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative'" -- commonly referred to as opinion work product. In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d 180, 183 (2d Cir. 2007).

Given these basic standards, Defendants' first argument is easily rejected. Even if the SEC notes reflected only bare facts, "fact work product may encompass factual material, including the result of a factual investigation." In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d at 183. Thus, that fact alone does not prevent the work-product protection from attaching.

The Court will not consider Defendants' next argument, that the SEC's reference to the witness statements in the complaint waives work-product protection. As the SEC points out, Defendants did not raise this argument before Judge Gorenstein, and the Court will not entertain attempts to relitigate motions with new arguments and new factual assertions. In re Keurig Green Mountain Single-Serve Coffee Anitrust Litig, 336 F.R.D. at 403-04 ("[N]ew arguments and

13

factual assertions cannot properly be raised for the first time in objections to [a magistrate's discovery order], and indeed may not be deemed objections at all . . . .") (internal quotation marks and citations omitted); see also Khatabi v. Bonura, No. 10 Civ. 1168, 2017 WL 10621191, at *5 (S.D.N.Y. Apr. 21, 2017) (citation omitted) (collecting cases). Again, allowing a party to assert such arguments is antithetical to the purpose of referrals to a Magistrate Judge under Rule 72. See Wider, 245 F. Supp. 3d at 385.

Defendants' next argument -- that these documents are not protected because they were not prepared in anticipation of litigation -- is unavailing. It is true that the work-product doctrine does not protect "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of litigation." United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998). But courts take "a flexible approach in determining whether the work product doctrine is applicable, asking not whether litigation was a certainty, but whether the document was created 'with an eye toward litigation.'" A. Michael's Piano, Inc. v. F.T.C., 18 F.3d 138, 146 (2d Cir. 1994).

As Judge Gorenstein noted, the SEC submitted an affidavit from Jacqueline Moessner, the SEC attorney who

14

conducted the witness interviews, which explicitly stated that Moessner "conducted the interviews and prepared the interview memoranda and notes in this matter because of the prospect of litigation" and that she "would not have conducted these interviews if [she] did not expect the possibility of litigation." (Dkt. No. 575-1, at ¶¶ 11, 12.) It is well established that these types of statements are sufficient to demonstrate anticipation of litigation under the Second Circuit's flexible standard. (See Dkt. No. 685, at 8-9 (collecting cases).)

Finally, the Court is not persuaded that Defendants have demonstrated a substantial need for the documents such that Judge Gorenstein's Order is clearly erroneous. Substantial need exists if the documents at issue are "crucial to the determination of whether the defendant could be held liable for the acts alleged, or carr[y] great probative value on contested issues." Gucci Am., Inc. v. Guess?, Inc., 271 F.R.D. 58, 74-75 (S.D.N.Y. 2010). The burden to demonstrate substantial need is on Defendants. See, e.g., Obeid v. La Mack, No. 14 Civ. 6498, 2015 WL 5581577, at *3 (S.D.N.Y. Sept. 16, 2015). Here again, Defendants presented no argument to Judge Gorenstein that substantial need existed for the bulk of the documents and thus the Court will not consider these arguments now. But, Defendants did argue that substantial

need existed for the SEC notes from the FD-302 with respect to Gail Holt. The Court's discussion will therefore be limited to this argument.

As to the SEC's notes from the FD-302 memorializing the interview of Gail Holt, Judge Gorenstein held that because Defendants had the opportunity to depose Holt, any substantial need was vitiated. Despite taking Holt's deposition, Defendants argue that the notes are necessary for impeachment purposes. (See Dkt. No. 720.) But Judge Gorenstein's finding, that "[c]ase law is clear that a party's desire to use the interview notes for impeachment purposes does not by itself constitute substantial need," is supported by ample authority. (Dkt. No. 685, at 14-15 (collecting cases).) The Court is therefore not persuaded that Judge Gorenstein's Order is contrary to law on this point.

B.  Joint Investigation

Defendants appear to object to Judge Gorenstein's holding that the SEC could not be compelled to produce the FD-302 document created and retained by the FBI after Gail Holt's interview. But Defendants do not actually present detailed argument on the point. (See generally Dkt. No. 720.) This alone is enough to reject any such contention.

Regardless, however, Judge Gorenstein's Order on this point is not clearly erroneous. First, Defendants' reliance

16

on United States v. Martoma, 990 F. Supp. 2d 458 (S.D.N.Y. 2014) in arguing that an FBI document created in a joint SEC-FBI investigation is discoverable from the SEC, is misplaced. Martoma dealt with criminal discovery, and specifically the government's obligations to produce exculpatory material under Brady v. Maryland, 373 U.S. 83 (1963). There is of course every reason to think that this Brady obligation is not coextensive with the government's civil discovery obligations. Rather, Federal Rule of Civil Procedure 34 ("Rule 34"), which governs civil discovery, requires "production if the party has the practical ability to obtain the documents from another, irrespective of his legal entitlement to the documents." Golden Trade, S.r.L. v. Lee Apparel Co., 143 F.R.D. 514, 525 (S.D.N.Y. 1992). Defendants make no argument, in either their initial motion to compel or their Objection to Judge Gorenstein's Order, that the SEC should be required to produce the FD-302 under this Rule 34 standard.[2]

Second, it is true that courts have found "effective control" of documents housed within one agency of the

---

[2] The Court largely agrees with Judge Gorenstein's citation to SEC v. Stanard – which dealt with a very similar civil discovery dispute – but notes that evidence was presented in that matter showing that the USAO refused to turn over the discovery material at issue to the SEC. No. 06 Civ. 7736, 2007 WL 1834709, at *3 (S.D.N.Y. June 26, 2007). It might be that Rule 34 - which refers to "practical ability" and rejects a "legal entitlement" test - requires a government agency to at least attempt to

government if those documents were created through a joint investigation. SEC v. Standard, No. 06 Civ. 7736, 2007 WL 1834709, at *3 (S.D.N.Y. June 26, 2007). But the Court is not persuaded that Judge Gorenstein's review of the facts is "clearly erroneous" -- and, indeed, Defendants provide no argument to suggest otherwise. Defendants merely state, without citation, that "[t]he law does not and should not require proof of a broad joint investigation before requiring the production of a single set of notes." (Dkt No. 720, at 2.)

Because the Court is persuaded that Judge Gorenstein's Order on Defendants' motion to compel is not "clearly erroneous" or "contrary to law," Defendants' Objection is denied.

### III. CONCLUSION

For the reasons stated above, it is hereby

**ORDERED** that Defendants objections (Dkt. Nos. 662, 715, 720, 733) to Magistrate Judge Gorenstein's rulings on those matters are **DENIED**.

---

obtain custody of a document created in a joint interview from another agency, even when that agency "has [no] authority to order [another agency] to turn over the documents." Id. Although the Court is not aware of the SEC making such a showing in this case, none was required because of Defendants' decision to argue only a "joint investigation."

**SO ORDERED.**

Dated: New York, New York
       04 February 2021

_____
Victor Marrero
U.S.D.J.