

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
BYRON ROGERS FEDERAL OFFICE BUILDING
1961 STOUT STREET, SUITE 1700
DENVER, CO 80294-1961

DIVISION OF
ENFORCEMENT

TELEPHONE: (303) 844-1000
EMAIL: MILLERTE@SEC.GOV

February 17, 2021

**Via ECF**
The Honorable Gabriel W. Gorenstein
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    <u>SEC v. Collector's Coffee, Inc. et al., 1:19-cv-04355-VM-GWG</u>
                Response to Request for Pre-motion Conference to Modify Asset Freeze Order
                (Doc. # 801)

Dear Judge Gorenstein:

      We write on behalf of the SEC to respond to Defendant Mykalai Kontilai's letter request for a pre-motion conference (Doc. # 801, "Letter") on his anticipated motion to modify the asset freeze order to permit him to proceed with a lawsuit he filed against his former counsel ("Lawsuit"). The SEC intends to oppose the anticipated motion because the limited information Kontilai has provided fails to show that his plan to proceed with the Lawsuit will adequately protect the value of Defendants' remaining assets.

      To begin with, Kontilai does not adequately articulate SEC's position during the meet-and-confer teleconference referenced in the Letter. During the conferral, the SEC made the request that, given this Court ruled that the Lawsuit is an asset within the asset freeze order, *see* Doc. # 767 at 25, Kontilai needed to seek modification of the asset freeze were he to take any further action with respect to the lawsuit. The SEC also asked for information about the lawsuit that would allow it to take a position on such a request. Rather than provide the SEC's position in the Letter, Kontilai argues that the SEC objects to the Lawsuit to protect former SEC officials—which is not correct.

      The SEC objects to a request for that approval *on the current record* because Kontilai's he has not provided enough information showing that the Lawsuit will adequately protect the value of Defendants' remaining assets. For example, it is unclear how the Lawsuit is or will be funded. Contrary to the Letter, litigation is, unfortunately, not free. Letter at 2. Kontilai admits that he has already encumbered the value of the Lawsuit (without leave of the Court) by

promising to pay his counsel a portion of any amounts recovered. Letter at 3. Kontilai has not produced a copy of the contingency fee agreement – despite his counsel's promise to do so in October 2020. Kontilai's description of the agreement in the Letter as "standard" and "in line with the typical arrangements" is insufficient for the SEC (and Court) to understand what CCI is proposing it give up in exchange for Mr. Lambert's services or whether it is commercially reasonable.[1] Indeed, Kontilai provides no evidence that he conducted a market search for attorneys willing to take the case or why he believes the contract with Mr. Lambert is "standard."

Litigation costs also include more than attorney fees. Assuming they responsibly prosecute their malpractice action destined for arbitration,[2] Defendants will certainly incur costs for their own expert fees, depositions, and arbitration fees. Defendants will also incur the risk of adverse orders to pay the expert fees, discovery costs, and arbitration costs of the defendants in the Lawsuit. Kontilai's only disclosure is that the costs of litigation, "will either be financed by a third party or paid by the [undisclosed] attorneys receiving the contingency" (Letter at 2), which shows that Defendants (1) have not even decided how to pay the costs of the Lawsuit, (2) are considering additional liens or other encumbrances of frozen assets to finance the Lawsuit, and (3) may depend on an unnamed third party to put up funds in order to pursue their claim. Kontilai's disclosure about his plan to fund the litigation raises more questions than it answers.

Moreover, Kontilai's apparent plan to wager frozen assets (that rightfully belong to CCI investors) on the hope of a recovery large enough to repay the costs does not appear to reflect a sober assessment of Defendants' likelihood of success in the Lawsuit. Indeed, they do not even address the fact that they face a counterclaim for extensive unpaid fees in the Lawsuit, nor do they acknowledge the risk of a default judgment (or other sanction) if Kontilai is ordered to return to the United States and refuses to do so.

Additionally, the Court should question whether it can rely on Kontilai's current counsel in the Lawsuit to protect faithfully Defendants' assets and to inform this Court accurately about the progress of the Lawsuit. Counsel's ability to protect CCI and its investors in the lawsuit is obstructed by, at a minimum, a glaring conflict of interest. That is because CCI's counsel in the lawsuit is also Kontilai's personal counsel in this case. The theory of the claims in the Lawsuit is that Defendants' former counsel negligently produced fabricated documents to the SEC. The success of that claim does not necessarily require CCI to prove who fabricated the documents, and does not require CCI to adopt or endorse Kontilai's defense in this case that Gail Holt fabricated the documents.

