UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                                                                             :

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,                        :

        Plaintiff,                          :        MEMORANDUM ORDER

      -v.-                                :        19 Civ. 4355 (VM) (GWG)

COLLECTOR'S COFFEE INC., et al.,        :

        Defendants.                     :
---------------------------------------------------------------x

GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE

      Nonparty Timothy J. Dennin has moved to quash a deposition subpoena served by defendant Mykalai Kontilai. (Docket ## 770, 779, 786, 792, 819, 824, 825).

      Fed. R. Civ. P. 26(b)(1) provides that

      Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

      Rule 26(c) authorizes a court to issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Finally, Fed. R. Civ. P. 45(d)(3)(A) requires a court to "quash or modify a subpoena" that "(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Dennin argues that the subpoena should be quashed pursuant to Fed. R. Civ. P. 26 and 45, as it seeks irrelevant information, infringes on "privileged work product," and is unduly burdensome to Dennin. Memorandum of Law in Support, filed January 27, 2021, at 1 (Docket # 770-1). We begin by addressing the issue of relevance as it disposes of the application.

      The only claim of the SEC that Kontilai asserts has any relevance to the testimony sought by the subpoena is the SEC's fifth claim for relief. See Memorandum of Law in Opposition, filed February 3, 2021, at 2, 5 (Docket # 786) ("Def. Mem."). That claim alleges that the defendants (1) bought back investor shares on the condition that those investors not contact governmental agencies for the purpose of investigating Kontilai's company (see Amended Complaint ¶¶ 112-117, filed November 4, 2019 (Docket # 134)); (2) entered into settlement

1

agreements with investors represented by Dennin that contained clauses barring the investors and Dennin from providing adverse information to the governmental authorities such as the SEC (see id. ¶¶ 118-123); and (3) filed a suit against the investors and Dennin for breaching the settlement agreement in which they alleged that the investors and Dennin caused the SEC to contact them (see id. ¶¶ 124-136). The facts underlying the fifth claim for relief, however, are not in dispute because Kontilai has already admitted the core allegations in his answer. See Answer ¶¶ 114-16, 118-23, 127-30, 132-33, filed March 6, 2020 (Docket # 241) ("Answer"). Thus, there is no apparent reason to take Dennin's deposition on these factual matters.

In his memorandum of law opposing Dennin's motion, Kontilai adverts to some facts that he hopes to get from a deposition of Dennin. But the facts he cites are all irrelevant to the SEC's proof of its fifth claim. He refers to a letter in which Dennin threatened Kontilai that he would alert the Government to Kontilai's fraud if the suit by the investors he represented was not settled. Def. Mem. at 2. Kontilai asserts that the letter "was unethical and improper because it threated [sic] to report CCI and Kontilai to governmental authorities, including his former colleagues at the SEC, if his demand for $1.5 million was not met." Id. But Kontilai never explains why the accusation that Dennin acted improperly — putting aside the fact that the accusation is baseless anyway, see Memorandum of Law in Support, filed March 12, 2021, at 7 (Docket # 824) — could have any bearing on Kontilai's effort to attack the proof the SEC offers as to the fifth claim and the Court sees no connection.

Kontilai goes on to speculate that Dennin coordinated with the SEC to bring the charges against Kontilai. Def. Mem. at 2-3. But Kontilai never explains why obtaining information about the coordination would be relevant to disproving the SEC's claim regarding the conduct alleged — that is, the execution of the settlement agreements and the filing of the lawsuit against the investors and Dennin. Nor can the Court divine any relevance. Kontilai asserts also that Dennin has "unique access to the information concerning . . . the preparation of the settlement agreement." Id. at 6. But, again, Kontilai never explains what information Dennin could possibly have with respect to the settlement agreement that is relevant to a disputed fact underlying the SEC's claim against Kontilai. Thus, Dennin has nothing relevant to offer as to the SEC's affirmative claim regarding the litigation involving Dennin.[1]

We turn next to the question of whether Dennin has information relevant to Kontilai's defenses. Kontilai asserts that he seeks to obtain information from Dennin as to Kontilai's defenses numbered 19 and 20 in his Answer. Id. at 3 (citing Answer at 29-30). Those defenses are garbled but assert in essence (1) that the SEC's claims are barred by the First Amendment because they were brought to stop Kontilai from "continu[ing] his journalistic endeavors to make publicly known" that the SEC was bringing charges to extract money from Kontilai; and (2) the SEC's claims were brought "to inflict intentional physical, economic and/or mental damage on

---

[1] Obviously, Dennin must be replete with knowledge about the manner in which his clients were allegedly defrauded by Kontilai. Kontilai does not argue that he could obtain relevant information from Dennin on this topic — presumably because all of Dennin's conversations with his clients and his efforts to investigate their claims are obviously subject to attorney-client privilege and work product protection.

Mr. Kontilai." Answer at 29-30. In other words, Kontilai is asserting that his allegations regarding the SEC's allegedly improper motives in bringing this action may provide him a defense and thus entitle him to discovery.

