Robert G. Heim
rheim@tarterkrinsky.com
TARTER KRINSKY & DROGIN
1350 Broadway
New York, NY 10018
(212) 216-1131
*Attorneys for Defendant Mykalai Kontilai*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, *Plaintiff* v. COLLECTOR'S COFFEE, INC., et al., *Defendants*. | No. 19-cv-4355-VM-GWG ECF CASE |

**DEFENDANT MYKALAI KONTILAI'S**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL TESTIMONY**
**FROM JOHN CULOTTA**

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION . . . . . . . . . . 1

II. ARGUMENT . . . . . . . . . 2

A.  The Relevant Communications with Mr. Culotta are Not
    Covered by the Attorney-Client Privilege . . . . . 2

B.  To the Extent Any Privilege Applied to Communications between
    Culotta and Holt (or Holt's Attorneys) Holt has Clearly Waived the Privilege . 4

C. The Crime Fraud Exception to the Attorney-Client Privilege Applies to Culotta's
    Communications with Holt . . . . . . . 8

III. CONCLUSION . . . . . . . . . 9

Pursuant to Federal Rules of Civil Procedure 30 and 45, Defendant Mykalai Kontilai respectfully submits this Memorandum of Law in support of his Motion to Compel deposition testimony of John Culotta and overrule Mr. Culotta's objections to answering questions based on purported claims of attorney-client privilege.

## I.     INTRODUCTION

On February 11, 2021 third party witness John Culotta appeared for his deposition. Mr. Culotta was a Senior Claims Specialist employed by the insurance company QBE North America ("QBE"). During the relevant time period of 2017 and 2018 QBE was the insurance company that was approving and selecting counsel for Collectors Coffee Inc. ("CCI"), Mykalai Kontilai and Gail Holt in the SEC's investigation of this matter.

In his deposition Mr. Culotta refused to answer numerous questions based on meritless assertions of attorney-client privilege. For example, Culotta was instructed not to answer questions on the ground of attorney client privilege with regard to: (i) communications between Culotta and Holt concerning Holt's termination of William Leone as her counsel. (Culotta Transcript ("Tr.") 101:1 – 111:18); (Tr. 101:11 – 111:18; (ii) communications between Culotta and Holt regarding Holt's decision to terminate Susie Youn as her counsel (Tr. 114:9 to 120:5); (iii) communications between Culotta and Holt regarding Holt falsifying documents (Tr. 120:12-122:2); (iv) communications between Culotta and Andrew Ceresney about Ceresney ending his representation of Holt; (Tr. 132:23- 133:5); and (v) communications between Culotta and Ceresney concerning potential conflicts due to Ceresney representing more than one person in the SEC investigation. (Tr.134:6-135:4 and 138: 5-14).

1

The assertion of the attorney client privilege concerning these communications should be overruled because Mr. Culotta never acted as an attorney for any party in this matter and his attempt to argue that the common interest doctrine covered his communications with Ms. Holt and her attorneys is without merit. As discussed below, Mr. Culotta's assertion of the common interest doctrine is without merit because, among other things, the communications that were asked about did not concern legal advice. Finally, as discussed below, Ms. Holt has waived any privilege she may have had with regards to these communication and because of the crime fraud exception.

## II.     ARGUMENT

### A.     The Relevant Communications with Mr. Culotta are Not Covered by the Attorney-Client Privilege

The attorney-client privilege ordinarily protects confidential communications between client and attorney made in order to obtain legal assistance. *Brennan Ctr. for Justice at N.Y. Univ. Sch. Of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 207 (2d. Cir. 2012). The attorney-client privilege can be explicitly or implicitly waived by the client. *Scott v. Chipotle Mexican Grill, Inc.*, 94 F. Supp. 3d 585, 598 (S.D.N.Y. 2015); *see also In re Penn Cent. Commercial Paper Litig.*, 61 F.R.D. 453, 463 (S.D.N.Y. 1973). Federal Rule of Evidence 502(a) provides that, when a disclosure of attorney-client privileged information is made in a federal proceeding or to a federal agency and the attorney-client privilege is waived, the waiver also encompasses undisclosed communications or information if: (1) the waiver is intentional, (2) the undisclosed and disclosed communications relate to the same subject matter, and (3) those communications "ought in fairness to be considered together." Both the language of Rule 502(a) and the Advisory Committee Notes establish that the use of the disclosed communication is critical to the fairness inquiry.

Here, the communications at issue did not involve Ms. Holt seeking legal advice from any of her attorneys. In addition, the communications do not involve any attorneys conveying legal advice to Ms. Holt or any other party.

Mr. Culotta's argument that the communications at issue are privileged is based largely on the common interest doctrine. However, that doctrine does not provide any support for Mr. Culotta's argument because for the common interest doctrine to apply the underlying communications still must be covered by the attorney client privilege. In other words, the common interest doctrine does not apply to all communications between parties with a common interest, but rather is limited to covering only those communications that fall under the attorney client privilege that are disclosed to third parties with a common interest.

Even the cases cited by Mr. Culotta in his pre-motion letter acknowledge this point. For example, *Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*, 27 N.Y.3d 616, 57 N.E.3d 30 (2016), a case cited by Mr. Culotta, held "[u]nder the common interest doctrine, however, **an attorney-client communication** that is disclosed to a third party remains privileged if the third party shares a common legal interest with the client who made the communication and the communication is made in furtherance of that common legal interest." (emphasis added). In addition, New York courts have "applied the common interest doctrine in the insurance context to a limited extent: when an attorney acts for two different parties having a common interest, communications by either party to the attorney are not necessarily privileged in a subsequent controversy between the two parties. This is especially the case where an insured and his insurer initially have a common interest in defending an action against the former, and there is a possibility that those communications might play a role in a subsequent action between the

3

insured and his insurer." *River Insurance Co., v. Columbia Casualty Co.*, 1995 WL 5792, at *5 (S.D.N.Y. Jan. 5, 1995)

Nor does Mr. Culotta's position as a Senior Claims Specialist with QBE provide any special protection to the communications at issue.  Mr. Culotta cites the case *Bovis Lend Lease, LMB, Inc. v. Seasons Contracting Corp*., No. 00 CIV. 9212 (DF), 2002 WL 31729693 (S.D.N.Y. Dec. 5, 2002) for the proposition that there exists special protections for the communications that Mr. Culotta had due to his position with QBE.  However, *Bovis* held "[m]erely because a communication is between an insurer and its insured does not render it privileged.  *See Mount Vernon Fire Ins*., 1998 WL 729735, at *8 n. 4 (although insurer attempted to assert an "insurer-insured" privilege, "[n]o such privilege exists"); *Aiena v. Olse*n, 194 F.R.D. 134, 136 (S.D.N.Y.2000) ("Federal courts have never recognized an insured-insurer privilege as such.") (quoting *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp*., 5 F.3d 1508, 1514 (D.C.Cir.1993))."  *Bovis Lend Lease, LMB, Inc.* 2002 WL 31729693 * 8.

Therefore, the Court should rule that no attorney-client privilege applies to the communications at issue that Mr. Culotta was questioned about and objected to.

**B. To the Extent Any Privilege Applied to Communications between Culotta and Holt (or Holt's Attorneys) Holt has Clearly Waived the Privilege**

Subject matter waiver of an attorney-client privilege can occur where "a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion." *John Doe Co. v. United States*, 350 F.3d 299, 306 (2d Cir. 2003).  Considerations of fairness weigh in favor of privilege waiver where a party attempts to use the privilege both as "a shield and a sword." *E.g.*, *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000).  It is well-settled that "[w]ith some exceptions, the attorney-client privilege is *automatically waived* when a privileged communication is

4

disclosed to a third party or litigation adversary." *Scott*, 94 F. Supp.3d at 598 (emphasis added). The privilege also can further be waived "when a client asserts reliance on an attorney's advice as an element of a claim or a defense,"

Ms. Holt has waived any privilege by selectively disclosing her communications with her prior counsel in an effort to cooperate with the SEC and save herself from civil enforcement proceedings or criminal prosecution by telling the government what it wanted to hear. Having used these communications as a sword, she cannot now use the privilege that otherwise would have attached to those communications as a shield. For example, in the course of discovery, Ms. Holt produced privileged e-mail correspondence with Mr. Leone from September 2018 entitled "Approved SEC Matter Strategy." In that email, Ms. Holt describes her frustration with her prior counsel (Debevoise) surrounding their production of the CCI Documents to the SEC. She stated that she was never informed that those documents would be produced to the SEC or that CCI had received a subpoena from the SEC, and that she was attempting to be helpful in recreating copies of those documents. Ms. Holt also references an upcoming call with Mr. Leone to discuss additional strategies moving forward. In doing so, Ms. Holt explicitly placed the advice and conversations of both Debevoise, Ceresney, and Mr. Leone at issue. Ms. Holt also produced a separate string of privileged emails with Mr. Leone from November 2018 wherein Mr. Leone outlines the "overall strategy" regarding communications with the SEC. Ms. Holt's communications with Mr. Leone on this subject were presumably privileged, as they appear to have been intended to seek legal advice. *See id.*

In that email, Ms. Holt outlines what she describes as the "approve[d] . . . strategy" pertaining to her legal defense, including that "[i]t's critical that in no way [CCI] or [Mr.

5

Kontilai] is used as a scapegoat." *Id*. All of these conversations are privileged discussions that have been voluntarily produced and thus waived.

While this document production alone would be sufficient to establish waiver, Ms. Holt has also separately waived the privilege by placing her conversations with her prior counsel at issue and selectively disclosing certain privileged conversations that would be misleading without the ability to cross-examine her. *See, e.g., Koster v. Chase Manhattan Bank*, No. 81 CIV. 5018, 1984 WL 883, at *4 (S.D.N.Y. Sept. 18, 1984) (collecting cases) (noting that waiver "will almost certainly be found" where the privileged conversations are placed at issue or selectively produced such that they might be misleading).

In addition to producing privileged documents, Ms. Holt testified extensively regarding privileged conversations with her prior counsel. CCI expressly waived the attorney-client privilege as to a string of e-mails between Ms. Holt and Debevoise about her efforts to locate the CCI Documents. (Holt Dep. 124, 127); *see also* the Debevoise Emails Regarding CCI documents (Ex. 49 to Holt Dep.).

CCI had the right to waive the attorney-client privilege as to any conversations with Ms. Holt because it is well-established that "any privilege that attaches to communications on corporate matters between corporate employees and corporate counsel belongs to the corporation, not to the individual employee, and that employees generally may not prevent a corporation from waiving the attorney-client privilege arising from such communications." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 119 F.3d 210, 215 (2d Cir. 1997*); see also United States v. Richard Roe, Inc*., 168 F.3d 69, 72 (2d Cir. 1999) (*citing Teamsters* and holding that attorney-client privilege between corporate counsel and corporation "belongs not to [a] former employee, but to the corporation").

In addition to this express waiver, Ms. Holt testified at length regarding privileged conversations with Debevoise. Specifically, Ms. Holt testified that she told Debevoise attorneys, including Mr. Ceresney, that certain CCI documents (including a $5 million promissory note and supporting bank statement) were authentic and that she had provided them to Mr. Kontilai to pass along to Debevoise. (Holt Dep. 188–89). Ms. Holt also described a conversation with Mr. Ceresney that occurred after Debevoise discovered that the CCI documents were not the originals, in which Ms. Holt attempted to explain her motivations for re-creating the CCI documents--namely, that she could not locate the originals and was attempting to be helpful. *Id.* at 192, 197 98. Ms. Holt also testified that Mr. Ceresney advised her that Debevoise could no longer represent her due to her re-creation of these CCI documents. *Id.* at 177, 198. Ms. Holt further testified regarding an ostensibly privileged meeting in December 2018 involving Ms. Holt's then counsel, Ms. Youn, and other defense attorneys for CCI and Mr. Kontilai.

When asked in her deposition whether Ms. Holt "instructed" Ms. Youn to provide false information to the SEC, Ms. Holt's current counsel objected based on attorney- client privilege. (Holt Dep. 66)   Finally, Ms. Holt also testified that she had lied to Ms. Youn, among others, at a joint meeting of defense counsel on or about December 20, 2018, regarding the circumstances surrounding the creation of the CCI Documents.  (*See* Holt Dep. 146–147, 249)

Ms. Youn's representation of Ms. Holt, however, was short- lived: the insurance company for CCI retained new counsel for Ms. Holt (a criminal counsel) once again after Ms. Holt received a grand jury subpoena.  Holt Dep. 67.  In short, Ms. Holt provided documentation or sworn testimony regarding multiple privileged conversations with each of her prior counsel.

7

### C. The Crime Fraud Exception to the Attorney-Client Privilege Applies to Culotta's Communications with Holt

If one credits Ms. Holt's most recent version of her story – namely, that the exculpatory statements she made or caused her prior counsel to make to the SEC about Mr. Kontilai were false –then she has effectively admitted to enlisting her counsel in a criminal scheme to mislead the SEC, and as such, the crime-fraud exception to the privilege would apply. *(See* 18 U.S. Code § 1505 –'Obstruction of proceedings before departments, agencies, and committees')

The crime-fraud exception strips the attorney-client privilege from any communications in furtherance of contemplated or ongoing criminal or fraudulent conduct. *Madanes v. Madanes*, 199 F.R.D. 135 (S.D.N.Y. 2001). The crime-fraud exception applies equally to attorney-client communications and work product. *In re Richard Roe*, 68 F.3d 38, 40 (2nd Cir. 1995). Whether or not the attorney was aware that the communication was in furtherance of a crime is immaterial. *In re Grand Jury Proceedings*, 87 F.3d 377, 379 (9th Cir. 1996*); see also In re Grand Jury Investigation*, 445 F.3d 266, 279 (3d Cir. 2006). A party seeking disclosure of otherwise privileged information under the crime-fraud exception need only demonstrate there is "probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud or crime." *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997), *abrogated on other grounds* by *Loughrin v. U.S.,* 573 U.S. 351 (2014).

As for the meaning of the term "probable cause" in this context, the Second Circuit has described it as equivalent to "a reasonable basis for believing that the objective was fraudulent." *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1039 (2d Cir. 1984). The "probable cause" standard is easily satisfied here, as Ms. Holt has expressly admitted in her October 7, 2020 deposition that she discussed the subject matter of her false statements

with her prior counsel and used those statements to mislead the SEC. The crime-fraud exception applies here, given Ms. Holt's most recent account of the facts. Federal law imposes a legal duty upon a person speaking with a government investigator to truthfully disclose any information known by that person, even if the person voluntarily agreed to meet with investigators. *United States v. Stewart*, 433 F.3d 273, 318 (2d Cir. 2006) (citing 18 U.S.C. § 1001). A false statement is material if it tends to or is capable of influencing the decision-making body to which it was addressed. *See United States v. Gaudin*, 515 U.S. 506 (1995); *United States v. Klausner*, 80 F.3d 55, 59 (2d Cir. 1996). Besides, it is also a violation of Section 1001 to willingly falsify, conceal, or cover up information relevant to the investigation. *United States v. Stephenson*, 895 F.2d 867, 874 (2d Cir. 1990). Ms. Holt admits that she has made false, material statements to SEC investigators in violation of 18 U.S.C. § 1001.She has told two irreconcilable versions of events that now form the basis for the SEC's Amended Complaint. Regardless of which version one believes, at least one of those versions must be false. Ms. Holt now claims that her original statements to the SEC (and her prior counsel) were false accounts. For purposes of ascertaining whether the crime-fraud exception applies, her admission alone is sufficient to constitute probable cause.

### III.  CONCLUSION

Accordingly, Kontilai respectfully submits that this Court should find that Culotta has no basis to decline to answer questions based on assertions of attorney-client privilege.

                                                Respectfully submitted,

Dated: April 6, 2021
       New York, New York                  /s/ Robert G. Heim_____
                                                Robert G. Heim
                                                Tarter Krinsky & Drogin LLP
                                                1350 Broadway
                                                New York, NY 10018
                                                Tel: (212) 216-1131
                                                Email: rheim@tarterkrinsky.com

                                                *Attorneys for Defendant Mykalai Kontilai*

CERTIFICATE OF SERVICE

      I hereby certify that on April 6, 2021, I caused the foregoing to be electronically filed by using the CM/ECF system. I further certify that a copy of the foregoing was served upon the following counsel of record via the Court's CM/ECF system:

Seth Eliot Spitzer
Cristina Isabel Calvar
Michael P. Roche
Winston & Strawn LLP
200 Park Ave
New York, NY 10166
sspitzer@winston.com
ccalvar@winston.com
MRoche@winston.com
AGarzaMattia@winston.com
dwebb@winston.com
*Counsel for the Jackie Robinson Foundation*

Stanley C. Morris
Brian T. Corrigan
12300 Wilshire Blvd., Suite 210
Los Angeles, CA 90023
Telephone (310) 394-2828
Facsimile (310) 394-2825
scm@cormorllp.com
bcorrigan@cormorllp.com
*Counsel for Collectors Café Inc.*

George Lambert, Esq.
The Lambert Law Firm
1000 NW, Washington, D.C., 20036
lawdc10@gmail.com
*Counsel to Mykalai Kontilai and Veronica Kontilai*

Patrick Stoltz, Esq.
KAUFMAN BORGEEST & RYAN LLP
200 Summit Lake Drive
Valhalla, NY 10595
pstoltz@kbrlaw.com
*Counsel to Third Party John Culotta*

Mark L. Williams
Terry Ryan Miller
Stephen McKenna
U.S. Securities and Exchange Commission
1961 Stout St., Suite 1700
Denver, CO 80294
Williamsm@sec.gov
millerte@sec.gov
mckennaS@sec.gov
*Counsel for the Plaintiff, SEC*

Richard A. Schonfeld
Chesnoff & Schonfeld
520 South Florida Street
Las Vegas, Nevada 89101
rschonfeld@cslawoffice.net
*Counsel for Intervenor-Plaintiffs*

                /s/ Robert Heim

11