UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,                                        :

            Plaintiff,                                      :    <u>OPINION AND ORDER</u>

            -v.-                                            :    19 Civ. 4355 (VM) (GWG)

COLLECTOR'S COFFEE INC., et al.,                            :

            Defendants.                                     :
------------------------------------------------------------x

GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE

        This lawsuit was brought by the Securities and Exchange Commission ("SEC") against

Collector's Coffee Inc., d/b/a Collectors Café ("CCI"), Mykalai Kontilai, the founder, President,

and Chief Executive Officer of CCI, and Veronica Kontilai, Mykalai's wife, as a relief

defendant, alleging that the defendants violated federal securities laws by defrauding investors.

See Amended Complaint, filed Nov. 4, 2019 (Docket # 134).  Defendants deposed several

attorneys who previously represented Gail Holt, a former employee of CCI.  The attorneys

declined to answer certain questions on grounds of attorney-client privilege.  Mykalai Kontilai

and Veronica Kontilai (hereinafter, "defendants") have now moved to compel the attorneys to

reveal their communications with Holt.[1]  For the following reasons, defendants' motion is

granted in part and denied in part.

---

[1] <u>See</u> Notice of Motion, filed March 8, 2021 (Docket # 820); Declaration of George
Lambert in Support, filed March 8, 2021 (Docket # 821) ("Lambert Decl."); Memorandum in
Support, filed March 8, 2021 (Docket # 822) ("Def. Mem."); Non-Party Deposition Witness
William J. Leone's Memorandum in Opposition, filed March 15, 2021 (Docket # 827);
Declaration of Robert Schwinger in Opposition, filed March 15, 2021 (Docket # 828); Non-Party
Gail Herman-Holt's Memorandum of Law in Opposition, filed March 15, 2021 (Docket # 830)
("Holt Opp."); Declaration of Gail Holt in Opposition, filed March 15, 2021 ("Holt Decl.");
Non-Party Andrew Ceresney's Opposition to Defendants' Motion to Compel, filed March 15,

I. <u>BACKGROUND</u>

This discovery dispute revolves around Gail Holt, a former employee of CCI.  Holt was deposed twice by defendants — first on July 11, 2019, <u>see</u> Excerpts of Deposition of Gail Holt, filed November 12, 2019 (Docket # 142-1), and then on October 7, 2020, <u>see</u> Deposition of Gail Holt, annexed as Exhibit 1 to Lambert Decl. ("Holt Depo.").  At her second deposition, Holt testified to a number of communications that she had with attorneys who represented her in relation to the SEC's investigation of CCI before the complaint was filed.  Holt was represented by several different attorneys in this period.  Holt testified about communications that she had with the three deposed attorneys: Andrew Ceresney, a partner at Debevoise & Plimpton; William Leone, a partner at Norton Rose Fulbright; and Susie Youn, of counsel at Winget Spadafora Schwartzberg.

Holt testified, among other things, that she had told Ceresney during a phone conversation that she created an employment agreement between Kontilai and CCI "from memory."  Holt Depo. at 43.  She testified that this was a lie, however, and that Kontilai "mouth[ed] words to me to say" to Ceresney about this agreement.  <u>Id.</u>  She testified that she told Ceresney this knowing that this information would be communicated to the SEC.  <u>Id.</u> at 33.  She also testified that she had a conversation with either Ceresney or one of his associates at Debevoise in which she lied to them — again, at Kontilai's direction — about a loan agreement and bank statement that she claimed to have "found."  <u>Id.</u> at 190, 192.  She testified about an email sent from her personal email address to Ceresney in which she asked for a "termination

---

2021 (Docket # 833) ("Ceresney Opp."); Declaration of Dane Butswinkas in Opposition, filed March 15, 2021 (Docket # 834); United States Securities and Exchange Commission's Memorandum in Response, filed March 15, 2021 (Docket # 835) ("SEC Opp."); Reply in Support of Motion to Compel, filed March 17, 2021 (Docket # 839) ("Def. Reply"); Declaration of Mykalai Kontilai, filed March 17, 2021 (Docket # 840) ("Kontilai Decl."); Notice of Errata, filed March 19, 2021 (Docket # 845).

notice" from Debevoise.  Id. at 271.  Holt testified she believed Kontilai had written this email.
Id.

As for Leone, Holt testified that she had caused Leone to make false statements to the
SEC.  Id. at 30-31.  Specifically, she testified that she asked Leone to tell the SEC "that I never
knew that Mykalai was going to give documents that I made to the SEC," and to explain that it
was Ceresney's fault that they were produced.  Id. at 31.  She testified that Leone did in fact tell
the SEC that she "had created [Kontilai's employment agreement], and . . . Andrew Ceresney
hadn't looked at [it] before sending [it] to the SEC."  Id. at 31-32.[2]  She testified that she did this
at Kontilai's urging.  Id. at 32.  She also testified about Leone sending her documents, including
a "board resolution," and that she asked Leone not to produce those documents to the SEC, id. at
138, because she "knew they were all false," id. at 139, although she told Leone "they were
real," id.  She spoke about Leone asking for assistance getting emails to produce, id. at 175, and
that Leone told her that her story "didn't make sense," id. at 177.  She said Leone asked her
about a bank statement and that she told him, falsely, "I didn't know where it came from," id. at
178, but that it and a loan agreement were authentic documents, id. at 188.  She testified that she
asked Leone to send her questions in writing, and that Kontilai would answer those questions
himself by writing responses on her iPad, id. at 213-14.

As for Youn, Holt asserted the attorney-client privilege when asked if she had instructed
Youn to provide false information to the SEC.  Id. at 66.  She denied causing Youn to tell the
SEC that Holt had created Kontilai's employment agreement.  Id. at 67.  She spoke about a
meeting she attended in December 2018 with Youn and attorneys for a number of other parties.

---

[2]  Leone denies that he said anything definitive to the SEC about what Holt had said to
him.  See Deposition of William Leone, annexed as Exhibit 3 to Lambert Decl. at 36 ("Leone
Depo.") (Leone merely "predict[ed] . . . what I think the client would or might say about
something").

Id. at 147-48.  Holt was presented with meeting notes of her statements at that meeting, confirmed that she had made those statements, but testified that many of the statements she made during that meeting were inaccurate or false.  Id. at 149-58, 165-84.

Long after Holt's deposition took place, defendants deposed Ceresney, Leone, and Youn. See Deposition of Andrew Ceresney, annexed as Exhibit 4 to Lambert Decl. ("Ceresney Depo."); Leone Depo.; Deposition of Susie Youn, annexed as Exhibit 2 to Lambert Decl. ("Youn Depo."). Each asserted the attorney-client privilege multiple times in response to questions posed by Kontilai's attorney.

The defendants then brought the instant motion to compel the attorneys to respond to the questions regarding communications with Holt, arguing that testimony from Holt's attorneys about Holt's communications with them is required in order to "obtain a complete picture of Ms. Holt's continually evolving narratives."  Def. Mem. at 12.  They argue that they are entitled to obtain this information because Holt (1) waived the privilege by testifying about her communications with counsel at her deposition and in producing certain emails and (2) that they are entitled to the attorneys' testimony under the "crime-fraud exception" to attorney-client privilege because Holt used the communications with her attorneys to commit a crime.  Id. at 1.

II.  GOVERNING LAW

A.  Attorney-Client Privilege

Because the claims in this case arise under federal law, federal common law on attorney-client privilege applies.  Fed. R. Evid. 501.  Under federal common law, "[t]he attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice."  United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011) (citing In re Cnty. of

4

Erie, 473 F.3d 413, 419 (2d Cir. 2007)); accord United States v. Krug, 868 F.3d 82, 86 (2d Cir.

2017). "The purpose of the privilege is to encourage clients to make full disclosure to their

attorneys." United States v. Ackert, 169 F.3d 136, 139 (2d Cir. 1999) (punctuation omitted).

Courts have emphasized that "[w]hile the privilege confers important social benefits, it also

exacts significant costs" because "[i]t runs counter to the ordinary judicial interest in the

disclosure of all relevant evidence." Application of Sarrio, S.A., 119 F.3d 143, 147 (2d Cir.

1997); accord In re Bairnco Corp. Secs. Litig., 148 F.R.D. 91, 96 (S.D.N.Y. 1993) (noting that

"the attorney-client privilege both advances and impedes the administration of justice").

Accordingly, courts apply the attorney-client privilege "only where necessary to achieve its

purpose and construe the privilege narrowly because it renders relevant information

undiscoverable." Mejia, 655 F.3d at 132 (punctuation omitted).

    B.  The Crime-Fraud Exception

The attorney-client privilege seeks to "encourage full and frank communication between

attorneys and their clients and thereby promote broader public interests in the observance of law

and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).

However, "[t]he privilege takes flight if the relation is abused.  A client who consults an attorney

for advice that will serve him in the commission of a fraud will have no help from the law."

Clark v. United States, 289 U.S. 1, 15 (1933).  See In re Grand Jury Subpoena Duces Tecum

Dated Sept. 15, 1983, 731 F.2d 1032, 1038 (2d Cir. 1984) ("It is well-established that

communications that otherwise would be protected by the attorney-client privilege or the

attorney work product privilege are not protected if they relate to client communications in

furtherance of contemplated or ongoing criminal or fraudulent conduct.").

A party seeking "to invoke the crime-fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud or crime." United States v. Jacobs, 117 F.3d 82, 87 (2d Cir. 1997). The "factual basis must strike 'a prudent person' as constituting 'a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof.'" Id. (quoting In re John Doe, Inc., 13 F.3d 633, 637 (2d Cir. 1994)). There need not be a "definitive[]" showing of the fraudulent nature of the client's objective; rather, "there need only be presented a reasonable basis for believing that objective was fraudulent." In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d at 1039.

It is sufficient to come within the exception that the client intended to use the attorney's services in furtherance of a crime or fraud even if the attorney was unaware of this purpose. See Clark, 289 U.S. at 15 ("The attorney may be innocent, and still the guilty client must let the truth come out."); Shahinian v. Tankian, 242 F.R.D. 255, 258 (S.D.N.Y. 2007) ("It is not necessary to show that the attorney was aware of the improper purpose."). Moreover, the crime or fraud for which the client used the attorney's services need not be the subject of the underlying lawsuit. See Amusement. Indus., Inc. v. Stern, 293 F.R.D. 420, 426 (S.D.N.Y. 2013); Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC, 242 F.R.D. 248, 250-51 (S.D.N.Y. 2007). On the other hand, "the crime-fraud exception does not apply simply because privileged communications would provide an adversary with evidence of a crime or fraud. . . . Instead, . . . the client communication or attorney work product in question [must] itself [be] in furtherance of the crime or fraud." In re Richard Roe, Inc., 68 F.3d 38, 40 (2d Cir. 1995) (emphasis in original).

If the court finds that the crime-fraud exception is applicable, it "does not extend to all communications made in the course of the attorney-client relationship, but rather is limited to those communications and documents in furtherance of the contemplated or ongoing criminal or fraudulent conduct." In re Grand Jury Subpoena, 419 F.3d 329, 343 (5th Cir. 2005). While there must be a "purposeful nexus" between the crime or fraud and the attorney-client communication, In re Grand Jury Subpoenas Duces Tecum, 798 F.2d 32, 34 (2d Cir. 1986), it is sufficient that the attorney-client communication "reasonably relate" to the crime or fraud, In re Grand Jury Subpoena, 419 F.3d at 346 (punctuation omitted).

C. Waiver of the Privilege

"Courts have found waiver by implication when a client testifies concerning portions of the attorney-client communication, when a client places the attorney-client relationship directly at issue, and when a client asserts reliance on an attorney's advice as an element of a claim or defense." In re Cnty. of Erie, 546 F.3d 222, 228 (2d Cir. 2008) (punctuation omitted). With regard to the first form of waiver, "when the client waives the privilege by testifying about what transpired between her and her attorney, she cannot thereafter insist that the mouth of the attorney be shut. From that has grown the rule that testimony as to part of a privileged communication, in fairness, requires production of the remainder." In re von Bulow, 828 F.2d 94, 102 (2d Cir. 1987) (citation omitted).

The selective disclosure waiver doctrine is reflected in Rule 502(a) of the Federal Rules of Evidence. See, e.g., Swift Spindrift, Ltd. v. Alvada Ins., Inc., 2013 WL 3815970, at *4-5 (S.D.N.Y. July 24, 2013). Rule 502(a) provides that

> When the disclosure is made in a federal proceeding . . . and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if (1) the waiver is

intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together.

The Advisory Committee Notes to Rule 502(a) explain that the Rule "is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary."

III.  <u>DISCUSSION</u>

Defendants make two arguments to support their motion to compel further answers from the above individuals: (1) that "[t]hrough a combination of producing privileged documents and testifying regarding countless privileged conversations, Ms. Holt has undoubtedly waived the attorney-client privilege as to all communications with Prior Counsel," Def. Mem. at 12; and (2) Holt has "effectively admitted to enlisting her counsel in a criminal scheme to mislead the SEC, and as such, the crime-fraud exception to the privilege would apply," <u>id.</u>, because Holt has admitted to violating 18 U.S.C. § 1001 by making "false, material statements to SEC investigators," <u>id.</u> at 14.

A.  <u>Fed. R. Civ. P. 26(b)(1)</u>

Before addressing either argument, we first consider whether the testimony sought by defendants is properly the subject of a motion to compel at all.  Fed. R. Civ. P. 26(b)(1) allows a party to obtain discovery "relevant to any party's claim or defense and proportional to the needs of the case."  Defendants argue that they must be allowed to redepose Holt's counsel because they are "entitled to fully question Ms. Holt's Prior Counsel to parse through Ms. Holt's various inconsistent versions of events."  Def. Mem. at 3.  In other words, defendants want to depose Holt's counsel, all non-party witnesses, in the hope that the attorneys may contradict Holt's version of the events, thus enabling them to gather impeachment material on Holt (who is also a

non-party witness).  While the SEC contends that "[t]he discovery sought is not relevant" and thus beyond the scope of Fed. R. Civ. P. 26, SEC Opp. at 1, the Court accepts that impeachment evidence relating to a witness is "relevant" in the broadest sense of the word.  Davidson Pipe Co. v. Laventhol & Horwath, 120 F.R.D. 455, 461 (S.D.N.Y. 1988).  But this does not dispose of the question of discoverability because the Court must still consider whether the discovery is proportional to the needs of the case.  See Fed. R. Civ. P. 26(b)(1).  This inquiry requires us to consider, inter alia, "the importance of the issues at stake in the action, . . . the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Id.

After a careful consideration of these matters, the Court concludes that any questions to Holt's counsel cannot reasonably be expected to yield evidence that is of significant importance to this case unless, at a minimum, the information sought is directly related to the allegations in the SEC's amended complaint.  Additionally, the depositions represent a burden to each deponent (and the SEC) that would not be proportional to the needs of this case to the extent the deposition testimony related to anything other than the allegations of the amended complaint. Thus, should the Court allow any further depositions of Holt's counsel, those depositions must be limited solely to probing Holt's counsel as to non-protected communications with Holt that directly relate to the allegations in the amended complaint.

The Court reaches this conclusion for several reasons.  We begin by noting that while impeachment discovery may be relevant, "there must be some limit to the general purposes of establishing credibility and gathering information for impeachment."  Ellis v. Hobbs Police Dep't, 2019 WL 5697787, at *6 (D.N.M. Nov. 4, 2019).  If not, a party's effort to seek impeachment material would "justify nearly unlimited discovery with respect to every witness or

party in every case," id., thereby vitiating the proportionality requirement.  Accord Taylor v. AFS Techs., Inc., 2010 WL 11515549, at *2 (D. Ariz. June 1, 2010) (quashing subpoena to non-party as disproportionate where it appeared that plaintiff's "sole objective in obtaining information from Defendants' prior employers was his hope that such information will reveal false statements by Defendants that he can use to impeach their credibility in this litigation"). Such proportionality concerns are particularly acute where, as here, a party seeks deposition testimony from a non-party witness who lacks any firsthand knowledge of the events at issue in the case.  See, e.g., Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49 (S.D.N.Y. 1996) ("the status of a witness as a non-party to the underlying litigation entitles the witness to consideration regarding expense and inconvenience") (punctuation omitted).

Here, there are a number of other factors that strongly counsel against requiring any of the attorneys to submit to further deposition questioning: (1) the deposition testimony is sought largely to impeach a witness's credibility; (2) the testimony is sought not from the witness herself but from a person who spoke with the witness; (3) the defendants waited until discovery was concluded before attempting to schedule any of these depositions at all (see, e.g., Docket # 745), resulting in the current situation where the motion to compel was made long after discovery concluded; and (4) defendants are seeking such testimony after having taken numerous improper actions to delay this case, including engaging in highly dilatory tactics in the discovery process, filing numerous frivolous applications, and having required the court to address numerous frivolous arguments.  All of these considerations lead to the conclusion that the Court could bar any further discovery from these attorneys in its entirety.  In other words, we could permissibly conclude that even if Holt's testimony did waive the privilege with regard to certain communications or the crime-fraud exception applied, that would not justify further questioning

of Holt's attorneys on such matters because such questioning is not proportionate to the needs of the case.  Fed. R. Civ. P. 26(b)(1).

Nonetheless, we will consider further whether to exercise our discretion to allow the defendants to pursue additional testimony from these attorneys that relates directly to the allegations of the complaint assuming the testimony is not protected by attorney-client privilege.

Holt is referred to as "G.H." in the complaint.  While there are a number of allegations that relate to Holt, the only allegations that overlap with the scope of any crime-fraud exception or any waiver alleged by defendants relate to the fabrication of an employment agreement, loan agreement, and bank statement that, according to the amended complaint, Kontilai fraudulently produced to the SEC.  See Amended Complaint, filed Nov. 4, 2019 (Docket # 134), ¶¶ 102-09, 143-45.  Holt did not testify that she used her attorneys with respect to any of the other schemes alleged in the complaint and there is no evidence, let alone evidence rising to the level of probable cause, presented by defendants that she did so.

As described next, we find that the crime-fraud exception operates to remove protection from Holt's early communications to Leone and Ceresney regarding the employment agreement, as described in paragraphs 102-06 and 143-45 of the amended complaint.  We then address defendants' waiver arguments with regard to Holt's communications to her attorneys regarding the loan agreement and bank statement as described in paragraphs 107-09 and 143-45 of the amended complaint, and with regard to Holt's communications with Youn concerning those documents and the employment agreement.

B.  Crime-Fraud

Defendants argue that there is probable cause to believe Holt committed the crime of instructing her attorneys to make false statements to the SEC and that this "vitiates any claims of

attorney-client privilege."  Def. Mem. at 12.  To the extent defendants mean to argue that all claims of privilege are vitiated where a witness or party is shown to have used an attorney to commit a crime or fraud, we reject this argument.  "[T]he proper reach of the crime-fraud exception when applicable does not extend to all communications made in the course of the attorney-client relationship, but rather is limited to those communications and documents in furtherance of the contemplated or ongoing criminal or fraudulent conduct."  In re Grand Jury Subpoena, 419 F.3d 329, 343 (5th Cir. 2005); accord Amusement Indus., Inc., 293 F.R.D. at 427.  There is no evidence that all communications Holt had with her counsel were made in furtherance of committing a crime or fraud.

As is typical of defendants' briefing, defendants fail to include in the portion of their brief addressing crime-fraud any specific description, with citation, of which actions by the attorneys constituted the crime-fraud allegedly committed by Holt.  Given the failure to specify in the relevant section of their brief the crime or fraud they are relying on, the Court could, for this reason alone, deny the motion to compel.

But there are some scattered sentences (though devoid of the citation required by ¶ 2.D of our Individual Practices) that address this issue.  See Def. Mem. at 13 (Holt "discussed the subject matter of her false statements with Prior Counsel and used those statements to mislead the SEC"); id. at 14 (Holt made "false, material statements to SEC investigators in violation of 18 U.S.C. § 1001").  In light of our need to find the overlap between any false statements to the SEC engineered by Holt and the allegations of the amended complaint, we view the defendants' motion to argue that the crime-fraud exception applies to Holt's communications with her attorneys in which she sought to have her attorneys mislead the SEC by telling them that Kontilai's employment agreement had been recreated by her and was authentic, when in fact the

document had not been created by her and was a fake.  See Holt Depo. at 30, 33; see also

Kontilai Decl. ¶ 7 ("Holt had admitted, through her attorneys, to recreating an employment

document and that I was uninvolved in her fabrication.  This was relayed to Ms. Jacqueline

Moessner, of the SEC, in a phone conference on October 2, 2018.").

The crime that defendants allege Holt committed is violating the false statements statute,

18 U.S.C. § 1001.  That section provides that

> Except as otherwise provided in this section, whoever, in any matter within the
> jurisdiction of the executive, legislative, or judicial branch of the Government of the
> United States, knowingly and willfully —
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
> (3) makes or uses any false writing or document knowing the same to contain any
> materially false, fictitious, or fraudulent statement or entry;
> shall be fined under this title, imprisoned not more than 5 years or, if the offense involves
> international or domestic terrorism (as defined in section 2331), imprisoned not more
> than 8 years, or both.

18 U.S.C. § 1001.  "Under § 1001, a statement is material if it has a natural tendency to

influence, or be capable of influencing, the decision of the decisionmaking body to which it was

addressed, or if it is capable of distracting government investigators' attention away from a

critical matter."  United States v. Adekanbi, 675 F.3d 178, 182 (2d Cir. 2012) (punctuation

omitted).

Regarding the employment agreement, Holt testified at her deposition that she told Leone

> to go and meet with [the SEC] with . . . Andrew Ceresney, and to tell [the SEC] that I
> never knew that Mykalai was going to give documents that I made to the SEC.  And it
> was . . . Andrew [Ceresney]'s fault because he never looked at them beforehand.  And to
> go and explain this to them, that it wasn't my fault.  That — that they had got this.  Or
> that it had gone to the SEC.

Holt Depo. at 31.  She further testified that, as a result of her own false statements, Leone told

the SEC that "basically that I had created these documents, and . . . Andrew Ceresney hadn't

looked at them before sending them to the SEC."  Id. at 30-31.  Holt admits these statements

were false.  Id. at 31.  Holt also testified that she told Ceresney that she "created the employment

agreement," and that she did so "knowing that [Ceresney and Leone] would communicate that

information to the [SEC]."  Id. at 33.

Defendants allege that Holt violated 18 U.S.C. § 1001 because Holt made false, material

statements to the SEC, and because "it is also a violation of Section 1001 to willingly falsify,

conceal, or cover up information relevant to the investigation."  Def. Mem. at 14.

Holt argues that no probable cause exists that she violated 18 U.S.C. § 1001 because the

record demonstrates that "Kontilai manipulated Holt into lying to her Prior Counsel about the

origins of the Employment Agreement after it had been produced to the SEC and questions about

its authenticity began to surface."  Holt Opp. at 12.  She also argues that Leone's deposition

demonstrates that no false statements to the SEC were actually made, because "Leone expressed

general concerns about the veracity of the Employment Agreement — which were true — and

explained to the SEC what Holt *might* say about her role in the creation of that document should

Holt speak to the SEC enforcement lawyers about it."  Id. at 13.  Holt also argues that even if she

had told the SEC she fabricated the documents, "Kontilai would be estopped from asserting the

crime-fraud exception because Kontilai maintains that such statement pronouncing his

'innocence' is in fact, *true*," and true statements do not violate 18 U.S.C. § 1001.  Id. at 13 n.4.

While these arguments have some weight, the Court finds them unpersuasive.  Kontilai's

alleged manipulation of Holt, even if it occurred exactly as Holt describes it, would not vitiate

probable cause to believe that she in fact made false statements to her counsel that she intended

to be communicated to the SEC.  By Holt's own admission, she, not Kontilai, made such

statements to her counsel.  See Holt Depo. at 30.  Moreover, the fact that Leone may not have

actually transmitted false statements to the SEC does not prevent the crime-fraud exception from

applying to Holt's conversations with her counsel about recreating the documents.  As explained

by the Second Circuit, the crime-fraud exception applies even to an "attempted perpetration of a

crime or fraud."  In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d 1032,

1039 (2d Cir. 1984).  Thus, "[t]he client need not have succeeded in his criminal or fraudulent

scheme for the exception to apply.  If a fraudulent plan were ineffective, the client's

communications would not thereby be protected from disclosure."  Id.  As a result, the fact that

Holt's attempt to mislead the SEC did not come to fruition does not affect the applicability of the

exception.

      As for Holt's estoppel argument, Holt Opp. at 13 n.4., she provides no citation to support

it but presumably means to invoke the doctrine of judicial estoppel.  The Second Circuit has held

that

> [j]udicial estoppel is properly invoked where: (1) a party's later position is clearly
> inconsistent with its earlier position, and (2) the party's former position has been adopted
> in some way by the court in an earlier proceeding. . . .  We have also often, but not
> always, required a showing that the party asserting the two inconsistent positions would
> derive an unfair advantage against the party seeking estoppel. . . .  Finally, because the
> doctrine is primarily concerned with protecting the judicial process, relief is granted only
> when the risk of inconsistent results with its impact on judicial integrity is certain.

Ashmore v. CGI Group, Inc., 923 F.3d 260, 272 (2d Cir. 2019) (punctuation omitted).  While

Kontilai's contention as part of the briefing on this motion that Holt was transmitting false

information to the SEC may be inconsistent with other statements he has had made, Holt points

to no instance where a court has "adopted" those statements.  See also Intellivision v. Microsoft

Corp., 484 F. App'x 616, 619 (2d Cir. 2012) (to invoke judicial estoppel, it must be shown that

that the party seeking to assert a position "previously persuaded a court to accept its earlier

position").  As a result, the Court cannot apply judicial estoppel to prevent Kontilai from arguing

that Holt attempted to commit a crime.

Based on Holt's admissions at her deposition, the Court finds that Holt attempted to use communications with counsel in furtherance of a plan to give false statements to the SEC in violation of 18 U.S.C. § 1001.  Specifically, she instructed Leone to convey statements she knew were false to the SEC, and made false statements to Ceresney that she knew would be conveyed to the SEC.  These false statements were that the employment agreement sent to them was not false but rather was "recreated" by Holt, and that Ceresney had inadvertently produced the recreated version to the SEC.  Holt Depo. at 31; 33.[3]  Such statements are material under the standard laid out in Adekanbi in that they have "a natural tendency to influence, or be capable of influencing, the decision of the decisionmaking body" to which they were addressed or were "capable of distracting government investigators' attention away from a critical matter."  675 F.3d at 182 (punctuation omitted).

Accordingly, the crime-fraud exception applies to Holt's conversations with Ceresney and Leone that were in furtherance of her efforts to cause the attorneys to give false statements to the SEC as described in paragraphs 102-106 and 143-45 of the Amended Complaint.  Because defendants have not pointed to evidence of any efforts by Holt to enlist Youn in a crime or fraud within the scope of the complaint, we consider only the scope of testimony that may be required from Leone and Ceresney.

As to Leone, he has already testified as to some communications with Holt in which they discussed the employment agreement and Holt's "recreation" of it.  See Leone Depo. at 109. In light of the applicability of the crime-fraud exception, Leone's recollection of other communications with Holt (if any) in which he discussed the employment agreement, Holt's

---

[3]  As noted previously, we limit ourselves to false statements that directly relate to the allegations of the complaint.

"recreation" of that document, or any plan to transmit information about the employment agreement to the SEC is no longer privileged.

As to Ceresney, Holt also claims to have involved Ceresney in her plan to mislead the SEC in a manner that overlaps with the allegations of the amended complaint.  See Holt Depo. at 33.  While the crime-fraud exception would allow for questioning of Ceresney about additional communications with Holt on this topic, we decline to require Ceresney to appear for any further deposition testimony in light of the fact that (1) for the reasons stated in section III.A, the Court could exercise its discretion to bar any further testimony from the attorneys in light of the lack of proportionality of the additional testimony and (2) the defendants have already questioned Ceresney for nearly seven hours[4] and used part of this time to abuse the deposition process. Ceresney's deposition reflects that defendants frequently engaged in improper questioning and used an inordinate amount of time to probe into matters unrelated to the allegations in the complaint.  See, e.g., Ceresney Depo. at 25-31 (Ceresney's relationship with former U.S. Attorney Mary Joe White), 32-36 (how Ceresney became head of the SEC's enforcement division), 37-42 (White's position at Debevoise & Plimpton), 45-51 (whether Ceresney had ever been subject to any complaints of misconduct), 105 (whether Ceresney executed a conflict waiver prior to representing CCI), 117-18 (why Ceresney left the SEC), 218 (Ceresney's alleged "negligence and malpractice"), 259-60 (whether certain acts were "moral" or constituted "justice").  Accordingly, no further testimony from Ceresney will be permitted.

---

[4]  Ceresney states that he was deposed for seven hours, see Ceresney Opp. at 2, and defendants in their reply brief do not dispute this contention.  The deposition transcript reflects that the questioning of Ceresney occurred from 11:18 a.m. to 5:53 p.m.  See Ceresney Depo. at 6, 279.

C.  Waiver

We next address the scope of Holt's waiver of the privilege with regard to communications with her attorneys concerning the loan agreement or bank statement referenced in the Amended Complaint at paragraphs 107-09 and 143-45, and communications with Youn concerning the employment agreement.  We treat these communications separately from the communications with Leone and Ceresney concerning the employment agreement because defendants have made no showing that Holt used or attempted to use communications with her counsel concerning the loan agreement or bank statement in furtherance of the fraud on the SEC.  Nor has there been any showing that Holt's communications with Youn concerning the employment agreement were made in furtherance of a fraud.  Holt admitted only to directing Leone to make statements to the SEC about the authenticity of the employment agreement, not the loan agreement or bank statement.  See Holt Depo. at 32; see also Kontilai Decl. ¶ 7. Similarly, she admitted only to telling Ceresney about creating the employment agreement while "knowing that [Ceresney] would communicate that information to the [SEC]."  Holt Depo. at 33.

With regard to the loan agreement or bank statement, Holt testified that she told Ceresney that she would be sending the bank statement to Debevoise, id. at 189, that she had "found" the employment agreement, loan agreement, and bank statement, id. at 190, and that they were authentic, id. at 192.  She also stated that she told Leone she "didn't know where" the bank statement came from, id. at 178, but that it and the loan agreement were authentic, id. at 188, although she later refused to testify as to any conversations with Leone about those documents, instead invoking privilege, id. at 193-194.  Holt also produced two emails at defendants' request, one of which mentions the loan agreement and bank statement.  Holt Decl., Exh. B, at 4.  As for communications with Youn about any of these documents, Holt testified about a meeting with

Youn and defendants' counsel in 2018 where Holt made statements about all of these documents. See Holt Depo. at 173-84.

Holt does not directly deny that some waiver occurred as a result of her testimony.  See Holt Opp. at 10-11.  The disagreement on waiver centers on scope.  Defendants assert that Holt has waived the privilege with respect to not only the communications discussed at her deposition and the documents she has produced, but "as to all communications with Prior Counsel."  Def. Mem. at 12.  Defendants admit that such a finding would amount to determining that Holt had "made a blanket waiver of her attorney-client privilege."  Def. Reply at 6.  They argue that such a finding is appropriate because Holt has "selectively disclos[ed] her communications with her Prior Counsel in an effort to cooperate with the SEC and save herself from civil enforcement proceedings or criminal prosecution by telling the government what it wanted to hear."  Def. Mem. at 8.  Because Holt has "used these communications as a sword, she cannot now use the privilege that otherwise would have attached to those communications as a shield."  Id. at 8-9. This phrasing evokes the principle that "fairness considerations arise when [a] party attempts to use the privilege both as a shield and a sword."  In Re Grand Jury Proc., 219 F.3d 175, 182 (2d Cir. 2000) (cited by Def. Mem. at 8) (punctuation omitted).  In such a situation the scope of the waiver should be "tailored to remedy the prejudice to the" opposing party.  Id.  at 188.

In assessing this issue we begin by noting that any production of emails by Holt did not effectuate a waiver.  First, defendants failed to put those emails into the record as part of their initial moving papers and failed to give any explanation as to how they were produced.  See Def. Mem. at 9-10.  Second, Holt testified that Kontilai in fact either wrote or dictated those emails. Holt Depo. at 129; Holt Decl. ¶ 6.[5]  While Kontilai denies that he wrote or dictated the emails,

_____

[5]  There appears to be a third email that was produced by CCI.  See SEC Opp. at 6. However, CCI's production of a document could not effectuate a waiver as to Holt.

see Kontilai Decl. ¶ 6, the factual dispute need not be resolved for purposes of deciding the

waiver issue.  This is because Holt could waive privilege only through an "intentional" act, Fed.

R. Evid. 502(a)(1) — that is, an effort to waive her own privilege.  But Holt cannot have

"intended" to waive her privilege if she has maintained her contention that the emails were

written not by her but by someone else.

What remains then is the scope of waiver effectuated by her deposition testimony as to

certain communications with her attorneys.  Defendants argue that there has been a waiver as to

"all communications with Prior Counsel."  Id. at 12.  They cite to no cases to support this

extraordinary argument, however, and it finds no basis in the law of privilege waiver.

The only real question is whether Holt waived her privilege as to the particular

conversations she testified to or as to all conversations on the same subject matter — commonly

called a "subject matter" waiver.  As the Advisory Committee Notes to Rule 502 state:

> [A] subject matter waiver (of either privilege or work product) is reserved for
> those unusual situations in which fairness requires a further disclosure of related,
> protected information, in order to prevent a selective and misleading presentation
> of evidence to the disadvantage of the adversary. . . .  [S]ubject matter waiver is
> limited to situations in which a party intentionally puts protected information into
> the litigation in a selective, misleading and unfair manner.

Fed. R. Evid. 502, Advisory Committee Notes; accord In re Genger, 2021 WL 471434, at *16

(Bankr. S.D.N.Y. Feb. 9, 2021).  As the Second Circuit has stated with respect to considerations

of unfairness, "[t]his notion implicates only the type of unfairness to the adversary that results in

litigation circumstances when a party uses an assertion of fact to influence the decisionmaker

while denying its adversary access to privileged material potentially capable of rebutting the

assertion."  In re Cty. of Erie, 546 F.3d 222, 229 (2d Cir. 2008) (punctuation omitted); accord

John Doe Co. v. United States, 350 F.3d 299, 302 (2d Cir. 2003) ("It is well established doctrine

that in certain circumstances a party's assertion of factual claims can, out of considerations of

fairness to the party's adversary, result in the involuntary forfeiture of privileges for matters pertinent to the claims asserted.").  But Holt is not even a "party" to this litigation — and thus will never be able to use an assertion of fact against defendants in the manner contemplated by the waiver doctrine.

Examined from a different perspective, a finding of the broad "subject matter waiver" suggested by defendants' usually requires either a showing that "the privilege-holder has attempted to use the privilege as both a sword and a shield or where the attacking party has been prejudiced at trial."  In re von Bulow, 828 F.2d 94, 103 (2d Cir. 1987) (punctuation omitted).  Here, Holt has not herself tried to use the privilege as a sword inasmuch as she seeks no relief in this litigation as she is not even a party.  Furthermore, defendants have not shown that they will suffer any prejudice if their request for such a broad waiver is denied.  Prejudice is mentioned once in defendants' briefing: "Mr. Kontilai would be severely prejudiced if he is not permitted to depose Prior Counsel regarding Ms. Holt's pattern and practice of deception in this litigation."  Def. Mem. at 12.  This suggests that defendants view the prejudice as not being able to obtain information regarding other instances in which Holt lied to her attorneys.  But as already noted, there is no warrant in case law to find a waiver as to all conversations with Holt's attorneys.

Defendants also claim that Holt has waived the privilege because she has placed "her conversations with Prior Counsel at issue" in this case.  Id. at 10 (citing Koster v. Chase Manhattan Bank, 1984 WL 883, at *4 (S.D.N.Y. Sept. 18, 1984)).  However, simply describing privileged conversations with counsel does not equate to placing those conversations "at issue."  Courts typically find that privileged conversations are placed "at issue" when a party asserts reliance upon them or seeks to use them to buttress a claim or defense.  See, e.g., Joy v. North, 692 F.2d 880, 894 (2d Cir. 1982) ("the submission of materials to a court in order to obtain a

summary judgment utterly precludes the assertion of the attorney-client privilege").  But this is not what has occurred here.  Indeed, the case cited by defendants, <u>Koster</u>, found that "plaintiff's disclosure to defendants of her notes to her attorney" did <u>not</u> "put in issue in any way the substance of her communications with her attorney," and found that no broad waiver was warranted.  <u>Koster</u>, 1984 WL 883, at *5.  Thus, the Court finds that Holt has not placed her communications with counsel "at issue" and no waiver of privilege that extends beyond the contents of the conversations themselves is warranted.

Accordingly, defendants may question Leone only as to the contents of the communications in which Holt told Leone she did not know where the bank statement came from and that the loan agreement and bank statement were authentic, as Holt waived the privilege with regard to those communications and those topics directly relate to the allegations in the SEC's Amended Complaint.  <u>See</u> Holt Depo. at 178, 188.

While Holt also waived the privilege with regard to the conversations with Ceresney, for the reasons noted in section III.B above, we find that no additional deposition from Ceresney should be taken concerning those conversations.

As for Youn, the record as presented by defendants shows that the only communications of Holt that relate to the amended complaint's allegations are those made at the December 2018 meeting among counsel for defendants.  Holt Depo. at 147-48.  But, unlike the other instances where defendants seek testimony from Holt's attorneys, this conversation did not involve only Holt and Youn.  As defendants acknowledge, "[p]resent at the interview were several attorneys for CCI, Kontilai, and Veronica."  Def. Mem. at 3.  Also, notes were taken of the meeting by defendants' own attorney.  Holt. Depo. at 146; Kontilai Decl., Exh. 2.  Requiring Youn to testify about this meeting would not be proportional to the needs of this case under Fed. R. Civ. P.

26(b)(1) for the reasons previously described and in light of the burden on Youn, the fact that defendants' own attorneys were present at the meeting, and the fact that defendants are already in the possession of notes of the meeting that their own attorney took.  See Holt Depo. at 149-58, 165-84 (reviewing notes of the meeting with Holt).  The accuracy of the defendants' attorney's notes is not even in doubt inasmuch as Holt was presented with meeting notes of her statements at that meeting and confirmed that she had made those statements (even if she testified that many of the statements made during that meeting by her were inaccurate or false).  Id. at 149-58, 165-84.  Accordingly, the request for a further deposition of Youn is denied.

*       *       *

In sum, the Court will allow only a further deposition of Leone but only as to (1) communications with Holt that relate to her recreation of Kontilai's employment agreement; and (2) the communications testified to by Holt in which she told Leone that she did not know where the bank statement came from and in which she said the loan agreement and bank statement were authentic.  These topic areas are extremely narrow and thus the deposition shall be completed within 60 minutes.  The deposition shall be conducted by telephone, if Leone prefers, or by video if he has no preference.  It shall take place within 14 days of the date of this Opinion and Order unless Leone's schedule requires otherwise.

IV.  <u>CONCLUSION</u>

For the foregoing reasons, defendants' motion to compel answers from Holt's attorneys

(Docket # 820) is granted in part and denied in part.

SO ORDERED.

Dated: April 16, 2021
          New York, NY


_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge