```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                              :
UNITED STATES SECURITIES AND                  :
EXCHANGE COMMISSION,                          :
                                              :
              Plaintiff,                      :   ORDER
                                              :
       -v.-                                   :   19 Civ. 4355 (VM) (GWG)
                                              :
COLLECTOR'S COFFEE INC., et al.,              :
                                              :
              Defendants.                     :
---------------------------------------------------------------x
```

GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE

Before the Court is the application by defendant Mykalai Kontilai and relief defendant Veronica Kontilai to compel non-party witness David Chapman to sit for a further deposition and for sanctions against Chapman. See Letter from Peter Joseph, filed March 12, 2021 (Docket # 826); Letter from Peter Joseph, filed April 12, 2021 (Docket # 876). The Court held a telephone conference on this application on April 16, 2021 and ordered further briefing by the parties and Chapman. The parties filed letters as directed.[1]

The deposition of Chapman was part of the group of five depositions that the Court had reluctantly permitted after the defendants had inexcusably delayed noticing depositions in proper form before the November 16, 2020, discovery cutoff. See Order, filed January 13, 2021 (Docket # 745). The Court permitted these depositions to proceed only on the condition that the depositions subpoenas be "served swiftly" and be completed by February 3, 2021. Id. at 2. Veronica did not serve her subpoenas swiftly, having failed to properly serve Chapman until just days before the February 3 discovery deadline. See Def. Reply at 1. In the end, the parties were unable to schedule Chapman's deposition to occur by February 3. Nonetheless, the Court permitted the deposition to take place by February 23. See Memorandum Endorsement, filed January 28, 2021 (Docket # 775). Chapman appeared for his deposition on February 22, 2021, without counsel. The deposition ended early after Chapman, in response to certain questions by Veronica's counsel, expressed a desire to have counsel present. See Videotaped Zoom Deposition of David Chapman, dated February 22, 2021 (Docket # 894-3) ("Chapman Depo."). The deposition began at 11:09 a.m. and ended at 12:43 p.m. Id. at 3, 68. Defendants waited 18 days, that is, until March 12, 2021, before seeking to compel a continuation of the deposition. See Letter from Peter Joseph (Docket # 826).

---

[1] See Letter from Mark Williams, filed April 23, 2021 (Docket # 894) ("SEC Letter"); Letter from Peter Joseph, filed April 23, 2021 (Docket # 897) ("Def. Letter"); Letter from Jay Surgent, filed April 30, 2021 (Docket # 901) ("Chapman Letter"); Letter from Mark Williams, filed April 30, 2021 (Docket # 902) ("SEC Response"); Letter from Peter Joseph, filed May 4, 2021 (Docket # 906) ("Def. Reply").

1

In response to that initial letter seeking to compel the continuation of the deposition, the Court ruled:

> Having pushed all depositions to the brink of the discovery deadline, it is inexplicable that defendants waited nearly 3 weeks to bring this issue to the Court's attention. Be that as it may, the Court will consider permitting the deposition to continue provided the defendants proceed with alacrity to reschedule it (presumably with Mr. Chapman having hired an attorney) for a date to occur within the next 14 days. The parties are directed to confer with Mr. Chapman on the rescheduling. If agreement cannot be reached, the parties shall inform the Court and the Court will schedule a conference.

Memorandum Endorsement, filed March 15, 2021 (Docket # 829). In their April 12 letter, defendants represented that they attempted to schedule the deposition during that time frame, but that Chapman failed to respond in a timely manner. See Docket # 876 at 1-2. At a conference held on April 16, 2021, counsel for Chapman appeared for the first time. In light of the defendants' history of abusing the discovery process, and the lack of clarity as to the relevance of Chapman's testimony, the Court directed the defendants to file a letter identifying the topics they sought for the further deposition. The Court also ordered a schedule for the briefing of Chapman's objections to the continued deposition.

> In response, defendants identified five topics on which they wished to question Chapman:
>
> 1. Questions concerning compensation received by Chapman from CCI [Collector's Coffee Inc.]. . . .
>
> 2. Questions concerning Chapman's communications with investors and potential investors in CCI. . . .
>
> 3. Questions concerning alleged misrepresentations and omissions which led to litigation and damages to CCI and Kontilai. . . .
>
> 4. Questions concerning whether Chapman has any deals or understandings with the SEC concerning Chapman providing testimony at trial. . . .
>
> 5. Questions concerning Chapman's sworn investigative testimony taken in 2018 by the SEC.

Def. Letter at 2-3.

The SEC and Chapman oppose defendants' application principally on the ground of defendants' delays and lack of relevance of the proposed testimony.[2]

As to delay, the SEC argues that defendants improperly delayed noticing Chapman's deposition, improperly delayed in bringing the issue to the Court's attention, and have now further delayed the deposition by not informing Chapman's counsel that Chapman may be "entitled to counsel under CCI's insurance policy." SEC Letter at 5. Defendants argue that Chapman was responsible for much of the delay involved, see Def. Letter at 4, Def. Reply at 1, and that Chapman is not covered by CCI's insurance policy, but even if he was, he knew about it and "could have reached out independently to request coverage for his deposition," Def. Reply at 2.

The Court finds that defendants are certainly guilty of delay in noticing Chapman's deposition and in bringing the issue of continuing it to the Court. Additionally, they have contributed to the delay by taking inconsistent positions on whether Chapman is an officer of CCI and thus entitled to coverage to indemnify him for attorney's fees under CCI's insurance policy. The SEC has put into the record an email from Mykalai Kontilai, in which Mykalai asked to add Chapman to CCI's directors and officers' insurance policy, writing that "Dave Chapman has joined the company as our VP of Investor Relations out of NYC." See Email from Mykalai Kontilai, dated April 14, 2015 (Docket # 894-1). The SEC also points out that Mykalai in a verified complaint explicitly referred to Chapman as the "former VP of Investor Relations," a "corporate officer" of CCI. Verified Complaint, dated October 14, 2020 (Docket # 601-2), ¶ 59. Defendants do not deny the authenticity of that email or address Mykalai's prior assertions in court, but instead now assert that "Chapman was a consultant for [CCI]" and he "elected to use the title of Vice President of Investor Relations." Def. Letter at 1. Even though these assertions contradict Mykalai's own prior statements, defendants never address that contradiction. Instead, without a trace of irony, they assert that "[t]here are conflicting references to in what capacity Mr. Chapman acted with regard to CCI" without recognizing that Mykalai himself is the source of those "conflicting references." Def. Reply at 2.

These contradictions engineered by defendants with regard to Chapman's status likely delayed Chapman's ability to secure counsel for his deposition. Such conduct is also consistent with defendants' repeated dilatory tactics. See, e.g., Memorandum Endorsement, filed March 15, 2021 (Docket # 829) (noting "defendants' numerous delays"); Opinion and Order, filed April 16, 2021 (Docket # 884) ("Holt Opinion"), at 10 ("defendants are seeking such testimony after having taken numerous improper actions to delay this case, including engaging in highly dilatory tactics in the discovery process, filing numerous frivolous applications, and having required the court to address numerous frivolous arguments"); Order, filed April 16, 2021 (Docket # 885), at 1 (noting Mykalai's "inexcusable delay in seeking relief from the Court").

Still, the Court declines to wholly bar defendants from taking Chapman's deposition inasmuch as defendants did make efforts to timely schedule the deposition and were stymied by

---

[2] Chapman also refers to the possibility that he might "invoke his Fifth Amendment privilege" with regard to some topics. Chapman Letter at 7. We do not address this issue because he seeks no ruling from the Court.

3

Chapman's unexpected request to have counsel present. Moreover, Chapman was apparently included on the email in which Mykalai asked for him to be added to the insurance policy, see Docket # 894-1, and was previously represented by counsel while giving testimony to the SEC in 2018, see SEC Letter at 2. Thus, Chapman was aware of his potential coverage under the policy, or should have been aware of it, and could have sought to contact the insurance company before his deposition.

On the issue of relevance, the Court rejects the SEC's and Chapman's arguments that Veronica may not seek testimony from Chapman on the merits of the claims against Mykalai. See SEC Response at 2, Chapman Letter at 3. As defendants point out, a predicate to any liability on Veronica's part is a finding that CCI and Mykalai are liable. Def. Reply at 2. Thus, any evidence that is relevant to claims against CCI and Mykalai seeking disgorgement is relevant to the claim for relief against Veronica.

We next turn to the five topics identified by defendants.

As to the first topic — Chapman's compensation by CCI — defendants argue that "Chapman's compensation is a legitimate business expense of CCI, which would be deductible from any disgorgement sought by the SEC." Def. Letter at 2. But defendants offer no reason why any compensation to Chapman would not be reflected in CCI's business records. As a result, we find that questioning Chapman further about his compensation from CCI is only marginally relevant. We are loath to allow further questioning in light of the fact that Veronica's counsel asked a number of questions bearing on Chapman's finances that were seemingly harassing, such as "[a]t what banks do you have accounts, Mr. Chapman?" Chapman Depo. at 48. Instead, the Court will permit only specific inquiries about any records of CCI reflecting payments to Chapman in order to verify such payments were made and that they related to CCI business. Thus, defendants shall not question Chapman about payments from anyone else or to anyone else. This testimony, in combination with other corporate records, will surely be enough to support the defendants' claimed interest in calculating CCI's net profits. Any other testimony on compensation is disproportionate to the needs of this case.

As to the second topic, communications with investors and potential investors on behalf of CCI are directly relevant to the SEC's fraud claims and will be permitted. While defendants claim that questions about "intentional misrepresentations to CCI investors" made "after the filing of this case" fall within this topic, the Court disagrees. Def. Letter at 2. Such communications have no relevance to the claims or defenses at issue, and the only relevance proffered by defendants for inquiring into such statements is potential impeachment material. Def. Reply at 4. For substantially the same reasons stated in its prior opinion barring deposition testimony from attorneys for Gail Holt, see Holt Opinion at 10-11, the Court finds that allowing inquiry into Chapman's statements after the case was filed would be disproportionate to the needs of the case. Thus, this topic must be limited to communications that took place prior to the SEC's filing of their Complaint.

As to the third topic, defendants have not explained how the testimony they seek relates to the claims or defenses in this case. Instead, it appears they seek to determine how prior litigation against CCI or Mykalai came into being. The Court sees no relevance to such

4

testimony. To the extent the testimony purports to relate to claims in the Amended Complaint ¶¶ 118-36, the SEC's claim against defendants relating to those paragraphs does not rely upon any communications between Chapman and the investors involved, but rather revolves around the question of whether CCI and Mykalai improperly tried to stop the investors from talking to the SEC through the filing and settlement of a lawsuit. Finally, to the extent defendants may simply be seeking to obtain impeachment material of Chapman, we find that deposing Chapman solely to obtain impeachment materials is not proportional to the needs of this case for essentially the reasons set forth in the Court's prior decision. See Holt Opinion at 10-11.

As to the fourth topic, Veronica may question Chapman about whether he has entered into any agreements with the SEC concerning providing testimony at deposition or at trial of this matter. None of the other items listed under this heading, however, may be inquired into. See Def. Letter at 3.

Defendants make no effort to explain the relevance of the fifth topic to the claims at issue or their defenses. Instead, they make only the conclusory assertion that it "is paramount to Kontilai's defense, in this case, to question Chapman on the veracity and truthfulness of his testimony and examine him on other subjects covered in the investigative testimony." Id. In other words, they are looking to see whether, if asked the same questions again as he was asked in his testimony before the SEC, he will give the same answers. For the same reasons as already given with respect to the second topic, the Court finds such questioning to be disproportionate to the needs of this case. See generally Taylor v. AFS Techs., Inc., 2010 WL 11515549, at *2 (D. Ariz. June 1, 2010) (quashing subpoena to non-party as disproportionate where it appeared that plaintiff's "sole objective in obtaining information from Defendants' prior employers was his hope that such information will reveal false statements by Defendants that he can use to impeach their credibility in this litigation").

Accordingly, defendants may depose Chapman as to the topics as specified above. The deponent may decline to answer any questions not within these topic areas by invoking Fed. R. Civ. P. 30(c)(2).[3]

Having already conducted more than 90 minutes of questioning, Veronica shall be allowed a maximum of 2 hours 15 minutes to complete the direct examination, which she may share with co-defendants. The SEC shall be allowed a maximum of 15 minutes of cross-examination. Chapman's counsel has leave to ask additional questions of his client after the parties to this case have used their time. The deposition shall take place within 14 days of the date of this Order.

Finally, in light of the defendants' history of delay, and because Chapman's position was "substantially justified," see Fed. R. Civ. P. 37(a)(5)(A)(ii), the Court denies defendants' request for sanctions against Chapman. See Docket # 876 at 1.

---

[3] Defendants' letter states that "Kontilai reserves his right to ask Chapman about other relevant topics that may come up . . . ." Def. Letter at 3. The Court did not permit any such "reservation" of rights when it required defendants to set forth the topics for the deposition. Thus, no questioning may occur outside the scope of the topics permitted by this Order.

5

SO ORDERED.

Dated: May 6, 2021
      New York, NY

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge