```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
UNITED STATES SECURITIES AND        :
EXCHANGE COMMISSION,                 :
                                     :
                Plaintiff,           :
                                     :    19 Civ. 04355 (VM)
          - against -                :
                                     :
COLLECTOR'S COFFEE INC., et al.      :    DECISION AND ORDER
                                     :
                Defendants.          :
-----------------------------------X
```

**VICTOR MARRERO, United States District Judge.**

In May 2019, the United States Securities and Exchange Commission (the "SEC") brought civil fraud charges against Mykalai Kontilai ("Kontilai") and Collector's Coffee Inc. ("CCI," and collectively with Kontilai, "Defendants"). The matter was referred to Magistrate Judge Gabriel Gorenstein to oversee general pretrial issues, including scheduling, discovery, non-dispositive pretrial motions, and settlement. (See Dkt. No. 51.)

On October 29, 2021, the SEC filed a motion to enforce the Court's May 15, 2019 order (see "Asset Freeze," Dkt. No. 12) in connection with Defendants' continued litigation and settlement activities in connection with two lawsuits. (See "Motion to Enforce," Dkt. No. 970.) On February 10, 2022, Magistrate Judge Gorenstein submitted a Report and Recommendation recommending that the Court grant the SEC's Motion to Enforce. (See "R&R," Dkt. No. 988 at 19-26.)

Magistrate Judge Gorenstein combined the R&R with an opinion and order addressing Kontilai's motion ("Clarification Motion," Dkt. No. 958) to clarify the terms of the Court's Asset Freeze.[1] (See "Clarification Order," Dkt. No. 988 at 13-19.) On February 24, 2021, the Court received Defendants' objections to Magistrate Judge Gorenstein's R&R. (See "Objections," Dkt. No. 991.) The SEC opposed the Objections on March 10, 2022. (See "Opposition" or "Opp'n," Dkt. No. 995.) Defendants replied to the Objections on March 17, 2022. (See "Reply," Dkt. No. 996.)

## I.   **BACKGROUND**

A. Factual and Procedural Background

As background, the Asset Freeze provides that the "assets, funds, or other property held by or under the direct or indirect control of Defendants Collectors Café of Mykalai Kontilai . . . wherever located, up to the amount of $46,121,649.68, are frozen." (Asset Freeze ¶ I.A.) Pursuant to the Asset Freeze, Defendants are required to "hold and retain within their control, and otherwise prevent any . . .

---

[1] The Court notes that Kontilai's Clarification Motion was properly before Magistrate Judge Gorenstein for final disposition because the clarification motion seeks a ruling regarding the parties' interim settlement as to the SEC's motion for a preliminary injunction, and the parties have consented to disposition of that motion and related motions before Magistrate Judge Gorenstein. (See Dkt. No. 59.) The Court does not address Defendants' objections that pertain solely to the Clarification Motion.

disposal whatsoever" of any funds or assets presently held by them up to $46,121,649.68. (Id. ¶ I.B.) Further, Defendants may not take any actions that may interfere with the asset freeze, including "the filing of any lawsuits . . . to impact the property and assets subject to this order." (Id. ¶ I.D.) However, "any party or non-party may seek leave from this order upon a proper showing." (Id.) The parties stipulated to these requirements in the Asset Freeze pending a hearing on a preliminary injunction. (See Dkt. No. 174). This hearing has yet to occur due to the parties' interim settlement.

Following the parties' stipulation, Kontilai filed a letter motion seeking clarification as to whether the Asset Freeze "cover[ed] untainted funds acquired by Kontilai after the asset freeze was entered," specifically future payment he expected from his deceased mother's estate in a wrongful death action that he intended to use for his criminal defense. (See Dkt. No. 612 at 3.) Judge Schofield, who was then assigned to the case, denied Kontilai's motion, concluding, among other things, that Kontilai had not shown that the funds he sought to acquire were untainted.  (See 658 at 4-5.)

Kontilai then filed his Clarification Motion on October 1, 2021, seeking clarification as to whether he could continue two lawsuits, one related to his mother's wrongful death action (the "Wrongful Death Action") and one related to legal

malpractice claims (the "Legal Malpractice Action").[2] The SEC filed a combined opposition to Kontilai's request and a Motion to Enforce, arguing, among other things, that the right to file a lawsuit is an asset and pursuant to the Asset Freeze, Kontilai should have requested leave of this Court to continue to litigate the two Actions. (See Motion to Enforce at 12.) In addition to an order of enforcement, the SEC requested ancillary relief for Kontilai's alleged violation of the Asset Freeze, including judicial monitoring of the Wrongful Death Action. (See id. at 13-15.) Defendants opposed the Motion to Enforce on the basis that the filing of a lawsuit is not an asset covered by the Asset Freeze and the SEC's requested ancillary relief is already provided for by the Asset Freeze Order. (See Opp'n at 3-5.)

B. The Report and Recommendation

Underlying the recommendation to enforce the Asset Freeze are the conclusions in Magistrate Judge Gorenstein's Clarification Order. The Clarification Order held that the right to file a lawsuit is a property interest, and the plain language of the Asset Freeze, which Defendants stipulated to, contemplated freezing Kontilai's two lawsuits since the claims arose before the issuance of the Asset Freeze and

---

[2] The R&R describes at length the details of these Actions. (See R&R at 4-10.)

Kontilai wielded at least indirect control or has an indirect
beneficial interest in the Actions. Accordingly, Magistrate
Judge Gorenstein, pursuant to his jurisdiction on the
parties' consent, (see Dkt. No. 59), granted Kontilai's
Clarification Motion, clarifying that the Asset Freeze "does
not permit the Defendants to pursue lawsuits based on claims
that arose before the issuance of the [Asset Freeze] without
obtaining relief from the 'freeze' imposed by the [Asset
Freze]." (Clarification Order at 13.)

Turning to the Motion for Enforcement, Magistrate Judge
Gorenstein, having found that the lawsuits qualified as
frozen assets, recommended that the Asset Freeze be enforced
against Defendants in connection with the Actions. Magistrate
Judge Gorenstein recommended that despite this enforcement,
the SEC should not be granted its requested relief. (See R&R
at 26.) Instead, Magistrate Judge Gorenstein directed the
parties to "attempt to agree on the specific terms of an order
to effectuate the ruling" if this Court adopts the
recommendation to enforce the Asset Freeze. (See R&R at 26.)

Defendants raise two objections to the combined
Clarification Order and R&R.[3] First, in relation to the
Clarification Order, Defendants argue that Magistrate Judge

---

[3] Defendants note that out of an "abundance of caution," they include
their objections to the Clarification Order with their objections to the
R&R since the issues are "inextricably intertwined." (Id. at 2.)

Gorenstein erred by not clarifying whether the Asset Freeze Order applies to after-acquired assets, such as "funds from employment, loans or gifts." (Objections at 3-4). Specific to the R&R, Defendants argue that Magistrate Judge Gorenstein erred in holding the Court has the power to freeze untainted assets, such as the proceeds from the Wrongful Death Action. (See id. at 4-7; see also Reply at 7-10.)

The SEC opposes Defendants' objections, arguing that the Court has already ruled the Wrongful Death Action proceeds are subject to the Asset Freeze, these proceeds are not necessarily untainted, and regardless, courts have statutory authority pursuant to 15 U.S.C. Section 78u(d) to freeze untainted assets in connection with securities violations.

## II.   LEGAL STANDARD

A district court evaluating a Magistrate Judge's report may adopt those portions of the report to which no "specific, written objection" is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous. See Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 149 (1985); Greene v. WCI Holdings Corp., 956 F. Supp. 509, 513 (S.D.N.Y. 1997). "Where a party makes a 'specific written objection' within '[fourteen] days after being served with a copy of the [Magistrate Judge's] recommended disposition,' however, the

district court is required to make a de novo determination
regarding those parts of the report." Cespedes v. Coughlin,
956 F. Supp. 454, 463 (S.D.N.Y. 1997) (quoting United States
v. Raddatz, 447 U.S. 667, 676 (1980)). A district court may
accept, reject, or modify, in whole or in part, the findings
and recommendations of the Magistrate Judge. See DeLuca v.
Lord, 858 F. Supp. 1330, 1345 (S.D.N.Y. 1994); Walker v. Hood,
679 F. Supp. 372, 374 (S.D.N.Y. 1988).

## III. **DISCUSSION**

Defendants' Objections to the R&R challenge the Court's
authority to freeze untainted assets prejudgment. (See
Objections at 4-7.) Defendants argue that Magistrate Judge
Gorenstein's analysis relies on cases that are either
inapplicable or otherwise no longer good law.

First, the Court agrees with Magistrate Judge Gorenstein
that Defendants stipulated to the relief in the Asset Freeze
freezing "*any* of their funds or other assets or things of
value presently held by them, under their control or over
which they exercise actual or apparent investment." (Asset
Freeze ¶ I.B.) Thus, Defendants agreed to a freeze of
untainted assets, as Judge Schofield previously clarified in
this action. (See Dkt. No. 658 at 4 (finding that the "Asset
Freeze Order covers *all* of '[t]he assets, funds, or other
property held by or under the direct or indirect control of

Defendants'")).) Judge Schofield also found Defendants had not made out a proper showing that the expected funds from Kontilai's mother's estate were untainted assets, (see id. at 5), which Defendants have not done here either.

Second, even if Defendants had not stipulated to the relief, and Defendants could show the Action proceeds are untainted, the Court has statutory authority to freeze untainted assets prejudgment in securities actions. In support of their objection, Defendants rely on the holding of Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999).[4] In Grupo Mexicano, the Supreme Court held that a court does not have authority to freeze assets to preserve them for potential money damages, but distinguished actions seeking money damages from actions seeking equitable relief. Id. at 324-25, 333. Accordingly, this holding "does not bar equitable prejudgment remedies in a case that claims equitable relief as well as money damages." S.E.C. v. Babikan, No. 14 Civ. 1740, 2014 WL 2069348, at *3 n.3 (S.D.N.Y. Apr. 21, 2014); see also S.E.C. v. ETS Payphones, Inc., 408 F.3d 727, 734 (11th Cir. 2005) (adopting

---

[4] Defendants also cite to S.E.C. v. FTC Cap. Markets, Inc., No. 09 Civ. 4755, 2010 WL 2652405, at *7 (S.D.N.Y. June 30, 2010) for the proposition that frozen funds must be traceable to fraud. The case is inapposite to the circumstances here because in FTC Capital the defendant used the proper channels of seeking leave to use frozen funds, which she demonstrated were untainted, for the specific purposes of her criminal defense.

reasoning of Fourth Circuit and concluding Grupo Mexicano did not control outcome of case because "the SEC seeks equitable relief (disgorg[e]ment), not just money damages."). Here, the SEC seeks equitable relief in the form of injunctions and disgorgement.

Moreover, Grupo Mexicano held that any enlargement of district courts' equitable powers, so as to permit them to issue prejudgment preliminary injunctions freezing defendants' unencumbered assets, "should be conducted and resolved where such issues belong in our democracy: in the Congress." 527 U.S. at 333. The Second Circuit has long recognized that Congress authorized courts to freeze assets unconnected to the fraud pursuant to 15 U.S.C. Section 78u(d). See S.E.C. v. Unifund SAL, 910 F.2d 1028, 1035, 1041 (2d Cir. 1990) (upholding asset freeze extending to funds in amount "sufficient to cover not just the profits that might have to be disgorged but the civil penalty, equal to three times the profits."). The Court therefore finds persuasive Magistrate Judge Gorenstein's conclusion that Grupo Mexicano does not alter the grant of statutory authority provided for by 15 U.S.C. Section 78u(d). (See R&R at 16 n.6.; see also id. at

16 (collecting cases post-<u>Grupo Mexicano</u> freezing assets untainted by fraud pursuant to <u>Unifund</u>).[5]

Having carefully considered Defendants' Objections and the R&R's analysis and conclusions, the Court is persuaded that the Asset Freeze is enforceable as it pertains to Defendants' untainted assets. As such, the Court is persuaded by Magistrate Judge Gorenstein's conclusion that Defendants' participation in the Actions violated the Asset Freeze.

As to the remaining portions of Magistrate Judge Gorenstein's R&R unobjected to, having conducted a review of the full record, including, among other things, the R&R and applicable legal authorities, the Court concludes that the factual findings, reasoning, and legal support for the recommendations made by Magistrate Judge Gorenstein in the R&R are not clearly erroneous or contrary to law. The Court will therefore, substantially for the reasons set forth in the R&R, adopt Magistrate Judge Gorenstein's recommendations as to those matters as the Court's decision.

## IV.  <u>ORDER</u>

Accordingly, for the reasons stated above, it is hereby

---

[5] Defendants note that no post-<u>Grupo Mexicano</u> case cited by the SEC mentions <u>Grupo Mexicano</u>, so the cases "are of no analytical value." (Reply at 9.) Considering <u>Grupo Mexicano</u> does not apply to those cases, it comes as no surprise that <u>Grupo Mexicano</u> would not be mentioned in those opinions.

**ORDERED** that, substantially for the reasons set forth in the Report and Recommendation of Magistrate Judge Gabriel Gorenstein ("R&R," Dkt. No. 988), the Court adopts the R&R in its entirety as the Court's decision on the matter, and it is further

**ORDERED** that Defendants Mykalai Kontilai and Collector's Coffee Inc.'s objections to the R&R (Dkt. Nos. 991, 996) are **DENIED,** and it is further

**ORDERED** that the case is returned to Magistrate Judge Gabriel Gorenstein to effectuate the ruling.

**SO ORDERED.**

Dated: New York, New York
       06 May 2022

_____
Victor Marrero
U.S.D.J.