```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
UNITED STATES SECURITIES AND            :
EXCHANGE COMMISSION,
                                        :
            Plaintiff,                          ORDER
                                        :
       -against-                                19 Civ. 4355 (VM) (GWG)
                                        :
COLLECTOR'S COFFEE, INC., et al.,
                                        :
            Defendants.
---------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

The Court is in receipt of the parties' letters (Docket ## 1234, 1238, 1245) regarding the SEC's request to modify the asset freeze currently in place (Docket # 175) so as to exclude assets located in 15 storage units. The parties agree that the 15 storage units identified by the SEC should be released from the asset freeze. Docket # 1238 at *1. Accordingly, the request for this modification of the asset freeze is granted.

As to Mykalai Kontilai's request that the SEC be required to pay the outstanding balance for those storage units, id., Kontilai cites no authority — either statutory or case law — for this request. The asset freeze was issued in response to the plaintiff's motion for a preliminary injunction and thus we accept that our consideration of any ancillary issues regarding the asset freeze must comport with principles of equity. See, e.g., Sierra Club v. U.S. Army Corps of Engineers, 732 F.2d 253, 256 (2d Cir. 1984) ("An injunction is an equitable remedy issued under established principles which guide courts of equity."); Museum Boutique Intercontinental, Ltd. v. Picasso, 880 F. Supp. 153, 161 (S.D.N.Y. 1995) ("In this Circuit, when modifying or vacating a preliminary injunction, a court is charged with the exercise of the same discretion it exercised in granting or denying injunctive relief in the first place. . . . Thus, a district court may modify or vacate a preliminary injunction when, based on principles of equity, the modification is necessary to preserve the status quo.").

We do not see, however, how principles of equity favor or permit any order to the SEC to pay the outstanding balance on the units. Kontilai agreed to the order that made him responsible for preserving the assets now at issue (Docket # 175) and chose to store the assets in storage units at his own expense. He thus took on the obligation to pay the storage units costs for the duration of the freeze, unless it were modified. The accrual of the unpaid balance has arisen only because Kontilai, through his insurance company, stopped paying the storage company charges in April 2022, more than a year ago. The existence of these unpaid charges is a result of his own actions. Kontilai could have avoided the now unpaid charges by seeking modification of the asset freeze at the time Kontilai learned those charges were going to start accruing without any plan for payment. Thus, when the insurance company stopped paying the charges, he could have

sought to modify the asset freeze, either to obtain frozen funds to permit for payment of the future charges or to release the property at issue from the freeze entirely so he could take possession of it, or he could have made an application at that time to have the SEC pay for any future charges if the SEC did not agree to release the assets and Kontilai had nowhere else to put them.  The course of action Kontilai chose to follow — that is, to do nothing — was destined to accomplish the very thing he now complains about: the steadily accumulation of charges without any plan for payment.  There is no inequity in denying Kontilai's request to have the SEC pay those charges.[1]

Accordingly, the assets held in SmartStop units 1108, 1183, 1243, 2106, 2116, 2140, 2210, 2212, 2214, 2216, 2217, 2218, 2254, 2278, and 2291 are hereby excluded from the asset freeze.

SO ORDERED.

Dated:  June 22, 2023
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

[1] Kontilai's inaction is particularly inexplicable as to any alleged "personal clothing, personal property, personal papers and items of sentimental value" (Docket # 1238 n.1) inasmuch as Kontilai had no reason to agree to freeze such items in the first place and, if the items were of personal value to him, obviously should have taken steps to obtain the items immediately upon learning that the storage company fees would not be paid.