**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

                    Plaintiff,

             – against –

COLLECTOR'S COFFEE INC., et al.,

                  Defendants.

19-CV-4355 (VM)

**DECISION AND**
**ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/30/23

**VICTOR MARRERO**, United States District Judge.

      The Court has reviewed the motions *in limine* filed by plaintiff United States Securities and Exchange Commission ("SEC") and by defendants Mykalai Kontilai ("Kontilai") and Collector's Coffee, Inc. ("Collector's Coffee", and together with Kontilai, "Defendants").

      In total, the SEC made four motions *in limine*, one of which contained six discrete subparts, and Defendants made twelve motions *in limine*. In a separate Decision and Order, dated November 22, 2023, the Court decided five of the parties' motions *in limine*. See Decision and Order, Dkt. No. 1419 (deciding Dkt. No. 1288 ("SEC Motion 1"), Dkt. No. 1341 ("Defense Motion 6"), Dkt. No. 1355 ("Defense Motion 8"),

Dkt. No. 1359 ("Defense Motion 10"), and Dkt. No. 1361 ("Defense Motion 11"))[1].)

The Court now considers the remaining motions *in limine*. The SEC's pending motions make the following requests:

- to exclude the testimony of Defendants' expert, Stefano Vranca ("Vranca") ("SEC Motion 2"). SEC Motion 2 is hereby **GRANTED**.

- to permit the SEC to ask hypothetical questions probative of the materiality of Defendants' misstatements ("SEC Motion 3(A)"). SEC Motion 3(A) is hereby **GRANTED** in part and reserved in part for trial.

- to permit the SEC to present evidence that Kontilai fled the United States ("SEC Motion 3(B)"). SEC Motion 3(B) is hereby **GRANTED**.

- to exclude evidence and argument that Defendants did not have fraudulent intent because they relied on the advice of counsel ("SEC Motion 3(C)"). SEC Motion 3(C) is hereby **GRANTED**.

- to instruct the jury on specific judicial admissions and evidentiary admissions ("SEC Motion 3(D)"). SEC

---

[1] For avoidance of confusion, the Court adopted Defendants' numbering convention for their twelve motions *in limine*, which is the reason that the Defendants' motions may appear to have been decided out of their numerical order.

Motion 3(D) is hereby **GRANTED** in part and reserved in part for trial.

- to exclude impermissible character evidence of "good acts" by Defendants ("SEC Motion 3(E)"). SEC Motion 3(E) is hereby **GRANTED** in part and reserved in part for decision at trial.

- to exclude references to the SEC's conduct in this case ("SEC Motion 3(F)"). SEC Motion 3(F) is hereby **GRANTED**.

- to exclude sixty-two videos disclosed to the SEC for the first time on November 1, 2023 ("SEC Motion 4"). SEC Motion 4 is hereby **GRANTED**.

Defendants' pending motions make the following requests:

- to exclude evidence or argument relating to Kontilai's asylum application documents or current immigration status ("Defense Motion 1"). Defense Motion 1 is hereby **DENIED**.

- to exclude evidence or argument relating to Kontilai's indictments or criminal charges ("Defense Motion 2"). Defense Motion 2 is hereby **GRANTED** in part and **DENIED** in part.

- to exclude evidence or argument characterizing Defendants' departure from the United States as

"flight" ("Defense Motion 3"). Defense Motion 3 is hereby **DENIED**.

- to exclude evidence or argument relating to Kontilai's current location and detention in Germany or pending extradition proceedings ("Defense Motion 4"). Defense Motion 4 is hereby **GRANTED** in part and reserved in part for decision at trial.

- to exclude evidence or argument relating to Kontilai's GoDaddy account ("Defense Motion 5"). Defense Motion 5 is hereby **GRANTED** in part and **DENIED** in part.

- to exclude testimony of Jaqueline Moessner and certain data compilations ("Defense Motion 7"). Defense Motion 7 is hereby **DENIED**.

- to exclude evidence or argument relating to certain allegedly falsified documents provided to the SEC ("Defense Motion 9"). Defense Motion 9 is hereby **DENIED**.

- to exclude evidence or argument relating to the SEC's fifth claim for relief, which was resolved by the Court on summary judgment ("Defense Motion 12"). Defense Motion 12 is hereby **DENIED**.

## I.   <u>LEGAL STANDARD</u>

The Federal Rules of Evidence ("FRE"), in particular Rules 104, 401, and 403, govern the motions listed above. These rules provide that "[e]vidence should be excluded if it is irrelevant, or, even if relevant, if its probative value is substantially outweighed by the danger of unfair prejudice it presents." <u>Henry v. Wyeth Pharms., Inc.</u>, 616 F.3d 134, 149 (2d Cir. 2010) (internal citations omitted); <u>see</u> <u>Epoch Producing Corp. v. Killiam Shows, Inc.</u>, 522 F.2d 737, 744 (2d Cir. 1975). Evidence at trial "is considered 'relevant' only if it is logically related, either directly or through an inferential chain of proof, to at least one of the formal elements of the charges made or defenses raised." <u>Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.</u>, 138 F. Supp. 2d 357, 365 (E.D.N.Y. 2001). This Court has determined the claims at issue in the upcoming jury trial, as well as the elements the SEC must prove to support those claims. <u>See</u> Dkt. No. 1419.

It is the Court's responsibility to decide preliminary questions of admissibility, particularly when admissibility itself "hinge[s] on preliminary factual questions." <u>Bourjaily v. United States</u>, 483 U.S. 171, 175 (1987) (interpreting FRE 104(a)). In doing so, the Court notes that the party offering a matter into evidence must carry the burden of demonstrating

5

admissibility by a preponderance of preliminary evidence. Id. at 175-76. Even when the Court determines that evidence is admissible, admissibility rulings do not foreclose any party's ability to persuade the jury with competing admissible evidence. See FRE 104(e).

## II.   DISCUSSION

### A.   SEC MOTION 2: TESTIMONY OF STEFANO VRANCA

The SEC requests an order excluding the testimony of Defendants' expert, Stefano Vranca. Vranca examined the voluminous financial records of Collector's Coffee and classified those transactions based on Vranca's opinion of their respective purposes. The SEC objects to Vranca's opinions, including that (1) $3 million in cash transfers from Collector's Coffee to Kontilai were spent for the benefit of the Collector's Coffee business, (2) Collector's Coffee owes Kontilai $3.2 million as the balance of an outstanding loan, and (3) Collector's Coffee paid roughly $4 million to Kontilai in lawful compensation.

The Court must review whether the proffered expert opinion (1) is made by a witness who is qualified as an expert, (2) is reliable, and (3) is helpful to the jury to understand the evidence or determine a fact at issue. See FRE 702; Daubert v. Merrell Dow Pharms., 509 U.S. 579, 590 (1993);

<u>Royal Park Investments SA/NV v. U.S. Bank Nat'l Assoc.</u>, 324
F. Supp 3d 387, 393 (S.D.N.Y. 2018).

Vranca, though he does appear to have the academic and
professional qualifications to testify as an expert, does not
offer opinions with sufficient reliability for the Court to
allow the jury to hear them. Among the many factors that
relate to an expert's reliability are whether the expert's
conclusions are made on the basis of objective analysis,
whether the expert's opinions are alternatively nothing more
than the witness's say-so, and whether the analytical gap
between the evidence and the opinion proffered is an
acceptable one. <u>See</u> <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S.
137, 153-54 (1999); <u>Nimely v. City of New York</u>, 414 F.3d 381,
396 (2d Cir. 2005); <u>SEC v. Tourre</u>, 950 F. Supp. 2d 666, 678
(S.D.N.Y. 2013).

Vranca's opinions with respect to the nature of
Collector's Coffee's expenses assume the conclusions Vranca
purports to reach — namely, that the millions in expenses,
loan repayments, and compensation were lawful expenditures
that Collector's Coffee incurred in good faith. Vranca does
not grapple with the considerable record evidence that
contradicts these assumptions, and Vranca rather concludes
that the expenses were lawful because they are conceivably
related to the Collector's Coffee business. Vranca purports

7

to compare Collector's Coffee's expenses to businesses of comparable size, but his report does not explicate his methodology in this respect.

In addition to the Court's concerns about reliability, the Court further holds that Vranca's testimony would not be helpful to the jury. Much of Vranca's report focuses on the extent to which Kontilai used cash received from Collector's Coffee for business purposes, returned the cash to the corporation, or kept it for his personal benefit as purported compensation. These issues relate primarily to the amount of ill-gotten gains, which is not a matter the jury will be charged to decide. See Dkt. No. 1419 at 7-9 (describing claims and elements at issue before the jury).

B.   SEC MOTION 3(A): HYPOTHETICAL QUESTIONS

The SEC requests an order permitting the SEC to ask hypothetical questions probative of the materiality of Defendants' allegedly fraudulent misstatements and omissions. Defendants object that it is impermissible speculation under FRE 602 and an impermissible lay opinion under FRE 701 to ask hypothetical questions of investors about how those investors' decisions with respect to Collector's Coffee would

have changed had they known additional information that the SEC alleges Defendants concealed.

In a securities fraud case, investor testimony can be relevant to whether a defendant's alleged misstatements or omissions were material. See United States v. Gramins, 939 F.3d 429, 446-47 (2d Cir. 2019). "A witness may testify to the fact of what he did not know and how, if he had known that independently established fact, it would have affected his conduct or behavior." United States v. Cuti, 720 F.3d 453, 459 (2d Cir. 2013). "'[W]hat-if-you-had known' questions that present withheld facts to a witness are especially useful to elicit testimony about the impact of fraud." Id. Defendants make no persuasive argument that what-if-you-had-known questions are categorically inadmissible under FRE 602, FRE 701, or any other rule. Defendants' objections — that the SEC will ask what-if-you-had-known questions concerning misstatements and omissions not independently established by evidence or that the SEC will solicit lay opinions not based on the witness's actual perception — may be raised at trial or explored in cross-examination as appropriate.

C.   SEC MOTION 3(B): FLIGHT

The SEC seeks an order permitting evidence that Kontilai fled the United States, which the SEC contends is evidence that Defendants acted with a guilty conscience, or scienter.

9

Defendants object that flight constitutes weak evidence of scienter and is substantially outweighed by the risk that evidence of flight, or of the related criminal accusations, will become a trial within a trial on Kontilai's questionable international travel, and alternatively that such evidence invites the jury to decide this case based on a view of Kontilai's propensity to break the law.

"Flight is an admission by conduct" and can be powerful but circumstantial evidence of scienter. United States v. Al-Sawadi, 432 F.3d 419, 424 (2d Cir. 2005); see also United States v. Salameh, 152 F.3d 88, 157 (2d Cir. 1998). The probative value of flight evidence depends on the strength of four separate inferences: "(1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." Al-Sawadi, 432 F.3d at 424.

Kontilai's behavior strongly supports all four inferences. The SEC cites evidence sufficient to support a finding under FRE 104 that Kontilai departed the United States shortly after the SEC obtained preliminary injunctive relief in this case, while the DOJ's investigation was pending, on a one-way ticket to Russia (a country to which he had few

apparent connections), and eventually sought asylum in Russia. In his Russian asylum papers, Kontilai admitted that the United States government's proceedings against him are the reason he sought permission to permanently stay in Russia. Given the overt connection between Kontilai's departure and Kontilai's apparent desire to avoid the legal consequences of his actions in the United States, the probative value of flight evidence here is strong and not substantially outweighed by the risk of prejudicial effect to the Defendants. The Court is further satisfied that it can mitigate the risks of prejudice by offering appropriate instructions to the jury at trial.

D.   SEC MOTION 3(C): ADVICE OF COUNSEL

The SEC seeks an order precluding Defendants from arguing that they are not responsible for the alleged violations of the securities laws because they relied on the advice of counsel, or that they did not act with scienter or negligence because they received legal counsel's blessing to raise funds for Collector's Coffee. Defendants respond that they are constitutionally permitted to raise this defense at trial, and that they have already made the foundational

evidentiary showings that they are entitled to an advice-of-counsel defense.

As an initial matter, the Court is not bound to permit the jury to hear evidence of Defendants' advice-of-counsel evidence unless Defendants can make a preliminary showing "that [they] made complete disclosure to counsel, sought advice as to the legality of [their] conduct, received advice that [their] conduct was legal, and relied on that advice in good faith." Markowski v. SEC, 34 F.3d 99, 105 (2d Cir. 1994); see also United States v. Colasuonno, 697 F.3d 164, 181 (2d Cir. 2012); see also FRE 104.

Defendants point to no evidence, or even an intent to introduce evidence, that they made complete disclosure of all relevant facts to counsel. Defendants' papers cite no evidence that would be sufficient to support a finding that Defendants' attorneys were aware of the multitude of inconsistencies between Defendants' statements about their business and their actual business practices — including Kontilai's compensation, Collector's Coffee debt, and the nature and extent of questionable business expenses. The Court cannot permit Defendants to present an advice-of-counsel defense without the essential preliminary showing required by FRE 104. Otherwise, any defendant could receive an attorney's blessing based on an incomplete picture of the

defendant's conduct, and then rely on that attorney's blessing as a defense to liability at trial.

E.   SEC MOTION 3(D): PLEADING AND DISCOVERY ADMISSIONS

The SEC seeks an order permitting it to read to the jury certain factual statements that it contends Defendants have admitted and are conclusively established, or alternatively to have the Court read the factual statements to the jury and to instruct the jury thereon. (See Exhibit 5 to Opening Brief in Support of SEC Motion 3(D) (listing requested admissions).) Defendants raise various objections to the legal authorities the SEC cites to support its request.

With respect to matters admitted in Defendants' answers to the SEC's complaints, "[f]acts admitted in an answer, as in any pleading, are judicial admissions that bind the defendant throughout th[e] litigation." Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 491 (2d Cir. 2014); see also Gibbs ex rel. Est. of Gibbs v. CIGNA Corp., 440 F.3d 571, 578 (2d Cir. 2006).

With respect to matters deemed admitted in response to requests for admission pursuant to Federal Rule of Civil Procedure 36 ("Rule 36"), it is well established that "Rule 36 responses become, in effect, sworn evidence that is binding upon the respondent at trial." T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc., 174 F.R.D. 38, 44 (S.D.N.Y.

1997); <u>see also</u> Fed. R. Civ. P. 36(b) ("A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."). Defendants' request to withdraw their Rule 36 admissions has already been denied, and there is no reason on the eve of trial to disturb the Court's ruling on the matter. <u>See</u> Dkt. No. 910.

With respect to facts submitted to the Court on Defendants' motion for summary judgment in this case, the Court's ruling amounts to a determination that certain factual matters relating to one of the SEC's claims were not in dispute and that "no rational jury" could have found for Defendants on those issues. <u>See</u> Dkt. No. 976, at 7 (citing <u>Gallo v. Prudential Residential Servs., L.P.</u>, 22 F.3d 1219, 1223–24 (2d Cir. 1994)). Defendants may not now re-open those factual matters.

The SEC's request for permission to read every admission in Exhibit 5, however, is premature. Defendants may have an opportunity to be heard at trial or at the charging conference before the Court on the precise language of the admissions and instructions given to the jury, and whether those admissions are proper and relevant to the matters that the jury will be charged to decide. Yet, given that judicial admissions have the effect of conclusively establishing a

14

fact at trial, Defendants may not offer evidence or argument that would have the effect of rebutting or casting doubt on their own admissions.

F.   SEC MOTION 3(E): KONTILAI'S GOOD ACTS

The SEC seeks an order excluding evidence of "good acts" by Defendants and other impermissible character evidence, particularly evidence that Kontilai was a savvy businessman or that Collector's Coffee was a promising and productive business venture. Defendants contend that the health of Collector's Coffee is relevant to disprove the SEC's allegations of fraudulent statements about the business.

"Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." FRE 404(a)(1). Kontilai's character for business acumen has no bearing on whether he made misstatements or omitted facts to investors on certain occasions, and positive character evidence about Kontilai's skill as a business leader will accomplish little but provide an undue opportunity for the jury to make the type of propensity inference prohibited by FRE 404.

To the extent that the SEC offers evidence establishing facts about aspects of Defendants' business, Defendants may offer competing evidence in rebuttal on that same topic.

15

Defendants may also introduce factual evidence about the nature of the Collector's Coffee business as long as that evidence is not offered for the sole purpose of touting the business's success. Evidence emphasizing in general terms the once-promising nature of Defendants' business will be particularly disfavored. The Court reserves decision on such evidence for trial.

G.   SEC MOTION 3(F): THE SEC'S CONDUCT

The SEC seeks an order excluding evidence or argument that refers to the SEC's conduct in this case or that the SEC proceedings caused the failure of Defendants' business. Such matters are irrelevant to what will be before the jury, and Defendants' response fails to explain otherwise. See Dkt. No. 1419 at 7-9 (describing claims and elements at issue before the jury). Even if there were some minimal probative value to be gained from evidence of the SEC's motivations, that value is substantially outweighed by the prejudicial effect of litigating the SEC's motives, an alleged improper "bias" against Defendants, or the effect of the SEC's investigation on Defendants' business. The Court will not permit the jury to nullify Defendants' allegedly culpable conduct solely

because there may be acrimony between the parties that Defendants believe to be unfair.

H.   SEC MOTION 4: SIXTY-TWO VIDEOS

The SEC requests an order precluding Defendants from using the sixty-two videos disclosed to the SEC for the first time on November 1, 2023. The SEC contends that the videos are both irrelevant and were untimely disclosed. The videos represent some of the contents of Collector's Coffee's YouTube channel and are offered by Defendants to show that Collector's Coffee had a viable, promising business. Defendants also contend that the videos are publicly available and did not need to be disclosed or produced, and that the SEC has known about them since 2018.

The Court finds that the videos were not timely disclosed. "Without awaiting a discovery request," parties must provide the other parties a copy or a description of "all documents [and] electronically stored information" that the disclosing party "may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii) ("Rule 26"). In writing, parties must further supplement disclosures made under Rule 26, "in a timely manner if the party learns that in some material respect the disclosure is incomplete or incorrect." Fed R. Civ. P. 26(e)(1)(A). Without a "substantial justification," a party that fails to provide

17

information as required by Rule 26(a) or (e) "is not allowed to use that information . . . at trial." Fed. R. Civ. P. 37(c)(1); see also Design Strategy, Inc. v. Davis, 469 F.3d 284, 296 (2d Cir. 2006).

Though the videos are publicly available, Defendants did not disclose the fact that they wished for all of them to be fair game at trial. Rather than offer a substantial justification about why the videos were not disclosed in writing to the SEC at an earlier stage of this litigation, Defendants instead argue that the broad ambit of Rule 26 does not apply to these videos because they could be publicly found on the internet. This is not a justification at all. See Fed. R. Civ. P. 37(c)(1). The rules require disclosure even of obvious trial exhibits to allow opposing parties to explore possible trial evidence in discovery and to prevent trial by surprise.

I.   DEFENSE MOTION 1 — ASYLUM APPLICATION

Defendants seek an order excluding evidence and argument relating to Kontilai's application for asylum in Russia, including the affidavit filed by Kontilai in this matter on June 20, 2020, and the documents attached thereto. (See Dkt. No. 409-1.) In these documents, Kontilai swears to facts about the international travel that the SEC describes as "flight" and attests to the authenticity of the Russian documents that

denied his request for asylum. (See id.) Kontilai asserts that the jury should not be permitted to see these documents because they are irrelevant, unfairly prejudicial, and impermissible hearsay.

The documents are relevant evidence of flight, which the Court has already discussed in this Decision and Order. The circumstances under which Kontilai purports to have left the country, and why, are probative of whether Kontilai had a guilty conscience when confronted with allegations of wrongdoing, which in turn is relevant to Defendants' scienter. See United States v. Glenn, 312 F.3d 58, 67 (2d Cir. 2002). The risk of prejudicial effect on the jury does not substantially outweigh the probative value of this evidence. See FRE 403. The Court is confident that it can mitigate with appropriate jury instructions any risks that those documents will prejudice the jury, including the risks that the documents introduce confusing issues of Russian law or that they will create a prejudicial association in jurors' minds between Kontilai and the Russian state.

Finally, the documents are not excludable as hearsay. Statements that are "offered against an opposing party" and were "made by the party" are admissible despite the rule against hearsay. See FRE 801(d)(2)(A). So are statements that the party adopted. See FRE 801(d)(2)(B). Out-of-court

statements for which Kontilai is the declarant — including Kontilai's statements from his affidavit, Kontilai's statements attesting to the authenticity of the Russian documents attached thereto, and Kontilai's statements as reported within those documents — are admitted or adopted by Kontilai and thus are not excludable as hearsay.

J. DEFENSE MOTION 2 — CRIMINAL INDICTMENTS

Defendants move to exclude admission of two criminal indictments filed by the United States against Kontilai, one in Nevada and one in Colorado (together, the "Indictments"). The Indictments accuse Kontilai of crimes based on the same allegedly fraudulent conduct at issue in this trial, as well as a bevy of claims related to Kontilai's alleged obstruction of the government's investigation into his business affairs. (See Dkt. Nos. 637-1, 637-2.) Defendants contend the Indictments (1) contain inadmissible hearsay, (2) are irrelevant because they are only accusations supported by probable cause and have no probative value in themselves, and (3) carry an unfair risk of prejudice because the jury could consider them for the truth of the narratives laid out by the government therein.

The Court agrees. The documents constitute a summary of the United States' allegations against Kontilai and are not in themselves probative of any aspect of Kontilai's actual

conduct. It would be unduly prejudicial to Kontilai to allow the jury to review the Indictments in their entirety, because the jury may be tempted to make an inference about Kontilai's liability in the case at hand on the basis of Kontilai's apparent propensity to engage in criminal activity. This is especially unwarranted when the documents accusing Kontilai of wrongdoing bear the seal of approval of a respected government authority like the United States Department of Justice.

However, the SEC rightly points out that the existence of the Indictments and the timing by which those Indictments and the related investigations were made known to Kontilai are relevant to the circumstances surrounding Kontilai's alleged flight to avoid prosecution. The Court may permit limited evidence of the existence of the Indictments, the timing within which they were obtained, Defendants' reactions, and other related matters.

K. <u>DEFENSE MOTION 3 — FLIGHT</u>

Defendants seek to preclude the SEC from characterizing his departure from the United States as "flight." For the reasons set forth above in the Court's decision on the SEC's motion to permit evidence of flight, the Court will not

exclude evidence that characterizes Kontilai's departure from
the United States as flight.

L.   DEFENSE MOTION 4 — CURRENT LOCATION AND EXTRADITION

Defendants seek an order excluding evidence and argument
concerning the current location of Kontilai, namely that
Kontilai is now detained in Germany and resisting
extradition. The SEC does not oppose such a ruling. Rather,
the SEC contends that if Kontilai fails to appear at trial,
the SEC should be permitted to introduce evidence of
Kontilai's current location if Defendants seek to exploit
Kontilai's absence to their benefit. The SEC also seeks a
missing-witness instruction with respect to Kontilai,
assuming that Kontilai does not appear for trial.

To the extent the motion seeks to exclude evidence of
Kontilai's current location or resistance of extradition
proceedings in the SEC's case-in-chief, the Court agrees with
the parties that evidence of Kontilai's current location
would be irrelevant to the SEC's claims in this matter.

However, Kontilai's presence at trial is still, at least
legally, an open question given that Kontilai has been served
with a lawful subpoena to appear for trial and trial has not
yet begun. The Court accordingly reserves decision for trial
on the admissibility of the evidence discussed in Defendants'
motion as rebuttal evidence if Kontilai does not appear and

Defendants make arguments that this should be construed in Kontilai's favor. The Court further reserves decision for trial on the propriety of a missing-witness instruction.

M.   DEFENSE MOTION 5 — GODADDY ACCOUNT

Defendants seek an order excluding all evidence relating to Collector's Coffee GoDaddy[2] accounts as irrelevant and unfairly prejudicial. In response, the SEC contends that it will seek an adverse-inference instruction to the jury because Kontilai is alleged to have spoliated evidence kept on GoDaddy's servers, namely many of Collector's Coffee emails from 2018 to early 2019, just before the SEC formally initiated this proceeding. The SEC also contends that evidence of Defendants' dealings with GoDaddy are relevant to making the evidentiary showing necessary under FRE 104 to support the adverse-inference instruction.

At the outset, the Court agrees that the GoDaddy accounts have little relevance to Defendants' liability for material misstatements, omissions, or other schemes at issue in this case. See Dkt. No. 1419 at 7-9 (describing claims and elements at issue before the jury). The SEC points to no cases from this Circuit that would permit a jury to conclude that, because a defendant spoliated evidence in discovery, the

---

[2] GoDaddy was the company that maintained Collector's Coffee's email servers.

defendant's underlying violations of the law were made with scienter or negligence.

The SEC does, however, note that they may seek an adverse-inference instruction that the jury may (or must) assume that spoliated evidence would tend to show Defendants' liability. The Court may give an adverse-inference instruction to the jury if the SEC makes an evidentiary showing that (1) the party controlling the evidence had an obligation to preserve it when it was destroyed, (2) the records were destroyed with a culpable state of mind, either bad faith or gross negligence, and (3) the destroyed evidence was relevant to a party's claim or defense. See Hawley v. Mphasis Corp., 302 F.R.D. 37, 46 (S.D.N.Y. 2014); see also Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 105 (2d Cir. 2002); FRE 104(a). The court may alternatively leave the jury to decide whether spoliation occurred and instead instruct the jury that it is permitted to conclude that spoliated evidence would be unfavorable to the party that destroyed it. See Mali v. Fed. Ins. Co., 720 F.3d 387, 393 (2d Cir. 2013).

The SEC's papers cite evidence that makes a sufficient showing that the SEC is entitled to an adverse-inference instruction. Yet the Court cannot foreclose the possibility that Defendants have competing evidence on the issue that may

24

persuade the jury otherwise, for instance if the deletion was good faith adherence to Collector's Coffee's standard operating procedures on document retention. The SEC may therefore introduce evidence concerning the GoDaddy accounts as relevant to spoliation but not as relevant to scienter or negligence of Defendants' violations of the securities laws. Defendants may rebut with appropriate evidence relating to the GoDaddy accounts.

N.   DEFENSE MOTION 7 — JAQUELINE MOESSNER

Defendants seek an order excluding the testimony of Jacqueline Moessner ("Moessner"), an attorney at the SEC who supervised the compilation of voluminous financial records into summary documents that the SEC intends to introduce under FRE 1006. Defendants contend that Moessner's testimony would effectively be undisclosed expert testimony, and that Moessner did not personally review the records compiled and cannot attest to the summary's accuracy.

The exhibits offered by the SEC centralize voluminous financial records that cannot be conveniently examined in court, and such a compilation does not amount to an offer of expert testimony based on a witness's scientific, technical, or specialized knowledge. The summary charts contain no analysis and are instead simply a distillation of admissible evidence. (See Dkt. No. 1397-1.) Further, the SEC can make

25

its foundational showing under FRE 1006 by offering Moessner to testify as to how she prepared the summaries, even if some of that work was delegated to Moessner's staff. See John Wiley & Sons, Inc. v. Book Dog Books, LLC, 327 F. Supp. 3d 606, 631 (S.D.N.Y. 2018). Moreover, Defendants have had years to review the summary documents since they were first produced and have never complained of any inaccuracies.

O.    DEFENSE MOTION 9 — ALLEGEDLY FRAUDULENT DOCUMENTS

Defendants seek an order excluding SEC exhibits alleged to be falsified documents that Defendants created and gave to the SEC as evidence that Collector's Coffee's business practices were not fraudulent. Conduct designed to delay the discovery of Defendants' alleged frauds — either by enforcement authorities or by the victims of the fraud — is admissible as relevant evidence of a guilty conscience or scienter. United States v. Kelley, 551 F.3d 171, 176 (2d Cir. 2009) (per curiam) (evidence of bogus account statements "provided the jury with evidence both that Kelley had intended to defraud his clients and that he continued efforts to avoid detection by deceiving his clients about the value of the investments" after the investments lost their value). Any

prejudicial dangers of admitting this evidence can be mitigated with appropriate jury instructions.

P.    DEFENSE MOTION 12 — THE 21F-17 CLAIM

Defendants seek an order excluding evidence or argument concerning the SEC's Fifth Claim for Relief under Exchange Act Rule 21F-17, which prohibits any person from taking action to impede an individual from communicating with the SEC about possible violations of the securities laws. See 17 C.F.R. § 240.21F-17 ("Rule 21F-17"). The Court held Defendants liable on the Rule 21F-17 claim because there was no genuine dispute of material fact that Defendants entered into confidentiality agreements with certain investors to prevent them from speaking with the SEC about Kontilai's conduct. Defendants also attempted to enforce those agreements.

Conduct designed to delay the discovery of Defendants' alleged frauds by enforcement authorities is admissible as relevant evidence of scienter. See United States v. Graham, 51 F.4th 67, 82 (2d Cir. 2022). Any prejudicial dangers of admitting this evidence can be mitigated with appropriate jury instructions.

## III. ORDER

For the reasons explained above, it is hereby

**ORDERED** that the motion *in limine* of Plaintiff Securities and Exchange Commission ("SEC") to exclude the

testimony of Defendant Mykalai Kontilai ("Kontilai") and Defendant Collector's Coffee, Inc.'s ("Collector's Coffee," and together with Kontilai, "Defendants") expert witness, Stefano Vranca, (see Dkt. No. 1286) ("SEC Motion 2") is hereby **GRANTED**; and it is further

ORDERED that the motion *in limine* of Plaintiff SEC to permit the SEC to ask hypothetical questions probative of the materiality of Defendants' misstatements (see Dkt. 1347) ("SEC Motion 3(A)") is hereby **GRANTED** in part and reserved in part for trial; and it is further

ORDERED that the motion *in limine* of Plaintiff SEC to permit evidence that Kontilai fled the United States (see Dkt. No. 1347) ("SEC Motion 3(B)") is hereby **GRANTED**; and it is further

ORDERED that the motion *in limine* of plaintiff SEC to exclude evidence and argument that Defendants did not have fraudulent intent because they relied on the advice of counsel (see Dkt. No. 1347) ("SEC Motion 3(C)") is hereby **GRANTED**; and it is further

ORDERED that the motion *in limine* of Plaintiff SEC to instruct the jury on specific judicial admissions and evidentiary admissions (see Dkt. No. 1347) ("SEC Motion

3(D)") is hereby **GRANTED** in part and reserved in part for trial; and it is further

ORDERED that the motion *in limine* of Plaintiff SEC to exclude impermissible character evidence of "good acts" by Defendants (see Dkt. No. 1347) ("SEC Motion 3(E)") is hereby **GRANTED** in part and reserved in part for trial; and it is further

ORDERED that the motion *in limine* of Plaintiff SEC to exclude references to the SEC's conduct in this case (see Dkt. No. 1347) ("SEC Motion 3(F)") is hereby **GRANTED**; and it is further

ORDERED that the motion *in limine* of Plaintiff SEC to exclude sixty-two videos disclosed to the SEC for the first time on November 1, 2023 (see Dkt. No. 1366) ("SEC Motion 4") is hereby **GRANTED**; and it is further

ORDERED that the motion *in limine* of Defendants to exclude evidence or argument relating to Kontilai's asylum application documents or current immigration status (see Dkt. No. 1331) ("Defense Motion 1") is hereby **DENIED**; and it is further

ORDERED that the motion *in limine* of Defendants to exclude evidence or argument relating to Kontilai's indictments or criminal charges (see Dkt. No. 1333) ("Defense

Motion 2") is hereby **GRANTED** in part and **DENIED** in part; and it is further

    **ORDERED** that the motion *in limine* of Defendants to exclude evidence or argument characterizing Kontilai's departure from the United States as "flight" (<u>see</u> Dkt. No. 1335) ("Defense Motion 3") is hereby **DENIED**; and it is further

    **ORDERED** that the motion *in limine* of Defendants to exclude evidence or argument relating to Kontilai's current location and detention in Germany or pending extradition proceedings (<u>see</u> Dkt. No. 1337) ("Defense Motion 4") is hereby **GRANTED** in part and reserved in part for decision at trial; and it is further

    **ORDERED** that the motion *in limine* of Defendants to exclude evidence or argument relating to Kontilai's GoDaddy account (<u>see</u> Dkt. No. 1339) ("Defense Motion 5") is hereby **GRANTED** in part and **DENIED** in part; and it is further

    **ORDERED** that the motion *in limine* of Defendants to exclude testimony of Jaqueline Moessner and certain data compilations (<u>see</u> Dkt. No. 1353) ("Defense Motion 7") is hereby **DENIED**; and it is further

    **ORDERED** that the motion *in limine* of Defendants to exclude evidence or argument relating to certain allegedly

falsified documents provided to the SEC (see Dkt. No. 1357)

("Defense Motion 9") is hereby **DENIED**; and it is further

  **ORDERED** that the motion *in limine* of Defendants to exclude evidence or argument relating to the SEC's fifth claim for relief, which was resolved by the Court on summary judgment (see Dkt. No. 1363) ("Defense Motion 12") is hereby **DENIED**.

  The Clerk of Court is respectfully directed to terminate the motions entered at Dkt. Nos. 1286, 1331, 1333, 1335, 1337, 1339, 1347, 1353, 1357, 1363, and 1366.

          Victor Marrero
           U.S.D.J.

Dated:  30 November 2023
     New York, New York