Kontilai's personal counsel cannot provide CCI advice on whether it is in CCI's interest in the Lawsuit to allege or attempt to prove who fabricated the documents, and has no place advising CCI that it should allege or attempt to prove that Kontilai did not know about the fabricated documents. But that is exactly what Kontilai's personal counsel alleged in the Lawsuit on behalf of CCI before ever disclosing the existence of the Lawsuit to the Court.

---

[1] The SEC understands that Mr. Lambert is the only attorney of record for plaintiffs in the Lawsuit.

[2] The claims asserted in the Lawsuit are subject to an arbitration clause. Doc. # 601-2 at *50-51 (agreement with former law firm stating that "any dispute or claim arising out of or in any way relating to our representation of you (including, without limitation, any claim of malpractices [or] breach of contract…) shall be finally settled by arbitration….").

Moreover, without more information, the Court cannot reasonably rely on Defendants' current counsel's assurances that the Lawsuit is in the best interest of CCI. It cannot be credibly disputed that he has been evasive with the SEC and the Court more than once. For instance, Kontilai's counsel of record in this case filed the Lawsuit without telling the Court or the SEC (the SEC learned about it from the media) and tried to do so under seal in part to facilitate an early settlement. Doc. # 601-1 at 3 ("[P]laintiffs request to proceed under seal for the following five reasons…(5) plaintiffs are concerned that 'disclosure of the present case may result in excluding the possibility of an early settlement.'"). The SEC understands from counsel for the defendants in the Lawsuit that Kontilai's counsel did, in fact, broach the possibility of an early settlement of the Lawsuit.

But Kontilai denied that he filed the Lawsuit under seal to promote an early settlement and claimed to have "no idea" if his current counsel approached his former counsel about settlement. Transcript of Contempt Hrg'g at 180:1-4 ("Q: Is it true that one of the reasons that you told the Court you wanted this case under seal was that disclosure of the case might exclude the possibility of an early settlement? A: No, not at all. That was – had absolutely no bearing on it…."); *see also id.* at 181:2-9.[3] Kontilai's counsel attended the hearing and made no attempt to clarify what he did or whether it was with or without his client's knowledge. Counsel for Kontilai was also less than forthright with the Court during the hearing about other matters. *See, e.g., id.* at 324:14-15 ("Back to you, Mr. Lambert. Once again you've misled me."). Defendants' counsel in the Lawsuit will need to make continual judgment calls about the responsible outlay of frozen assets, including when determining how many witnesses to depose, the extent of an expert's scope of work, and assessing the risk of adverse orders that would impact frozen assets. Given the conflict of interest, and given prior conduct, the Court should not simply accept Kontilai's assurances that the Lawsuit will benefit CCI.

Finally, the Court should also consider the fact that Kontilai is continuing to argue that the asset freeze order does not apply to the Lawsuit (Letter at 2). The Court has ruled that "the right to file the lawsuit necessarily comes within the definition of 'asset' in the TRO as a legal matter." Doc. # 767 at 25. Given this unambiguous Order, Kontilai's argument that the Lawsuit has "nothing to do with the scope of the Temporary Restraining Order…," Letter at 2, is more evidence that the Court should be slow to trust that Kontilai and his current counsel will comply faithfully with an Order they refuse to acknowledge.

For the reasons above, the SEC intends to oppose Kontilai's anticipated motion because, on the current record, Kontilai has failed to show that his plan to proceed with the Lawsuit will adequately protect the value of assets subject to the asset freeze order, and additional encumbrances to finance the litigation and the assertion of counterclaims would threaten the few assets Defendants have accounted for.

Were the Court to consider Kontilai's request, it should require that he provide, at a minimum, the following: (1) documentation of attorney fee arrangements with conflict-free counsel; (2) a detailed plan of expected costs and funding sources with an agreement that Defendants cannot take any action that in any way takes on additional financial obligations for CCI (either contingency or loans), without advance approval from the Court; (3) an agreement

---

[3] "**Q:** ….was one of the reasons that you asked the case to be filed under seal to promote an early settlement? **A:** No. **Q:** Did your attorneys, in fact, approach the defendants in this case with the topic of settlement? **A:** I have no idea if he did or he hasn't…."

that Defendants must obtain permission before entering into a settlement agreement and that 100% of any recovery obtained while the asset freeze order is pending would be transferred first into frozen account before any disbursements, which must be approved by the Court.

                                                           Sincerely,

                                                           *s/ Terry R. Miller*
                                                           Terry R. Miller (*pro hac vice*)
                                                           Mark L. Williams
                                                           Stephen C. McKenna (*pro hac vice*)
                                                           Counsel for Plaintiff, United States
                                                           Securities and Exchange Commission

cc:       Counsel of record