Because case law appeared to run squarely against Kontilai's assertion of these defenses, we issued an order pursuant to Fed. R. Civ. P. 12(f)(1) requiring him to show cause why the affirmative defenses numbered 19 and 20 should not be stricken. See Order, entered February 17, 2021 (Docket # 803). As we explained in that order:

> It appears to the Court that these defenses are improper and are subject to being stricken, as the SEC at one time proposed (Docket # 268). Certainly, courts have adverted to the possibility that "outrageous or unconstitutional activity" might serve as an equitable defense to an SEC enforcement action, provided such conduct results in prejudice to the defendant that "rises to a constitutional level." S.E.C. v. Lorin, 1991 WL 576895, at *1 (S.D.N.Y. June 18, 1991) (citing S.E.C. v. Musella, 38 Fed. R. Serv. 2d 426, 428 (S.D.N.Y. 1983)); accord S.E.C. v. Am. Growth Funding II, LLC, 2016 WL 8314623, at *3 (S.D.N.Y. Dec. 30, 2016) (citing Lorin), report and recommendation adopted, 2017 WL 728701 (S.D.N.Y. Feb. 22, 2017); S.E.C. v. Elecs. Warehouse, Inc., 689 F. Supp. 53, 73 (D. Conn. 1988). But "courts have permitted the defense only where the alleged misconduct occurred during the investigation leading to the suit and the misconduct prejudiced the defendant in his defense of the action." Elecs. Warehouse, Inc., 689 F. Supp. at 73 (emphasis added). Thus, courts have refused to countenance such defenses where prejudice to the defendant's defense has not been alleged. See, e.g., S.E.C. v. Cuban, 798 F. Supp. 2d 783, 785 (N.D. Tex. 2011) (striking defense because defendant "failed to allege facts that give the SEC fair notice that the misconduct on which he relies resulted in prejudice to his defense of the enforcement action that rises to a constitutional level and is established through a direct nexus between the misconduct and the constitutional injury"); S.E.C. v. Rosenfeld, 1997 WL 400131, at *2 (S.D.N.Y. July 16, 1997) (striking defense of unclean hands where no allegations were present that misconduct alleged "did in fact prejudice the defense of this matter"); Musella, 38 Fed. R. Serv. 2d at 428 (striking defense because of "a total failure to demonstrate prejudice"). The 19th and 20th defenses do not allege or even suggest the possibility that the SEC's misconduct prejudiced Kontilai in the defense of the action. Rather, Kontilai alleges only that the suit should be dismissed because it was brought for improper motives.

Id. at 1-2.

Kontilai's memorandum in response (see Memorandum of Law, filed March 5, 2021 (Docket # 819) ("Def. Response")) contains some frivolous arguments, such as the contention that the Court is barred by the "law of the case" doctrine from invoking Rule 12(f)(1). See Def. Response at 13. The remaining arguments are meritless. We do not see the need to address all of them as it suffices to say that Kontilai has not shown how the SEC's allegedly improper

3

motives in bringing suit could ever be shown to constitute a defense to this action. This is because Kontilai has not shown how those improper motives prejudiced him in conducting a defense. The only prejudice defendant identifies is having to defend the suit itself. See id. at 7 ("The prejudice to Mr. Kontilai from the SEC's outrageous conduct is clear — namely the initiation and continuance of this enforcement action against Mr. Kontilai and the unwarranted freezing of his assets."). This falls far short, however, of showing a "direct nexus" between the allegedly improper action and Kontilai's ability to mount a defense. Cuban, 798 F. Supp. 2d at 794. Tellingly, the only case Kontilai cites for the proposition that the SEC's motive in bringing suit is relevant is the case of Eagley v. State Farm Ins. Co., 2015 WL 5714402, at *9 (W.D.N.Y. Sept. 29, 2015), see Def. Response at 10, which is completely off point. Eagley is an insurance coverage case and says nothing about what must be shown to prove an equitable defense to an enforcement action.

To frame the issue in terms of the elements required to strike a defense, as set forth in GEOMC Co., Ltd. v. Calmare Therapeutics Inc., 918 F.3d 92, 96 (2d Cir. 2019), Kontilai (1) has not set forth facts that would allow the defense to succeed given that showing an improper motive of the SEC would not constitute a defense to the enforcement action; (2) Kontilai has not identified a question of law that would allow the defenses to succeed, and (3) the SEC (along with nonparties) would be prejudiced by having to engage in discovery regarding these invalid defenses.

Accordingly, the affirmative defenses numbered 19 and 20 are stricken. Additionally, Dennin's motion to quash (Docket # 770) is granted. See, e.g., S.E.C. v. NIR Grp., LLC, 2013 WL 5288962, at *6 (E.D.N.Y. Mar. 24, 2013) (granting motion to quash deposition subpoena after concluding that defendants' asserted defense was meritless and the subject of the deposition was accordingly "irrelevant to any claim or defense in this action").

SO ORDERED.

Dated: March 15, 2021
New York, NY

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge